# Exhibit C

Section I ....................................................................................................................1

Section II...................................................................................................................6

Section III................................................................................................................10

Section IV ...............................................................................................................20

Section V.................................................................................................................25

Section VI ...............................................................................................................35

Section VII..............................................................................................................45

Section VIII.............................................................................................................50

Section IX ...............................................................................................................55

Section X.................................................................................................................62

Section XI ...............................................................................................................71

Section XII............................................................................................................115

Section XIII...........................................................................................................121

## Section I

| | |
|---|---|
| Pooling and Servicing Agreement related to CXHE 2005-C dated as of June 1, 2005 ("Centex PSA") Conveyance | "The Seller with respect to the Seller Home Equity Loans and the Conduit Seller with respect to the Conduit Home Equity Loans each hereby bargains, sells, conveys, assigns and transfers to the Depositor, in trust, without recourse and for the exclusive benefit of the Owners of the Certificates, all of its right, title and interest in and to (a) all principal collected and interest due on the Home Equity Loans on and after the Cut-Off Date and any and all other benefits accruing from the Home Equity Loans which the Depositor is causing to be delivered to the Custodian on behalf of the Trustee herewith, together with the related Home Equity Loan documents and the Depositor's interest in any Property, and all payments thereon and proceeds of the conversion, voluntary or involuntary, of the foregoing, and (b) proceeds of all the foregoing (including, but not by way of limitation, all proceeds of any mortgage insurance, flood insurance, hazard insurance and title insurance policy relating to the Home Equity Loans, cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables which at any time constitute all or part of or are included in the proceeds of any of the foregoing) to pay the Certificates as specified herein (the 'Home Equity Loan Assets').<br><br>The Depositor, concurrently with the execution and delivery hereof, hereby bargains, sells, conveys, assigns and transfers to the Trustee for the benefit of the Owners of the Certificates, without recourse, all the right, title and interest of the Depositor in and to the Trust Estate." |
| Pooling and Servicing Agreement related to CFLX 2007-M1 dated as of July 1, 2007 ("Chase PSA") § 2.01 | "The Depositor, concurrently with the execution and delivery hereof, does hereby sell, transfer, assign, set over and convey to the Trustee without recourse all the right, title and interest of the Depositor in and to the Mortgage Loans, including all interest and principal received on or with respect to the Mortgage Loans on or after the Cutoff Date (other than Monthly Payments due on the Mortgage Loans on or before the Cutoff Date)." |
| Sale and Servicing Agreement related to CWHEL 2006-I dated as of December 29, 2006 ("CWHEL Servicing Agreement[1]") | "Concurrently with the execution and delivery of this Agreement, the Depositor hereby transfers to the Trust without recourse (subject to Sections 2.02 and 2.04) all of its right, title, and interest in (1) each Initial Mortgage Loan, including its Asset Balance (including all Additional Balances), the related Mortgage File, all property that secures the Mortgage Loan, and all collections received on it after the Cut-off Date (excluding payments due by the Cut-off Date); (2) property that secured an Initial Mortgage Loan that is acquired by |

---

[1] Quotations to the CWHEL Servicing Agreement herein are to the Sale and Servicing Agreement related to the CWHEL 2006-I securitization.  CWHEL 2007-B and CWHEL 2007-E were issued pursuant to Sales and Servicing

| § 2.01 | foreclosure or deed in lieu of foreclosure; (3) the Depositor's rights under the Purchase Agreement; (4) the Depositor's rights under the hazard insurance policies; (5) all rights under any guaranty executed in connection with a Mortgage Loan; (6) all other assets included or to be included in the Trust for the benefit of the Secured Parties; and (7) all proceeds of the foregoing. This transfer to the Trust is to the Owner Trustee, on behalf of the Trust, and each reference in this Agreement to this transfer shall be construed accordingly. In addition, by the Closing Date, the Depositor shall cause the Credit Enhancer to deliver the Policy to the Indenture Trustee for the benefit of the Holders of the Insured Notes." |
|---|---|
| Pooling and Servicing Agreement related to SAMI 2005-AR4 dated as of July 1, 2005 ("EMC PSA[2]") § 2.01(a) | "The Depositor, concurrently with the execution and delivery of this Agreement, sells, transfers and assigns to the Trust without recourse all its right, title and interest in and to (i) the Mortgage Loans identified in the Mortgage Loan Schedule, and the related Mortgage Notes, mortgages and other related documents, including all interest and principal due with respect to the Mortgage Loans after the Cut-off Date, but excluding any payments of principal and interest due on or prior to the Cut-off Date with respect to the Mortgage Loans, (ii) such assets as shall from time to time be credited or are required by the terms of this Agreement to be credited to the Distribution Account, (iii) such assets relating to the Mortgage Loans as from time to time may be held by the Servicer in Protected Accounts and the Paying Agent in the Senior Carryover Shortfall Reserve Fund, the Class A-1 Supplemental Fund, the Class A-2 Supplemental Fund, the Subordinate Carryover Shortfall Reserve Fund, the Yield Maintenance Account and the Distribution Account for the benefit of the Paying Agent on behalf of the Certificateholders, (iv) any REO Property, and any revenues received thereon, (v) the Required Insurance Policies and any amounts paid or payable by the related insurer under any Insurance Policy (to the extent the related mortgagee has a claim thereto), (vi) the Mortgage Loan Purchase Agreement to the extent provided in Subsection 2.03(a), (vii) the rights with respect to the Countrywide Servicing Agreement as assigned to the Trustee on behalf of the Certificateholders by the Assignment Agreement, (viii) the rights of the Depositor with respect to the Yield Maintenance Agreement, and (ix) any proceeds of the foregoing. Although it is the intent of the parties to this Agreement that the conveyance of the Depositor's right, title and interest in and to the Mortgage Loans and other assets in the Trust Fund pursuant to this Agreement shall constitute a purchase and sale and not a loan, in the |

---

Agreements with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

[2] Quotations to the EMC PSA herein are to the PSA executed in connection with the SAMI 2005-AR4 securitization.  BSABS 2006-4, SAMI 2005-AR6, and SAMI 2006-AR3 were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

| | |
|---|---|
| | event that such conveyance is deemed to be a loan, it is the intent of the parties to this Agreement that the Depositor shall be deemed to have granted to the Trustee a first priority perfected security interest in all of the Depositor's right, title and interest in, to and under the Mortgage Loans and other assets in the Trust Fund, and that this Agreement shall constitute a security agreement under applicable law." |
| Pooling and Servicing Agreement related to POPLR 2006-C dated as of June 1, 2006 ("Equity One PSA") § 2.01(a), §2.01(b) | "Subject to its substitution and repurchase obligations hereunder, each Seller, concurrently with the execution and delivery hereof, hereby irrevocably sells, transfers, grants, bargains, assigns, sets over and otherwise conveys to the Depositor, without recourse, all the right, title and interest of such Seller in and to that portion of the Loans (including, without limitation, the Mortgage Files relating thereto) listed on the Loan Schedule that pertains to such Seller, including (i) all interest and principal received or receivable by such Seller on or with respect to such Loans after the Cut-off Date and all interest and principal payments on such Loans received on or prior to the Cut-off Date in respect of installments of interest and principal due thereafter, but not including payments of principal and interest due and payable on such Loans on or before the Cut-off Date, and (ii) all Principal Prepayments, Liquidation Proceeds and other unscheduled payments received or receivable on the Loans on the Cut-off Date. On or prior to the Closing Date, each Seller shall deliver to the Depositor or, at the Depositor's direction, to the Trustee or other designee of the Depositor, the Mortgage File for each Loan listed in that portion of the Loan Schedule that pertains to such Seller. Such delivery of the Mortgage Files shall be made against payment by the Depositor of the purchase price, previously agreed to by such Seller and the Depositor, for the Loans listed on the Loan Schedule that pertain to such Seller. With respect to any Loan that does not require the first payment of principal or interest thereon to be made on or before such Loan's Due Date in the month prior to the first Distribution Date, such Seller shall deposit into the Certificate Account on the Closing Date, an amount equal to one month's interest at the related Mortgage Rate on the Cut-off Date Principal Balance of such Loan (the "Initial Certificate Account Deposit"). The Sellers, for the benefit of the Depositor, shall, in connection with the conveyance described in this Section 2.01(a), deliver to the Depositor on or prior to the Closing Date the financing statements described in Schedule VI. The Sellers shall also arrange for the delivery to the Depositor or its assignee, as applicable, of any appropriate Uniform Commercial Code continuation statements as may be necessary in connection with the financing statements referenced in the foregoing sentence.<br><br>"The Depositor, concurrently with the execution and delivery hereof, hereby irrevocably sells, transfers, grants, bargains, assigns, sets over and otherwise conveys to the Trustee for the benefit of the |

3

|  | Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund and the External Trust, together with the Depositor's right to require the Sellers (and Equity One-Delaware) to cure any breach of a representation or warranty made herein by the Sellers or to repurchase or substitute for any affected Loan in accordance with the provisions hereof. In addition, the Depositor, for the benefit of the Trustee and the Certificateholders, shall, in connection with the conveyance described in this Section 2.01(b), deliver to the Trustee on or prior to the Closing Date the financing statements described in Schedule VII. The Depositor shall also arrange for the delivery to the Trustee of any appropriate Uniform Commercial Code continuation statements as may be necessary in connection with the financing statements referenced in the foregoing sentence." |
|---|---|
| Pooling and Servicing Agreement related to FHAMS 2006-AA1 dated as of February 1, 2006 ("First Horizon PSA") § 2.1 | "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund together with (i) the Depositor's right to (A) require the Seller to cure any breach of a representation or warranty made by the Seller pursuant to the MLPA, or (B) repurchase or substitute for any affected Mortgage Loan in accordance herewith, and (ii) all right, title and interest of the Depositor in, to and under the Servicing Agreement, which right has been assigned to the Depositor pursuant to the MLPA.. . . <br><br> [W]ithin thirty days after the Closing Date, the Depositor shall either (i) deliver or cause to be delivered to the Trustee or the Custodian on its behalf the Mortgage File as required pursuant to this Section 2.1 for each Delay Delivery Mortgage Loan or (ii) (A) substitute or cause to be substituted a Substitute Mortgage Loan for the Delay Delivery Mortgage Loan or (B) repurchase or cause to be repurchased the Delay Delivery Mortgage Loan, which substitution or repurchase shall be accomplished in the manner and subject to the conditions set forth in Section 2.3 (treating each Delay Delivery Mortgage Loan as a Deleted Mortgage Loan for purposes of such Section 2.3)." |
| Pooling and Servicing Agreement related to HELT 2007-FRE1 dated as of June 1, 2007 ("Nationstar | "The Seller hereby bargains, sells, conveys, assigns and transfers to the Depositor, in trust, without recourse and for the exclusive benefit of the Owners of the Certificates, all of its right, title and interest in and to (a) all principal collected on the Home Equity Loans on and after the Cut-Off Date and all interest due on the Home Equity Loans after the Cut-Off Date, and any and all other benefits accruing from the Home Equity Loans which the Depositor is causing to be delivered to the Custodian on behalf of the Trustee herewith, together with the related Home Equity Loan documents and the Depositor's interest in any Property, and all payments thereon, including all Prepayment Charges, and proceeds of the conversion, voluntary or involuntary, of the foregoing, and (b) proceeds of all the foregoing (including, but not by way of limitation, all proceeds of any mortgage insurance, flood insurance, |

4

| PSA[3]") Conveyance | hazard insurance and title insurance policy relating to the Home Equity Loans, cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables which at any time constitute all or part of or are included in the proceeds of any of the foregoing) to pay the Certificates as specified herein (the 'Home Equity Loan Assets'). |
|---|---|
| | The Depositor, concurrently with the execution and delivery hereof, hereby bargains, sells, conveys, assigns and transfers to the Trustee for the benefit of the Owners of the Certificates, without recourse, all the right, title and interest of the Depositor in and to the Trust Estate. |
| | The Trustee acknowledges such sale, accepts the trusts hereunder in accordance with the provisions hereof and agrees to perform the duties herein in accordance with the provisions of the Operative Documents." |
| Pooling and Servicing Agreement related to NHEL 2006-3 dated as of January 1, 2006 ("NovaStar PSA[4]") § 2.01 | The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedule, including the related Cutoff Date Principal Balance, all interest accruing thereon on and after the Cutoff Date and all collections in respect of interest and principal due after the Cutoff Date; (ii) property which secured each such Mortgage Loan and which has been acquired by foreclosure or deed in lieu of foreclosure; (iii) its interest in any insurance policies in respect of the Mortgage Loans; (iv) its interest in the MI Policies; (v) the rights of the Depositor under the Purchase Agreement; (vi) its interest in the Hedge Agreements; (vii) all other assets included or to be included in the Trust Fund; and (viii) all proceeds of any of the foregoing. Such assignment includes all interest and principal due to the Depositor or the Servicer after the related Cutoff Date with respect to the Mortgage Loans." |

---

[3] Quotations to the Nationstar PSA herein are to the PSA executed in connection with the HELT 2007-FRE1 securitization. NSTR 2006-B and NSTR 2007-A were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

[4] Quotations to the NovaStar PSA herein are to the PSA executed in connection with the NHEL 2006-3 securitization. NHEL 2005-3 was issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

**Section II**

| | |
|---|---|
| Centex PSA Conveyance; § 3.06 | "The Trustee acknowledges such sale, accepts the trusts hereunder in accordance with the provisions hereof and agrees to perform the duties herein in accordance with the provisions of the Operative Documents." Conveyance<br><br>"The Trustee agrees to execute and deliver and the Trustee agrees to cause the Custodian to execute and deliver on behalf of the Trustee on the Startup Day an acknowledgment of receipt of the items delivered by CHEC in the forms attached as Exhibits E-1 and E-2 hereto, respectively, and declares through the Custodian that it will hold such documents and any amendments, replacements or supplements thereto, as well as any other assets included in the definition of Trust Estate and delivered to the Custodian, on behalf of the Trustee, as Trustee in trust upon and subject to the conditions set forth herein for the benefit of the Owners."<br>Centex PSA § 3.06 |
| Chase PSA § 2.02 | "Except as set forth in the Exception Report delivered contemporaneously herewith (the 'Exception Report'), the Trustee acknowledges receipt by the Custodian on the Trustee's behalf of the Mortgage Note for each Mortgage Loan and delivery of a Mortgage File (but does not acknowledge receipt of all documents required to be included in such Mortgage File) with respect to each Mortgage Loan and declares that the Custodian holds and will hold on the Trustee's behalf such documents and any other documents constituting a part of the Mortgage Files delivered to it in trust for the use and benefit of all present and future Related Certificateholders. The Depositor will cause the Seller to repurchase any Mortgage Loans to which an exception was taken in the Exception Report unless such exception is cured to the satisfaction of the Trustee within 45 Business Days of the Closing Date. The Trustee may accept delivery of such Mortgage Files by the Custodian on its behalf. The Custodian will deliver a copy of the Exception Report to the Depositor and the Trustee." |
| CWHEL Servicing Agreement § 2.02(d) | "The Custodian shall retain possession of each Mortgage File on behalf of the Indenture Trustee in accordance with the Custodial Agreement. The Master Servicer shall promptly deliver to the Indenture Trustee the originals of any other documents constituting the Mortgage File coming into its possession on their execution or receipt. Any documents to be delivered to the Indenture Trustee under this Agreement may be delivered to the Custodian acting on behalf of the Indenture Trustee." |
| EMC PSA § 2.02(a) | "The Trustee acknowledges the sale, transfer and assignment of the Trust Fund to it by the Depositor and receipt of, subject to further review and the exceptions which may be noted pursuant to the procedures described below, and declares that it holds, the documents (or certified copies thereof) delivered to it pursuant to Section 2.01, and |

| | declares that it will continue to hold those documents and any amendments, replacements or supplements thereto and all other assets of the Trust Fund delivered to it as Trustee in trust for the use and benefit of all present and future Holders of the Certificates. On the Closing Date, the Custodian shall acknowledge, with respect to each Mortgage Loan by an Initial Certification substantially in the form of Exhibit One to the Custodial Agreement, receipt of the Mortgage File, but without review of such Mortgage File, except to the extent necessary to confirm that such Mortgage File contains the related Mortgage Note or a lost note affidavit in lieu thereof." |
|---|---|
| Equity One § 2.02 | "The Trustee acknowledges receipt of the documents identified in the initial certification in the form annexed hereto as Exhibit D and declares that it holds and will hold such documents and the other documents delivered to it constituting the Mortgage Files, and that it holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders. The Trustee acknowledges that it will maintain possession of the Mortgage Notes in the State of Texas, unless otherwise permitted by the Rating Agencies. In the event that the Trustee desires to maintain possession of the Mortgage Notes in a state (other than the State of Texas) constituting one of the United States of America, the Trustee shall, at least thirty (30) days prior to discontinuing possession of the Mortgage Notes in the State of Texas, provide (i) a notice of such intention to the Rating Agencies and the Sellers and (ii) an Opinion of Counsel stating that such relocation of the Mortgage Notes and the possession by the Trustee of the Mortgage Notes in such other state will not (a) destroy or impair the perfection by the Trustee of the security interests assigned and granted to the Trustee pursuant to the provisions of Section 10.04 or (b) subject any REMIC to any state tax." |
| First Horizon PSA § 2.2 | "The Trustee or the Custodian, on behalf of the Trustee, acknowledges receipt of the documents identified in the Initial Certification in the form annexed hereto as Exhibit E and declares that it or the Custodian holds and will hold such documents and the other documents delivered to it or the Custodian, as applicable, constituting the Mortgage Files, and that it or the Custodian, as applicable, holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders. The Trustee acknowledges that the Custodian will maintain possession of the Mortgage Notes in the State of Texas, unless otherwise permitted by the Rating Agencies. . .The Trustee shall retain or shall cause the Custodian to retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions set forth herein. The Master Servicer shall promptly deliver to the Trustee or the Custodian on its behalf, upon the execution or receipt thereof, the originals of such other documents or instruments constituting the Mortgage File as come into the possession of the Master Servicer from time to time." |

| Nationstar PSA § 3.06(a) | "The Securities Administrator agrees to execute and deliver and the Securities Administrator agrees to cause the Custodian to execute and deliver on behalf of the Trustee on the Startup Day an acknowledgment of receipt of the items delivered by Nationstar Mortgage in the forms attached as Exhibits E-1 and E-2 hereto, respectively, and declares through the Custodian that it will hold such documents and any amendments, replacements or supplements for each file thereto. The Trustee agrees, for the benefit of the Owners, to cause the Custodian to review the items delivered by Nationstar Mortgage pursuant to Section 3.05(b)(i) within 45 days after the Startup Day (or, with respect to any document delivered after the Startup Day, within 45 days of receipt and with respect to any Qualified Replacement Mortgage, within 45 days after the assignment thereof) and to deliver to the Depositor, the Seller, the Servicer, the Master Servicer, the Securities Administrator and the Trustee a certification in the form attached hereto as Exhibit F (a "Pool Certification") to the effect that, as to each Home Equity Loan listed on each Schedule of Home Equity Loans (other than any Home Equity Loan paid in full or any Home Equity Loan specifically identified in such Pool Certification as not covered by such Pool Certification), (i) all documents required to be delivered to it pursuant to Section 3.05(b)(i) of this Agreement have been executed and are in its possession and that the Notes have been endorsed as set forth in Section 3.05(b)(i) hereof except as may be indicated in an exception report in the form attached hereto as Exhibit J (the 'Exception Report'), such Exception Report to be provided electronically concurrently with the delivery of the Pool Certification to the email address specified by the recipients, (ii) such documents have been reviewed by it and have not been mutilated, damaged or torn and relate to such Home Equity Loan and (iii) based on its examination and only as to the foregoing documents, the information set forth on each Schedule of Home Equity Loans related to the Loan Number, Borrower Number, Property Address and Original Balance accurately reflects the information set forth in the File, except as may be indicated in the Exception Report, such Exception Report to be provided electronically concurrently with the delivery of the Pool Certification to the e-mail addresses specified by the recipients. The Custodian, on behalf of the Trustee, shall have no responsibility for reviewing any File except as expressly provided in this subsection 3.06(a). Without limiting the effect of the preceding sentence, in reviewing any File, the Custodian, on behalf of the Trustee, shall have no responsibility for determining whether any document is valid and binding, whether the text of any assignment is in proper form (except to determine if the Trustee is the assignee), whether any document has been recorded in accordance with the requirements of any applicable jurisdiction or whether a blanket assignment is permitted in any applicable jurisdiction, but shall only be required to determine whether a document has been executed, that it appears to be what it purports to be, and, where |

8

| | |
|---|---|
| | applicable, that it purports to be recorded. The Custodian, on behalf of the Trustee, shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that they are genuine, enforceable, or appropriate for the represented purpose or that they are other than what they purport to be on their face, nor shall the Custodian, on behalf of the Trustee, be under any duty to determine independently whether there are any intervening assignments or assumption or modification agreements with respect to any Home Equity Loan." |
| NovaStar PSA § 2.02(a) | "The Custodian, on behalf of the Trustee, acknowledges receipt of, subject to the review described below and any exceptions it notes pursuant to the procedures described below, the documents (or certified copies thereof) referred to in Section 2.01 hereof and declares that it holds and will continue to hold those documents and any amendments, replacements or supplements thereto and all other assets of the Trust Fund in trust for the use and benefit of all present and future Certificateholders. No later than 45 days after the Closing Date and each Subsequent Transfer Date (or, with respect to any Eligible Substitute Mortgage Loan, within 5 Business Days after the receipt by the Custodian, on behalf of the Trustee, thereof and, with respect to any documents received beyond 45 days after the Closing Date or each Subsequent Transfer Date, promptly thereafter), the Custodian, on behalf of the Trustee, agrees, for the benefit of the Certificateholders, to review each Mortgage File delivered to it and to execute and deliver, or cause to be executed and delivered, to the Sponsor an initial certification in the form annexed hereto as Exhibit F-1. In conducting such review, the Custodian, on behalf of the Trustee, will ascertain whether all required documents described in Section 2.01 hereof have been executed and received and whether those documents relate, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans it has received, as identified in Exhibit B to this Agreement, as supplemented (provided, however, that with respect to those documents described in subclause (vii) of such section, the Custodian's obligations shall extend only to documents actually delivered pursuant to such subclause). In performing any such review, the Custodian, on behalf of the Trustee, may conclusively rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon. If the Custodian, on behalf of the Trustee, finds that any document constituting part of the Mortgage File not to have been executed or received, or to be unrelated to the Mortgage Loans identified in Exhibit B or Attachment B to Exhibit 2 of the Purchase Agreement or to appear to be defective on its face, the Custodian, on behalf of the Trustee, shall promptly notify the Sponsor of such finding and the Sponsor's obligation to cure such defect or repurchase or substitute for the related Mortgage Loan." |

**Section III**

| Centex PSA § 3.05(b) | "In connection with the transfer and assignment of the Home Equity Loans, CHEC agrees to: |
|---|---|
| | (i) deliver without recourse to the Custodian, on behalf of the Trustee. . . (A) the original Note endorsed in blank or to the order of the Trustee ('Pay to the order of JPMorgan Chase Bank, National Association, as Trustee for Centex Home Equity Loan Trust 2005-C, without recourse') and signed by manual signature of the Seller or the Conduit Seller, as applicable, or, if the original Note has been lost or destroyed and not replaced, an original lost note affidavit from the Seller, or the Conduit Seller, as applicable, stating that the original Note was lost or destroyed, together with a copy of the related Note, such lost note affidavits not to exceed 5% of the Pool Balance as of the Cut-Off Date; (B) either (1) if the original title insurance policy is not available, the original title insurance commitment or a copy thereof certified as a true copy by the closing agent or CHEC, and when available, the original title insurance policy or a copy certified by the issuer of the title insurance policy, (2) if title insurance is not available in the applicable state, the attorney's opinion of title, or (3) for a Home Equity Loan the original principal balance of which was equal to or less than $40,000, a title report and indemnity, (C) originals or copies of all intervening assignments certified as true copies by the closing agent or CHEC, showing a complete chain of title from origination to the Seller or the Conduit Seller, if any, including warehousing assignments, if recorded, (D) originals of all assumption and modification agreements, if any, (E) either: (1) the original Mortgage, with evidence of recording thereon (if such original Mortgage has been returned to the Seller or the Conduit Seller, as applicable, from the applicable recording office), or a copy of the Mortgage certified as a true copy by the closing agent or an Authorized Officer of CHEC, or (2) a copy of the Mortgage certified by the public recording office in those instances where the original recorded Mortgage has been lost and (F) the original assignments of Mortgages (as described in clause (b)(ii)) in recordable form and acceptable for recording in the state or other jurisdiction where the Property is located; |
| | (ii) cause, within 60 days following the Startup Day with respect to the Home Equity Loans, assignments of the Mortgages from the Seller or the Conduit Seller. . . |
| | (iii) deliver the title insurance policy or title searches or reports, the original Mortgages and such recorded assignments, together with originals or duly certified copies of any and all prior |

10

| | |
|---|---|
| | assignments (other than unrecorded warehouse assignments), to the Custodian, on behalf of the Trustee, within 15 days of receipt thereof by CHEC. . . ; and<br><br>(iv) furnish to the Trustee and the Rating Agencies, at CHEC's expense, an Opinion of Counsel with respect to the sale and perfection of the Home Equity Loans delivered to the Trust." |
| Chase PSA § 2.01 | "In connection with such assignment, the Depositor does hereby deliver to, and deposit with, the Custodian on behalf of the Trustee the following documents or instruments with respect to each Mortgage Loan so assigned: (i) With respect to each Mortgage Loan which is not a Coop Loan:<br><br>(A) Original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of ___, without recourse" and signed in the name of the last endorsee by an authorized officer.<br><br>(B) The original Mortgage (including all riders thereto) with evidence of recording thereon, or a copy thereof certified by the public recording office in which such Mortgage has been recorded or, if the original Mortgage has not been returned from the applicable public recording office, a true certified copy of the original that was sent for recording, certified by the Seller.<br><br>(C) The original policy of title insurance, or in the event such original title policy is unavailable a copy of the related policy (provided that use of a copy is acceptable to the related title insurance or escrow company), including riders and endorsements thereto, or if the policy has not yet been issued, a written commitment or interim binder or preliminary report of title issued by the title insurance or escrow company." |
| Sale and Servicing Agreement related to CWHEL 2006-I dated as of December 29, 2006 ("CWHEL Servicing Agreement") § 2.01 | "Concurrently with the execution and delivery of this Agreement, the Depositor hereby transfers to the Trust without recourse (subject to Sections 2.02 and 2.04) all of its right, title, and interest in (1) each Initial Mortgage Loan, including its Asset Balance (including all Additional Balances), the related Mortgage File, all property that secures the Mortgage Loan, and all collections received on it after the Cut-off Date (excluding payments due by the Cut-off Date); (2) property that secured an Initial Mortgage Loan that is acquired by foreclosure or deed in lieu of foreclosure; (3) the Depositor's rights under the Purchase Agreement; (4) the Depositor's rights under the hazard insurance policies; (5) all rights under any guaranty executed in connection with a Mortgage Loan; (6) all other assets included or to be included in the Trust for the benefit of the Secured Parties; and (7) all proceeds of the foregoing. This transfer to the Trust is to the Owner Trustee, on behalf of the Trust, and each reference in this Agreement to this transfer shall be construed accordingly. In addition, by the Closing Date, the |

11

| | |
|---|---|
| Indenture related to CWHEL 2006-I dated as of December 29, 2006 ("CWHEL Indenture[5]") Annex 1 | Depositor shall cause the Credit Enhancer to deliver the Policy to the Indenture Trustee for the benefit of the Holders of the Insured Notes."<br><br>"'Mortgage File' for each of the Mortgage Loans means the following documents:<br><br>(i) the original Mortgage Note endorsed in blank or, if the original Mortgage Note has been lost or destroyed and not replaced, an original lost note affidavit from the Sponsor stating that the original Mortgage Note was lost, misplaced, or destroyed, together with a copy of the Mortgage Note;<br><br>(ii) unless the Mortgage Loan is registered on the MERS(R) System, an original Assignment of Mortgage for the Mortgage Loan in blank in recordable form;<br><br>(iii) the original recorded mortgage with evidence of recording on it (noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan) or, if the original recorded mortgage with evidence of recording on it cannot be delivered by the Closing Date because of a delay caused by the public recording office where the original mortgage has been delivered for recordation or because the original mortgage has been lost, an accurate copy of the mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Sponsor or the Depositor, which may be a blanket certificate covering more than one mortgage, stating that the original mortgage has been dispatched to the appropriate public recording official for recordation or (ii) in the case of an original mortgage that has been lost, a certificate by the appropriate county recording office where the mortgage is recorded;<br><br>(iv) if applicable, the original of each intervening assignment needed for a complete chain of title for the mortgage from its original mortgagee or beneficiary to the Trust or in blank. . .with evidence of recording on them. . .;<br><br>(vi) the original of any guaranty executed in connection with the Mortgage Note;<br><br>(vii) the original of each assumption, modification, consolidation, or substitution agreement relating to the Mortgage Loan; and |

---

[5] Quotations to the CWHEL Indenture herein are to the Indenture related to the CWHEL 2006-I securitization. CHWEL 2007-B and CWHEL 2007-E were issued pursuant to Indentures with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

12

| | |
|---|---|
| | (viii) any security agreement, chattel mortgage, or equivalent instrument executed in connection with the Mortgage Loan" |
| EMC PSA § 2.01(b) | "In connection with the above sale, transfer and assignment, the Depositor hereby deposits with the Trustee, or the Custodian, as its agent, as described in the Mortgage Loan Purchase Agreement, with respect to each Mortgage Loan, (i) the original Mortgage Note, including any riders thereto, endorsed without recourse (A) to the order of the Trustee, or (B) in the case of a Mortgage Loan registered on the MERS(R) System, in blank, and in each case showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee, or a lost note affidavit with indemnity, together with a copy of the related Mortgage Note, (ii) the original Security Instrument (noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan), which shall have been recorded (or if the original is not available, a copy), with evidence of such recording indicated thereon (or if clause (x) in the proviso below applies, shall be in recordable form), (iii) unless the Mortgage Loan is registered on the MERS(R) System, a certified copy of the assignment (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged Property is located) to "JPMorgan Chase Bank, N.A., as Trustee," with evidence of recording with respect to each Mortgage Loan in the name of the Trustee thereon (or if clause (x) in the proviso below applies or for Mortgage Loans with respect to which the related Mortgaged Property is located in a state other than Maryland or an Opinion of Counsel has been provided as set forth in this Section 2.01(b), shall be in recordable form), (iv) all intervening assignments of the Security Instrument, if applicable and only to the extent available to the Depositor with evidence of recording thereon, (v) the original or a copy of the policy or certificate of primary mortgage guaranty insurance, to the extent available, if any, (vi) the original policy of title insurance or mortgagee's certificate of title insurance or commitment or binder for title insurance and (vii) originals of all assumption and modification agreements, if applicable and available; provided, however, that in lieu of the foregoing, the Depositor may deliver the following documents, under the circumstances set forth below: (x) in lieu of the original Security Instrument, assignments to the Trustee or intervening assignments thereof which have been delivered, are being delivered or will, upon receipt of recording information relating to the Security Instrument required to be included thereon, be delivered to recording offices for recording and have not been returned to the Depositor in time to permit their delivery as specified above, the Depositor may deliver, or cause to be delivered, a true copy thereof with a certification by the Depositor, the applicable Servicer or the title company issuing the related commitment for title insurance, on the face of such copy, substantially as follows: "Certified to be a true and correct |

13

| | |
|---|---|
| | copy of the original, which has been transmitted for recording"; (y) in lieu of the Security Instrument, assignment to the Trustee or intervening assignments thereof, if the applicable jurisdiction retains the originals of such documents (as evidenced by a certification from the Depositor, to such effect) the Depositor may deliver, or cause to be delivered, photocopies of such documents containing an original certification by the judicial or other governmental authority of the jurisdiction where such documents were recorded; and (z) the Depositor shall not be required to deliver intervening assignments or Mortgage Note endorsements between the related Underlying Seller and EMC Mortgage Corporation, between EMC Mortgage Corporation and the Depositor, and between the Depositor and the Trustee; and provided, further, however, that, in the case of Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the above documents, may deliver to the Trustee or the Custodian, as its agent, a certification to such effect and shall deposit all amounts paid in respect of such Mortgage Loans in the Distribution Account on the Closing Date. The Depositor shall deliver such original documents (including any original documents as to which certified copies had previously been delivered) to the Trustee or the Custodian, as its agent, promptly after they are received." |
| Equity One PSA § 2.01(c) | "In connection with the sale, transfer and assignment set forth in clause (b) above, the Depositor has delivered or caused to be delivered to the Trustee or a Custodian for the Trustee on or before the Closing Date, or shall deliver or cause to be delivered to the Trustee or a Custodian for the Trustee on or before such later date as is set forth below, for the benefit of the Certificateholders the following documents or instruments with respect to each Loan so sold, transferred and assigned:<br><br>(i) the original Mortgage Note endorsed (by manual or facsimile signature) as follows: "Pay to the order of JPMorgan Chase Bank, N.A. as trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-C without recourse," with all intervening endorsements and all riders and modifications showing a complete chain of endorsement from the originator to the Person endorsing it to the Trustee (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note);<br><br>(ii) except as provided below, the original recorded Mortgage;<br><br>(iii) an original recorded assignment of the Mortgage (which may be included in a blanket assignment or assignments), duly executed by the appropriate Seller and the Depositor, which assignment will not be delivered on or before the Closing Date, but shall be delivered within the time period set forth in this Section 2.01, together with, except as |

| | |
|---|---|
| | provided below, all interim recorded assignments of such Mortgage, if any, all riders or modifications to such Mortgage, if any, (each such assignment to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates, with the original to be recorded by the Servicer as follows: the Servicer shall promptly send such assignments for recording, and shall return the original recorded assignment to the Trustee once returned as recorded by the applicable recording office); <br><br> (iv) the original of each assumption, modification, written assurance or substitution agreement, if any; and <br><br> (v) except as provided below and with respect to Borrower Retention Loans, the original or duplicate original lender's title policy and all riders thereto. <br><br> Notwithstanding the foregoing, in lieu of providing the documents described in clause (iii) above, the Depositor may at its discretion provide evidence that the related Mortgage is held through the MERS (R) System. With respect to any MOM Loan, the original recorded Mortgage that is provided shall note the MIN of such MOM Loan. Certain Mortgages were or may be, at the sole discretion of the Servicer, originally recorded in the name of MERS (R), solely as nominee for the applicable Seller and its successors or assigns; furthermore, subsequent assignments of such Mortgages were or may be, at the sole discretion of the Servicer, registered electronically through the MERS (R) System. For certain other Loans, (i) the Mortgage was recorded in the name of the Seller, (ii) record ownership was later assigned to MERS (R), solely as nominee for that Seller, and (iii) subsequent assignments of the Mortgage were or may be, at the sole discretion of the Servicer, registered electronically through the MERS (R) System. For each of these Loans, MERS (R) serves as mortgagee of record on the Mortgage solely as a nominee in an administrative capacity on behalf of the Trustee, and does not have any beneficial interest in the Loan." |
| First Horizon PSA § 2.1 | "In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be delivered to the Trustee . . . for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned: <br><br> (i) (A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of, without recourse,' with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or (B) with respect to |

| | |
|---|---|
| | any Lost Mortgage Note, a lost note affidavit from the Seller stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note; <br><br> (ii) except as provided below and for each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage or a copy of such Mortgage certified by the Seller as being a true and complete copy of the Mortgage, and in the case of each MERS Mortgage Loan, the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the Seller as being a true and complete copy of the Mortgage; <br><br> (iii) in the case of a Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage, or a copy of such assignment certified by the Seller as being a true and complete copy of the assignment, in blank (which may be included in a blanket assignment or assignments), together with, except as provided below, all interim recorded assignments, or copies of such interim assignments certified by the Seller as being true and complete copies of the interim assignments, of such Mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office; <br><br> (iv) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; <br><br> (v) either the original or duplicate original title policy, or a copy of such title policy certified by the Seller as being a true and complete copy of the title policy, (including all riders thereto) with respect to the related Mortgaged Property . . . ." |
| Nationstar PSA § 3.05(b) | "In connection with the transfer and assignment of the Home Equity Loans, Nationstar Mortgage agrees to: <br><br> (i) deliver without recourse to the Custodian, on behalf of the Trustee, on the Startup Day with respect to each Home Equity Loan, (A) the original Note endorsed in blank or to the order of the Trustee ("Pay to the order of The Bank of New York, as Trustee for Home Equity Loan Trust 2007-FRE1, without recourse") and signed by the Seller, or, if the original Note has been lost or destroyed and not replaced, an original lost note affidavit from the Seller stating that the original Note was lost |

16

| | or destroyed, together with a copy of the related Note, such lost note affidavits not to exceed 5% of the Pool Balance as of the Cut-Off Date; (B) either (1) if the original title insurance policy is not available, the original title insurance commitment or a copy thereof certified as a true copy by the closing agent or Nationstar Mortgage, and when available, the original title insurance policy or a copy certified by the issuer of the title insurance policy, (2) if title insurance is not available in the applicable state, the attorney's opinion of title, or (3) for a Home Equity Loan the original principal balance of which was equal to or less than $40,000, a title report and indemnity, (C) originals or copies of all intervening assignments certified as true copies by the closing agent or Nationstar Mortgage, showing a complete chain of title from origination to the Seller including warehousing assignments, if recorded, (D) originals of all assumption and modification agreements, if any, (E) either: (1) the original Mortgage, with evidence of recording thereon (if such original Mortgage has been returned to the Seller from the applicable recording office), or a copy of the Mortgage certified as a true copy by the closing agent or an Authorized Officer of Nationstar Mortgage, or (2) a copy of the Mortgage certified by the public recording office in those instances where the original recorded Mortgage has been lost and (F) the original assignments of Mortgages (as described in clause (b)(ii)) in recordable form;<br><br>(ii) cause, within 60 days following the Startup Day with respect to the Home Equity Loans, assignments of the Mortgages from the Seller to "The Bank of New York, as Trustee of Home Equity Loan Trust 2007-FRE1 under the Pooling and Servicing Agreement dated as of June 1, 2007" to be submitted for recording in the appropriate jurisdictions; provided, further, that Nationstar Mortgage shall not be required to record an assignment of a Mortgage if Nationstar Mortgage furnishes to the Trustee, on or before the Startup Day, at Nationstar Mortgage's expense, an Opinion of Counsel with respect to the relevant jurisdiction that such recording is not necessary to perfect the Trustee's interest in the related Home Equity Loans (in form and substance reasonably satisfactory to the Trustee and the Rating Agencies); provided further, however, notwithstanding the delivery of any legal opinions, each assignment of Mortgage shall be recorded by Nationstar Mortgage upon the earliest to occur of: (i) the occurrence of a Servicer Termination Event, (ii) if the Seller is not the Servicer and with respect to any one assignment of Mortgage, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage, or (iii) the occurrence of a bankruptcy or insolvency relating to the Seller;<br><br>(iii) deliver the title insurance policy or title searches or reports, the original Mortgages and such recorded assignments, together with originals or duly certified copies of any and all prior assignments (other than unrecorded warehouse assignments), to the Custodian, on behalf of |
|---|---|

17

| | |
|---|---|
| | the Trustee, within 15 days of receipt thereof by Nationstar Mortgage, but in any event, with respect to any Mortgage as to which original recording information has been made available to the Seller, within one year after the Startup Day; and<br><br>(iv) furnish to the Trustee, the Securities Administrator and the Rating Agencies, at Nationstar Mortgage's expense, an Opinion of Counsel with respect to the sale and perfection of the Home Equity Loans delivered to the Trust.<br><br>In connection with the transfer and assignment set forth in clause (i) above, the Depositor has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificateholders the documents or instruments set forth in clause (i) above, with respect to each Home Equity Loan." |
| NovaStar PSA § 2.01 | "In connection with such transfer and assignment, the Sponsor, on behalf of the Depositor, does hereby deliver to, and deposit with the Custodian, as the Trustee's designated agent, the following documents or instruments with respect to each Initial Mortgage Loan so transferred and assigned and the Sponsor, on behalf of the Depositor, shall, in accordance with Section 2.08, deliver or cause to be delivered to Custodian, as the Trustee's designated agent, with respect to each Subsequent Mortgage Loan, the following documents or instruments (with respect to each Mortgage Loan, a 'Mortgage File'):<br>(i) the original Mortgage Note endorsed to 'JPMorgan Chase Bank, National Association, as Trustee for the NovaStar Home Equity Loan Asset-Backed Notes, Series 2006-3,';<br><br>(ii) the original Mortgage with evidence of recording indicated thereon, or, if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage certified by the Sponsor or the public recording office in which such original Mortgage has been recorded, and if the Mortgage Loan is registered on the MERS System, such Mortgage shall include thereon a statement that it is a MOM Loan and shall include the MIN for such Mortgage Loan;<br><br>(iii) unless the Mortgage Loan is registered on the MERS System, an original assignment (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage endorsed to 'JPMorgan Chase Bank, National Association, as Trustee for the NovaStar Home Equity Loan Asset-Backed Certificates, Series 2006-3', and otherwise in recordable form;<br><br>(iv) originals of any intervening assignments of the Mortgage showing an unbroken chain of title from the originator thereof to the Person assigning it to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS System), and noting the presence of a MIN (if the Mortgage Loan is registered on the MERS System), with evidence |

18

| | of recording thereon, or, if the original of any such intervening assignment has not yet been returned from the public recording office, a copy of such original intervening assignment certified by the Sponsor or the public recording office in which such original intervening assignment has been recorded; <br><br> (v) the original policy of insurance (or commitment for title insurance, if the policy is being held by the title insurance company pending recordation of the Mortgage); and <br><br> (vi) a true and correct copy of each assumption, modification, consolidation or substitution agreement, if any, relating to the Mortgage Loan." |
| --- | --- |

## Section IV

| Centex PSA § 3.06(a), | "The Trustee agrees, for the benefit of the Owners, to cause the Custodian to review the items delivered by CHEC pursuant to Section 3.05(b)(i) within 45 days after the Startup Day (or, with respect to any document delivered after the Startup Day, within 45 days of receipt and with respect to any Qualified Replacement Mortgage, within 45 days after the assignment thereof) and to deliver to the Depositor, the Seller, the Conduit Seller, the Servicer and the Trustee a certification in the form attached hereto as Exhibit F (a "Pool Certification") to the effect that, as to each Home Equity Loan listed in the Schedule of Home Equity Loans (other than any Home Equity Loan paid in full or any Home Equity Loan specifically identified in such Pool Certification as not covered by such Pool Certification), (i) all documents required to be delivered to it pursuant to Section 3.05(b)(i) of this Agreement have been executed and are in its possession and that the Notes have been endorsed as set forth in Section 3.05(b)(i) hereof, (ii) such documents have been reviewed by it and have not been mutilated, damaged or torn and relate to such Home Equity Loan and (iii) based on its examination and only as to the foregoing documents, the information set forth on the Schedule of Home Equity Loans accurately reflects the information set forth in the File, except as may be indicated in an exception report in the form attached hereto as Exhibit J ("Exception Report"), such Exception Report to be provided electronically concurrently with the delivery of the Pool Certification to the email addresses specified by the recipients." |
|---|---|
| Chase PSA § 2.02 | "The Custodian, on the Trustee's behalf, agrees, for the benefit of Related Certificateholders, to review each Mortgage File delivered to it within 270 days after the Closing Date to ascertain that all documents required by Section 2.01 have been executed and received, and that such documents relate to the Mortgage Loans identified in Exhibit A1 or Exhibit A2 that have been conveyed to it. If the Custodian on the Trustee's behalf finds any document or documents constituting a part of a Mortgage File to be missing or defective (that is, mutilated, damaged, defaced or unexecuted) in any material respect, the Custodian on the Trustee's behalf shall promptly (and in any event within no more than five Business Days) after such finding so notify the Servicer, the Seller, the Trustee and the Depositor. . . . <br><br>Within 280 days of the Closing Date, the Trustee based solely on information provided to it by the Custodian shall deliver to the Depositor and the Servicer the Trustee's Certification, substantially in the form of Exhibit G attached hereto, setting forth the status of the Mortgage Files as of such date." |
| CWHEL Servicing Agreement § 2.02(a) | "Within 180 days after the Closing Date the Custodian shall deliver to the Depositor, the Master Servicer, and the Sponsor (with a copy to the Credit Enhancer) a Final Certification pursuant to the Custodial Agreement. The Sponsor shall correct any defect noted in the Final |

20

| | |
|---|---|
| CWHEL Indenture Ex. B – Custodial Agreement § 2(b) | Certification within 90 days of its receipt and in no event later than 270 days after the Closing Date." CWHEL Servicing Agreement § 2.02(a).<br><br>"Not later than 180 days after the Closing Date, the Custodian will deliver to the Depositor, the Master Servicer, and the Sponsor (with a copy to the Issuer, the Indenture Trustee, and the Credit Enhancer) a Final Certification in the form of Exhibit C, noting any applicable exceptions." CWHEL Indenture Ex. B – Custodial Agreement § 2(b). |
| EMC PSA § 2.02(a), (b) | "On the Closing Date, the Custodian shall acknowledge, with respect to each Mortgage Loan by an Initial Certification substantially in the form of Exhibit One to the Custodial Agreement, receipt of the Mortgage File, but without review of such Mortgage File, except to the extent necessary to confirm that such Mortgage File contains the related Mortgage Note or a lost note affidavit in lieu thereof. No later than 90 days after the Closing Date (or, with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or Custodian thereof), the Trustee agrees, for the benefit of the Certificateholders, to review or cause to be reviewed by the Custodian on its behalf (under the Custodial Agreement), each Mortgage File delivered to it and to execute and deliver, or cause to be executed and delivered, to the Depositor and the Trustee an Interim Certification substantially in the form annexed as Exhibit Two to the Custodial Agreement. In conducting such review, the Trustee or Custodian will ascertain whether all required documents have been executed and received, and based on the Mortgage Loan Schedule, whether those documents relate, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans it has received, as identified in the Mortgage Loan Schedule. . .<br><br>(b) No later than 180 days after the Closing Date (or with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or the Custodian thereof), the Trustee or the Custodian, as its agent, will review, for the benefit of the Certificateholders, the Mortgage Files delivered to it and will execute and deliver or cause to be executed and delivered to the Depositor and the Trustee a Final Certification substantially in the form annexed as Exhibit Three to the Custodial Agreement. In conducting such review, the Trustee or the Custodian, as its agent, will ascertain whether an original of each document required to be recorded has been returned from the recording office with evidence of recording thereon or a certified copy has been obtained from the recording office." |
| Equity One PSA § 2.02 | "The Trustee agrees to execute and deliver on the Closing Date to the Depositor, the Servicer and the Sellers an initial certification in the form annexed hereto as Exhibit D. Based on its review and examination, and only as to the documents identified in such initial certification, the Trustee shall acknowledge that such documents appear regular on their face and relate to the Loans listed in the Loan Schedule or shall indicate |

|  | any noted deviations. The Trustee, at the time of delivery of the initial certification, shall be under no duty or obligation (i) to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face or (ii) to determine whether the Mortgage File shall include any of the documents listed in Section 2.01(c), except for the Mortgage Note. Should there be any exceptions to the Trustee's initial certification as to the Mortgage Notes, the appropriate Seller shall have thirty (30) days from the Closing Date to cure such exception or deliver a Mortgage File or Mortgage Files for a Substitute Loan or Substitute Loans in accordance with Section 2.03(c). A Seller may cure an exception based on absence of a Mortgage Note for a Loan by delivering an executed copy of an Affidavit of Lost Note in the form attached as Annex I to Exhibit D hereto to the Trustee. |
|---|---|
|  | Not later than 90 days after the Closing Date, the Trustee shall deliver to the Depositor, the Servicer and the Sellers a final certification in the form annexed hereto as Exhibit E, with any applicable exceptions noted thereon. At any time upon request (but not more frequently than once per calendar month), the Trustee shall deliver to the Depositor, the Servicer and the Sellers, an updated schedule of open exceptions in electronic or written format." |
| First Horizon PSA § 2.2 | "The Trustee agrees to execute and deliver or to cause the Custodian to execute and deliver on the Closing Date to the Depositor and the Master Servicer an Initial Certification in the form annexed hereto as Exhibit E. Based on its or the Custodian's review and examination, and only as to the documents identified in such Initial Certification, the Custodian, on behalf of the Trustee, acknowledges that such documents appear regular on their face and relate to such Mortgage Loan. Neither the Trustee nor the Custodian shall be under any duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face. |
|  | Not later than 90 days after the Closing Date, the Trustee shall deliver or shall cause the Custodian to deliver to the Depositor and the Master Servicer a Subsequent Certification in the form annexed hereto as Exhibit G, with any applicable exceptions noted thereon." |
| Nationstar PSA §§ 3.06(a); 3.06(c) | "The Trustee agrees, for the benefit of the Owners, to cause the Custodian to review the items delivered by Nationstar Mortgage pursuant to Section 3.05(b)(i) within 45 days after the Startup Day (or, with respect to any document delivered after the Startup Day, within 45 |

22

| | |
|---|---|
| | days of receipt and with respect to any Qualified Replacement Mortgage, within 45 days after the assignment thereof) and to deliver to the Depositor, the Seller, the Servicer, the Master Servicer, the Securities Administrator and the Trustee a certification in the form attached hereto as Exhibit F (a "Pool Certification") to the effect that, as to each Home Equity Loan listed on each Schedule of Home Equity Loans (other than any Home Equity Loan paid in full or any Home Equity Loan specifically identified in such Pool Certification as not covered by such Pool Certification), (i) all documents required to be delivered to it pursuant to Section 3.05(b)(i) of this Agreement have been executed and are in its possession and that the Notes have been endorsed as set forth in Section 3.05(b)(i) hereof except as may be indicated in an exception report in the form attached hereto as Exhibit J (the "Exception Report"), such Exception Report to be provided electronically concurrently with the delivery of the Pool Certification to the email address specified by the recipients, (ii) such documents have been reviewed by it and have not been mutilated, damaged or torn and relate to such Home Equity Loan and (iii) based on its examination and only as to the foregoing documents, the information set forth on each Schedule of Home Equity Loans related to the Loan Number, Borrower Number, Property Address and Original Balance accurately reflects the information set forth in the File, except as may be indicated in the Exception Report, such Exception Report to be provided electronically concurrently with the delivery of the Pool Certification to the e-mail addresses specified by the recipients." Nationstar PSA § 3.06(a)<br><br>"In addition to the foregoing, the Custodian, on behalf of the Trustee also agrees to make a review during the 12th month after the Startup Day indicating the current status of the exceptions previously indicated on the Exception Report delivered electronically concurrently with the Pool Certification in the form attached hereto as Exhibit F (the "Final Certification") and, by the end of the 12th month after the Startup Day, deliver electronically to the Depositor, the Seller, the Servicer, the Master Servicer, the Securities Administrator and the Trustee (to the e-mail addresses specified by the recipients) such Final Certification. After delivery of the Final Certification, the Custodian, on behalf of the Trustee and the Servicer shall provide electronically to the Trustee (to the e-mail address specified by the Trustee) no less frequently than monthly updated Exception Report indicating the then current status of exceptions, until all such exceptions have been eliminated." Nationstar PSA § 3.06(c) |
| NovaStar PSA § 2.02(b) | "No later than 180 days after the Closing Date, the Custodian, on behalf of the Trustee, will review, for the benefit of the Certificateholders, the Mortgage Files and will execute and deliver or cause to be executed and delivered to the Sponsor, a final certification in the form annexed hereto |

|  | as Exhibit F-2. In conducting such review, the Custodian, on behalf of the Trustee, will ascertain whether an original of each document described in subclauses (ii)-(iv) of Section 2.01 hereof required to be recorded has been returned from the recording office with evidence of recording thereon or a certified copy has been obtained from the recording office. If the Custodian, on behalf of the Trustee, finds any document constituting part of the Mortgage File has not been received, or to be unrelated, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans identified in Exhibit B or Attachment B to Exhibit 2 of the Purchase Agreement or to appear defective on its face, the Custodian, on behalf of the Trustee, shall promptly notify the Sponsor and the Trustee of such finding and the Sponsor's obligation to cure such defect or repurchase or substitute for the related Mortgage Loan." |

**Section V**

| Centex PSA Exhibit F | "WHEREAS, the undersigned is an Authorized Officer of J.P. Morgan Trust Company, National Association, in its capacity as custodian (the "Custodian") under the Custodial Agreement dated June 1, 2005, between the Custodian and JPMorgan Chase Bank, National Association, acting in its capacity as trustee (the "Trustee") of a certain pool of home equity loans heretofore conveyed in trust to the Trustee, pursuant to that certain Pooling and Servicing Agreement dated as of June 1, 2005, (the "Pooling and Servicing Agreement") among CHEC Funding, LLC, as depositor, Centex Home Equity Company, LLC, a Delaware limited liability company, formerly Centex Credit Corporation, a Nevada corporation, as a seller and servicer, Harwood Street Funding II, LLC, as a seller, and the Trustee, as trustee; and

WHEREAS, the Custodian is required, pursuant to Section 3.06(a) of the Pooling and Servicing Agreement, to review the Files relating to the Home Equity Loans within a specified period following the Startup Day and to notify the Seller promptly of any defects with respect to the Home Equity Loans, and the Seller is required to remedy such defects or take certain other action, all as set forth in Section 3.06(b) of the Pooling and Servicing Agreement; and

WHEREAS, Section 3.06(a) of the Pooling and Servicing Agreement requires the Custodian to deliver this Pool Certification upon the satisfaction of certain conditions set forth therein.

NOW, THEREFORE, the Custodian hereby certifies that it has determined that all required documents (or certified copies of documents listed in Section 3.05 of the Pooling and Servicing Agreement) have been executed or received, and that such documents relate to the Home Equity Loans identified in the Schedule of Home Equity Loans pursuant to Section 3.06(a) of the Pooling and Servicing Agreement or, in the event that such documents have not been executed and received or do not so relate to such Home Equity Loans, any remedial action by the Seller pursuant to Section 3.06(b) of the Pooling and Servicing Agreement has been completed. The Custodian makes no certification hereby, however, with respect to any intervening assignments or assumption and modification agreements.

Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Pooling and Servicing Agreement.

J.P. MORGAN TRUST COMPANY, NATIONAL ASSOCIATION,
                              as Custodian" |
|---|---|

25

| | |
|---|---|
| Chase PSA Exhibit G | "The Bank of New York Trust Company, N.A., as trustee (the "Trustee") under the Pooling and Servicing Agreement dated as of July 1, 2007 (the "Agreement") among Chase Mortgage Finance Corporation (the "Company"), the Trustee, the Paying Agent and JPMorgan Chase Bank, N.A., regarding ChaseFlex Trust Series 2007-M1, hereby certifies that, except as noted in the Exception Report: <br><br> 1. The Trustee or the Custodian on behalf of the Trustee took the Mortgage Notes and other property in the Trust Fund in good faith for value and without notice or knowledge (i) of any adverse claims, liens or encumbrances, (ii) that any Mortgage Note was overdue or had been dishonored or subject to any security interest or other right or interest therein, or (iii) of any defense against or claim to the Mortgage Notes or other property in the Trust Fund on the part of any entity; <br><br> 2. The Trustee or the Custodian on behalf of the Trustee received actual possession of the Mortgage Notes; and <br><br> 3. The Trustee or the Custodian on behalf of the Trustee took possession of the Mortgage Notes in the ordinary course of its business. <br><br> Capitalized words used herein shall have the respective meanings assigned to them in the Agreement. <br><br> IN WITNESS WHEREOF, the undersigned executed this Trustee's Certificate as of the 26th day of July, 2007. <br><br> THE BANK OF NEW YORK TRUST <br><br> COMPANY, N.A., <br><br> as Trustee" |
| CWHEL Indenture Exhibit B – Custodial Agreement Exhibit C | "Gentlemen: <br><br> In accordance with Section 2.02 of the above-captioned Sale and Servicing Agreement (the "Sale and Servicing Agreement"), the undersigned, as Indenture Custodian for the Indenture Trustee, hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attached Document Exception Report) it has received: <br><br> (i) the original Mortgage Note endorsed in blank or, if the original Mortgage Note has been lost or destroyed and not replaced, an original lost note affidavit from the Sponsor stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note; <br><br> (ii) unless the Mortgage Loan is registered on the MERS(R) System, |

an original Assignment of Mortgage in blank in recordable form;

(iii) the original recorded Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, or, if, in connection with any Mortgage Loan, the original recorded Mortgage with evidence of recording thereon cannot be delivered on or before the Closing Date or Subsequent Closing Date because of a delay caused by the public recording office where such original Mortgage has been delivered for recordation or because such original Mortgage has been lost, an accurate copy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Sponsor which may be in the form of a blanket certificate of the Sponsor covering more than one Mortgage stating that such original Mortgage has been dispatched to the appropriate public recording official or (ii) in the case of an original Mortgage that has been lost, a copy certified by the appropriate county recording office where such Mortgage is recorded;

(iv) if applicable, the original of each intervening assignment needed for a complete chain of title for the mortgage from its original mortgagee or beneficiary to the Trust or in blank (or if the Mortgage Loan is registered on the MERS(R) System to MERS and noting the presence of a MIN) with evidence of recording thereon, or, if any such original intervening assignment has not been returned from the applicable recording office or has been lost, a true and correct copy thereof, together with (i) in the case of a delay caused by the public recording office, an Officer's Certificate of the Sponsor or the Depositor, which may be a blanket certificate covering more than one intervening assignment, stating that such original intervening assignment has been dispatched to the appropriate public recording official for recordation or (ii) in the case of an original intervening assignment that has been lost, a copy certified by the appropriate county recording office where such Mortgage is recorded;

(v) a title policy '(e.g., ALTA, FACT, PIRT, etc.)', a signed binder or commitment for a title policy, or a preliminary title report (in those states in which preliminary title reports are the customary form of title policy commitment) for each Mortgage Loan with a Credit Limit in excess of $100,000;

(vi) the original of any guaranty executed in connection with the Mortgage Note;

(vii) the original of each assumption, modification, consolidation or substitution agreement, if any, relating to the Mortgage Loan; and

27

| | (viii) any security agreement, chattel mortgage or equivalent instrument executed in connection with the Mortgage.<br><br>Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face (i.e. are not mutilated, damaged, defaced, torn, or otherwise physically altered) and related to such Mortgage Loan, and (b) the information set forth in items (ii), (iii), and (iv), of the itemization of contents of the 'Mortgage Loan Schedule' in the Adoption Annex to the Indenture accurately reflects information set forth in the Mortgage File, and (c) the information set forth in item (v) of the itemization of contents of the "Mortgage Loan Schedule" in the Adoption Annex to the Indenture was delivered to the Custodian.<br><br>The Indenture Custodian has made no independent examination of any documents in each Mortgage File beyond the review specifically required in the Sale and Servicing Agreement. The Indenture Custodian makes no representations<br>as to: (i) the validity, legality, sufficiency, enforceability, or genuineness of any of the documents in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness, or suitability of any Mortgage Loan.<br><br>In reviewing any Mortgage File pursuant to this certification, the Custodian is not responsible for determining whether any document is valid and binding, whether the text of any assignment or endorsement is in proper or recordable form (except, if applicable, to determine if the Issuer or the Indenture Trustee is the assignee or endorsee), whether any document has been recorded in accordance with the requirements of any applicable jurisdiction, or whether a blanket assignment is permitted in any applicable jurisdiction, whether any person executing any document is authorized to do so or whether any signature on any document is genuine, but shall only be required to determine whether a document has been executed, that it appears to be what it purports to be, and, where applicable, that it purports to be recorded.<br><br>Capitalized words and phrases used in this Certification have the meanings assigned to them in the Sale and Servicing Agreement.<br><br>Treasury Bank, a division of Countrywide Bank, N.A.,<br>as Custodian for the Indenture Trustee" |
|---|---|
| EMC Custodial Agreement related to SAMI 2005- | "Ladies and Gentlemen:<br><br>In accordance with Section 2.3 of the above-captioned Custodial Agreement, the undersigned, as Custodian, hereby certifies that it has |

| | |
|---|---|
| AR4 dated as of June 30, 2005 ("EMC Custodial Agreement"[6]) Exhibit 3 | received a Mortgage File to the extent required pursuant to the Pooling and Servicing Agreement with respect to each Mortgage Loan listed in the Mortgage Loan Schedule, and it has reviewed the Mortgage File and the Mortgage Loan Schedule and has determined that an original of each document related thereto required to be recorded has been returned from the related recording office with evidence of recording thereon, or a certified copy has been obtained from the related recording office, with any exceptions listed on Schedule A attached hereto.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Custodial Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION" |
| Equity One PSA Exhibit E | "Gentlemen:

In accordance with Section 2.02 of the above-captioned Pooling and Servicing Agreement (the "Pooling and Servicing Agreement"), the undersigned, as Trustee, hereby certifies that as to each Loan listed in the Loan Schedule (other than any Loan paid in full or listed on the attached Exception Report), except as set forth on the Exception Report attached hereto, it has received:

(i) the original Mortgage Note and confirms that the name on the Mortgage Note matches that on the Loan Schedule;

(ii) the original recorded Mortgage (unless such Mortgage has not yet been returned by the relevant recording office, as certified by the Depositor;
(iii) the original recorded assignment of the Mortgage in the form provided in Section 2.01(c) of the Pooling and Servicing Agreement;

(iv) the original or duplicate original recorded assignment or assignments of the Mortgage necessary to show a complete chain of assignment from the originator to the Seller, unless the Depositor has certified that the related assignment has not been returned from the applicable recording office; and

(v) the original or duplicate original lender's title policy and all riders thereto or, any one of an original title binder, an original preliminary title report or an original title commitment, or a copy thereof certified by the title company, unless the Depositor has certified that such title policy has |

---

[6] Quotations to the EMC Custodial Agreement herein are to the Custodial Agreement executed in connection with the SAMI 2005-AR4 securitization.  BSABS 2006-4, SAMI 2005-AR6, and SAMI 2006-AR3 were issued pursuant to a Custodial Agreement with substantially similar language and any differences are immaterial to the issues addressed in the Complaint.

| | not yet been received from the applicable title insurance company. |
|---|---|
| | Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face and related to such Loan, and (b) the information set forth in items (c), (d), (e) and (i) of the definition of the "Loan Schedule" in Article I of the Pooling and Servicing Agreement accurately reflects information set forth in the Mortgage File. |
| | The Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement. The Trustee makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Loans identified on the Loan Schedule, or (ii) the collectibility, insurability, effectiveness or suitability of any such Loan. |
| | Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement. |
| | JPMorgan Chase Bank, N.A., as Trustee" |
| First Horizon PSA Exhibit G | "Ladies and Gentlemen: |
| | In accordance with Section 3 of the above-captioned Custodial Agreement (the 'Custodial Agreement'), the undersigned, as Custodian hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attached exception report) it has received, unless otherwise provided in Section 2 of the Custodial Agreement: |
| | (i) (A) The original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of _____ without recourse,' with all intervening endorsements showing a complete chain of endorsements from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or (B) with respect to any Lost Mortgage Note, a lost note affidavit from the Seller stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note; |
| | (ii) except as provided in Section 2(c) of the Custodial Agreement and for each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage or a copy of such Mortgage certified by the Seller as being a true and complete copy of the Mortgage and in the case of each MERS Mortgage Loan, the presence of the MIN of the Mortgage Loans |

30

and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the Seller as being a trust and complete copy of the Mortgage;

(iii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage, or a copy of such assignment certified by the Seller as being a true and complete copy of the assignment, in blank (which may be included in a blanket assignment or assignments), together with, except as provided below, all interim recorded assignments, or copies of such interim assignments certified by the Seller as being true and complete copies of the interim assignments, of such Mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office;

(iv) the original or copies of each assumption, modification, written assurance or substitution agreement, if any;

(v) either the original or duplicate original title policy, or a copy of such title policy certified by the Seller as being a true and complete copy of the title policy, (including all riders thereto) with respect to the related Mortgaged Property, if available, provided that the title policy (including all riders thereto) will be delivered as soon as it becomes available, and if the title policy is not available, and to the extent required pursuant to the second paragraph below or otherwise in connection with the rating of the Certificates, a written commitment or interim binder or preliminary report of the title issued by the title insurance or escrow company with respect to the Mortgaged Property, or in lieu thereof, an Alternative Title Product or a copy of such Alternative Title Product certified by the Seller as being a true and complete copy of the Alternative Title Product; and

(vi) in the case of a Cooperative Loan, the originals of the following documents or instruments: (a) The Coop Shares, together with a stock power in blank; (b) The executed Security Agreement; (c) The executed Proprietary Lease; (d) The executed UCC-1 financing statement with evidence of recording thereon which have been filed in all places required to perfect the Seller's interest in the Coop Shares and the Proprietary Lease; and (e) Executed UCC-3 financing statements or their appropriate UCC financing statements required by state law, evidencing

31

| | |
|---|---|
| | a complete and unbroken line from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation). |
| | Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face and related to such Mortgage Loan, and (b) the information set forth in items (i), (ii), (iii), (iv), (vi) and (xi) of the definition of the 'Mortgage Loan Schedule' in Article I of the Pooling and Servicing Agreement accurately reflects information set forth in the Mortgage File. |
| | The Custodian has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Custodial Agreement. The Custodian makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan. Notwithstanding anything herein to the contrary, the Custodian has made no determination and makes no representations as to whether (i) any endorsement is sufficient to transfer all right, title, and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or (ii) any assignment is in recordable form or sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates. |
| | Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Custodial Agreement. |
| | FIRST TENNESSEE BANK NATIONAL ASSOCIATION, as Custodian" |
| Nationstar PSA Exhibit F | "WHEREAS, the undersigned is an Authorized Officer of Wells Fargo Bank, N.A., in its capacity as custodian (the "Custodian") under the Custodial Agreement dated June 1, 2007, among the Custodian, Nationstar Mortgage LLC, acting in its capacity as servicer, Wells Fargo Bank, N.A. not in its individual capacity, but solely as Securities Administrator (the "Securities Administrator") and The Bank of New York, not in its individual capacity, but solely as Trustee (the "Trustee") of a certain pool of home equity loans heretofore conveyed in trust to the Trustee, pursuant to that certain Pooling and Servicing Agreement dated as of June 1, 2007, (the "Pooling and Servicing Agreement") among Nationstar Funding LLC, as depositor, Nationstar Mortgage LLC, a Delaware limited liability company, as seller and servicer, Wells Fargo Bank, N.A., as master servicer and securities administrator and the Trustee, as trustee; and |
| | WHEREAS, the Custodian is required, pursuant to Section 3.06(a) of the Pooling and Servicing Agreement, to review the Files |

32

| | |
|---|---|
| | relating to the Home Equity Loans within a specified period following the Startup Day and to notify the Seller promptly of any defects with respect to the Home Equity Loans, and the Seller is required to remedy such defects or take certain other action, all as set forth in Section 3.06(b) of the Pooling and Servicing Agreement; and<br><br>WHEREAS, Section 3.06(a) of the Pooling and Servicing Agreement requires the Custodian to deliver this Pool Certification upon the satisfaction of certain conditions set forth therein.<br><br>NOW, THEREFORE, the Custodian hereby certifies that it has determined that all required documents (or certified copies of documents listed in Section 3.05 of the Pooling and Servicing Agreement) have been executed or received, and that such documents relate to the Home Equity Loans identified in the Schedule of Home Equity Loans pursuant to Section 3.06(a) of the Pooling and Servicing Agreement or, in the event that such documents have not been executed and received or do not so relate to such Home Equity Loans, any remedial action by the Seller pursuant to Section 3.06(b) of the Pooling and Servicing Agreement has been completed or as may be indicated in an exception report in the form attached hereto as Exhibit J. The Custodian makes no certification hereby, however, with respect to any intervening assignments or assumption and modification agreements.<br><br>Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Pooling and Servicing Agreement.<br><br>WELLS FARGO BANK, N.A.<br>as Custodian" |
| NovaStar PSA Exhibit F-2 | "Gentlemen:<br><br>In accordance with Section 2.03 of the above-captioned Agreement, and Section 2.01(c) of the Mortgage Loan Purchase Agreement, dated as of June 1, 2006 (the 'Purchase Agreement' and, together with the Agreement, the 'Agreements'), among NovaStar Mortgage, Inc., NovaStar Mortgage Funding Corporation, the Custodian and the Trustee, the undersigned, as Custodian, on behalf of the Trustee, hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attachment hereto) it has received the documents set forth in Section 2.01(c) of the Mortgage Loan Purchase Agreement.<br><br>The Custodian, on behalf of the Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Agreements. The Custodian, on behalf of the Trustee makes no representations that any documents |

33

specified in clause (vi) of Section 2.01(c) should be included in any Mortgage File. The Custodian, on behalf of the Trustee, makes no representations as to and shall not be responsible to verify: (i) the validity, legality, sufficiency, enforceability, due authorization, recordability or genuineness of any such documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan or (iii) the existence of any assumption, modification, written assurance or substitution agreement with respect to any Mortgage File if no such documents appear in the Mortgage File delivered to the Custodian, on behalf of the Trustee.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Agreement.

U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity but solely as Custodian"

**Section VI**

| Centex PSA §§ 3.06 (b); 2.05 | "If the Custodian, on behalf of the Trustee during such 45-day period finds any document constituting a part of a File which is not executed, has not been received, or is unrelated to the Home Equity Loans identified in the Schedule of Home Equity Loans, or that any Home Equity Loan does not conform to the description thereof as set forth in the Schedule of Home Equity Loans, the Custodian, on behalf of the Trustee shall promptly so notify the Depositor, CHEC and the Owners . . . If, however, within 90 days after such notice to it respecting such defect CHEC has not remedied the defect and the defect materially and adversely affects the interest in the related Home Equity Loan of the Owners, CHEC will (or will cause an Affiliate to) on the next succeeding Monthly Remittance Date (i) substitute in lieu of such Home Equity Loan a Qualified Replacement Mortgage and deliver the Substitution Amount to the Servicer for deposit in the Principal and Interest Account or (ii) purchase such Home Equity Loan at a purchase price equal to the Loan Purchase Price thereof, which purchase price shall be delivered to the Servicer for deposit in the Principal and Interest Account." <br><br> § 3.06 (b) <br><br> "All expenses of the Trust, including (i) the fees and reimbursable expenses of the Trustee in connection with the performance of its duties hereunder and (ii) to the extent not set forth herein, any other expenses of the Trustee that have been reviewed and approved by the Seller, which review shall not be required in connection with the enforcement of a remedy by the Trustee resulting from a default under this Agreement, shall be paid pursuant to Section 7.03(b)." <br> § 2.05 |
|---|---|
| Chase PSA §§ 2.02, 3.01 | "If the Custodian on the Trustee's behalf finds any document or documents constituting a part of a Mortgage File to be missing or defective (that is, mutilated, damaged, defaced or unexecuted) in any material respect, the Custodian on the Trustee's behalf shall promptly (and in any event within no more than five Business Days) after such finding so notify the Servicer, the Seller, the Trustee and the Depositor. In addition, the Custodian on the Trustee's behalf shall also notify the Servicer, the Seller, the Trustee and the Depositor, if (a) in examining the Mortgage Files, the documentation shows on its face (i) any adverse claim, lien or encumbrance, (ii) that any Mortgage Note was overdue or had been dishonored, (iii) any evidence on the face of any Mortgage Note or Mortgage of any security interest or other right or interest therein, or (iv) any defense against or claim to the Mortgage Note by any party or (b) the original Mortgage with evidence of recording thereon with respect to a Mortgage Loan is not received within 270 days of the Closing Date; provided, however, that if the Depositor cannot |

deliver the original Mortgage with evidence of recording thereon because of a delay caused by the public recording office where such Mortgage has been delivered for recordation, the Depositor shall deliver or cause to be delivered to the Custodian and the Trustee written notice stating that such Mortgage has been delivered to the appropriate public recording officer for recordation and thereafter the Depositor shall deliver or cause to be delivered such Mortgage with evidence of recording thereon upon receipt thereof from the public recording office. The Depositor shall request that the Seller correct or cure such omission, defect or other irregularity, or substitute a Mortgage Loan pursuant to the provisions of Section 3.03, within 60 days from the date the Seller was notified of such omission or defect and, if the Seller does not correct or cure such omission or defect within such period, that the Seller purchase such Mortgage Loan from the Trustee within 90 days from the date the Depositor notified the Seller and the Trustee of such omission, defect or other irregularity at the Purchase Price of such Mortgage Loan." § 2.02

"Upon discovery by any of the Depositor, the Servicer or the Trustee of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of a Mortgage Loan or the interest of the Certificateholders (or which materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the other parties and to the Seller, which notice shall specify the date of discovery. Pursuant to the Sale Agreement, the Seller shall within 90 days from the earlier of (i) the date of receipt of notice of such breach or (ii) the date the Seller otherwise discovers such breach, cure such breach, substitute a Mortgage Loan pursuant to the provisions of Section 3.03 or, if the breach relates to a particular Mortgage Loan, purchase such Mortgage Loan from the Trustee at the Purchase Price. The Purchase Price for the purchased Mortgage Loan shall be paid to the Servicer and shall be deposited by the Servicer in the Collection Account promptly upon receipt, and, upon receipt by the Trustee of written notification of such deposit signed by a Servicing Officer, the Trustee shall promptly release to the Seller the related Mortgage File, and the Trustee shall execute and deliver such instruments of transfer or assignment as may be provided to it by the Servicer, without recourse, as shall be necessary to vest in the Seller or its designee, as the case may be, any Mortgage Loan released pursuant hereto, and the Trustee shall have no further responsibility with regard to such Mortgage Loan. It is understood and agreed that the obligation of the Seller to cure, substitute or purchase any Mortgage Loan as to which such a breach has occurred shall constitute the sole remedy respecting such breach available to Certificateholders or the Trustee on behalf of Certificateholder." §3.01

36

| | |
|---|---|
| CWHEL Servicing Agreement § 2.04(c)-(d)<br><br><br>CWHEL Indenture Ex. B – Custodial Agreement § 2(b) | "(c) If the Sponsor, the  Depositor, the Master Servicer, the Credit Enhancer, or a Responsible Officer of the Indenture Trustee discovers a breach of any of the foregoing  representations and warranties, without regard to any limitation concerning the knowledge of the Sponsor, that materially and adversely affects the  interests of the Trust, the Indenture Trustee under the Indenture, the  Noteholders, or the Credit Enhancer in the Mortgage Loan, the party  discovering the breach shall give prompt notice to the other parties and the Credit Enhancer.<br><br>(d) The Sponsor shall use all reasonable efforts to cure in all material respects any breach of any of the foregoing representations and warranties  (other than a breach of the representation and warranty in Section 2.04 by  virtue of the repetition of Section 3.02(a)(5) of the Purchase Agreement)  within 90 days of becoming aware of it or, not later than the Business Day  before the Payment Date in the month following the Collection Period in which  the cure period expired (or any later date that the Indenture Trustee and the  Credit Enhancer consent to), all interest of the Trust in the Defective  Mortgage Loan shall, subject to the satisfaction of the requirements of  Section 2.07, automatically be retransferred without recourse, representation,  or warranty to the Sponsor and the Asset Balance of the Mortgage Loan shall be  deducted from the Loan Balance.  The cure for any breach of a representation and warranty relating to the characteristics of the Mortgage Loans in the related Loan Group in the aggregate shall be a repurchase of or substitution for only the Mortgage Loans necessary to cause the characteristics to comply with the related representation and warranty." CWHEL Servicing Agreement § 2.04.<br><br>"If, in the course of its review in connection with the Final Certification, the Custodian finds any document constituting a part of a Mortgage File that does not meet the requirements of Section 2.02 of the Sale and Servicing Agreement, the Custodian shall list the defect as an exception in the Final Certification. The Custodian is not obligated to examine the documents delivered to it to determine that they are genuine, enforceable, or appropriate for the represented purpose, or that they have actually been recorded in the real estate records, or that they are other than what they purport to be on their face. In reviewing any Mortgage File pursuant to this Section, the Custodian is not responsible for determining whether any document is valid and binding, whether the text of any assignment or endorsement is in proper or recordable form (except, if applicable, to determine if the Issuer or the Indenture Trustee is the assignee or endorsee), whether any document has been recorded in accordance with the requirements of any applicable jurisdiction, or whether a blanket assignment is permitted in any applicable jurisdiction, whether any person executing any document is authorized to do so or whether any signature on any document is genuine, but shall only be required to determine whether a document has been executed, that it |

37

| | |
|---|---|
| | appears to be what it purports to be, and, where applicable, that it purports to be recorded. The Sponsor will deliver and the Indenture Custodian will maintain continuous custody at its office identified in Section 3 of the documents required to be held by the Indenture Trustee in accordance with Section 2.01 of the Sale and Servicing Agreement with respect to any Eligible Substitute Mortgage Loans. The Master Servicer shall promptly deliver to the Indenture Custodian, and the Indenture Custodian will maintain continuous custody at its office identified in Section 3 of the originals of any other documents constituting the Mortgage File that come into the possession of the Master Servicer from time to time." CWHEL Indenture Ex. B – Custodial Agreement § 2(b). |
| EMC PSA §§ 2.02 (b), 2.03(b) | "No later than 180 days after the Closing Date (or with respect to any Substitute Mortgage Loan, within five Business Days after the receipt by the Trustee or the Custodian thereof), the Trustee or the Custodian, as its agent, will review, for the benefit of the Certificateholders, the Mortgage Files delivered to it and will execute and deliver or cause to be executed and delivered to the Depositor and the Trustee a Final Certification substantially in the form annexed as Exhibit Three to the Custodial Agreement. In conducting such review, the Trustee or the Custodian, as its agent, will ascertain whether an original of each document required to be recorded has been returned from the recording office with evidence of recording thereon or a certified copy has been obtained from the recording office. If the Trustee or the Custodian, as its agent, finds any document constituting part of the Mortgage File has not been received, or to be unrelated, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans identified on Exhibit B or to appear defective on its face, the Trustee or the Custodian, as its agent, shall promptly notify the Seller (provided, however, that with respect to those documents described in subsection (b)(iv), (b)(v) and (b)(vii) of Section 2.01, the Trustee's and the Custodian's obligations shall extend only to the documents actually delivered to the Trustee or Custodian pursuant to such subsections). In accordance with the Mortgage Loan Purchase Agreement, the Seller shall correct or cure any such defect or EMC shall deliver to the Trustee an Opinion of Counsel to the effect that such defect does not materially or adversely affect the interests of Certificateholders in such Mortgage Loan within 90 days from the date of notice from the Trustee of the defect and if the Seller is unable to cure such defect within such period, and if such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, then the Trustee shall enforce the Seller's obligation under the Mortgage Loan Purchase Agreement to, within 90 days from the Trustee's or Custodian's notification, provide a Substitute Mortgage Loan (if within two years of the Closing Date) or purchase such Mortgage Loan at the Repurchase Price; provided that, if such defect |

| | |
|---|---|
| | would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G 2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), any such cure, repurchase or substitution must occur within 90 days from the date such breach was discovered; provided, further, however, that if such defect relates solely to the inability of the Seller to deliver the original Security Instrument or intervening assignments thereof, or a certified copy thereof, because the originals of such documents or a certified copy have not been returned by the applicable jurisdiction, then the Seller shall not be required to purchase such Mortgage Loan if the Seller delivers such original documents or certified copy promptly upon receipt, but in no event later than 360 days after the Closing Date. The foregoing repurchase obligation shall not apply in the event that the Seller cannot deliver such original or copy of any document submitted for recording to the appropriate recording office in the applicable jurisdiction because such document has not been returned by such office; provided that the Seller shall instead deliver a recording receipt of such recording office or, if such receipt is not available, a certificate confirming that such documents have been accepted for recording, and delivery to the Trustee or the Custodian, as its agent, shall be effected by the Seller within thirty days of its receipt of the original recorded document."  § 2.02 (b)<br><br>"If the Depositor, the Securities Administrator or the Trustee discovers a breach of any of the representations and warranties set forth in the Mortgage Loan Purchase Agreement, which breach materially and adversely affects the value of the interests of Certificateholders or the Trustee in the related Mortgage Loan, the party discovering the breach shall give prompt written notice of the breach to the other parties. The Seller, within 90 days of its discovery or receipt of notice that such breach has occurred (whichever occurs earlier), shall cure the breach in all material respects or, subject to the Mortgage Loan Purchase Agreement, or Section 2.04 of this Agreement, as applicable, shall purchase the Mortgage Loan or any property acquired with respect thereto from the Trustee; provided, however, that if there is a breach of any representation set forth in the Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, and the Mortgage Loan or the related property acquired with respect thereto has been sold, then the Seller shall pay, in lieu of the Repurchase Price, any excess of the Repurchase Price over the Net Liquidation Proceeds received upon such sale." § 2.03 (b) |

39

| Equity One PSA §§ 2.02 and 2.03(c) | "If the Trustee finds any document constituting a part of a Mortgage File which does not meet the requirements of Section 2.01, the Trustee shall list such as an exception in the final certification; provided, however that the Trustee shall not make any determination as to whether (i) any endorsement is sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or (ii) any assignment is in recordable form or is sufficient to effect the assignment of and transfer to the assignee thereof under the mortgage to which the assignment relates. In performing any such review, the Trustee may conclusively rely on the Depositor as to the purported genuineness of any such document and any signature thereon. It is understood that the scope of the Trustee's review of the Mortgage Files is limited solely to confirming that the documents listed in Section 2.01(c) have been received and further confirming that any and all documents delivered pursuant to Section 2.01(c) have been executed and relate to the Loans identified in the Loan Schedule. The Trustee shall have no responsibility for determining whether any document is valid and binding, whether the text of any assignment or endorsement is in proper or recordable form, whether any document has been recorded in accordance with the requirements of any applicable jurisdiction, or whether a blanket assignment is permitted in any applicable jurisdiction. The appropriate Seller shall promptly correct or cure such defect within 90 days from the date it was so notified of such defect and, if such Seller does not correct or cure such defect within such period, such Seller shall either (a) substitute for the related Loan a Substitute Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.03, or (b) purchase such Loan from the Trustee within 90 days from the date such Seller was notified of such defect in writing at the Purchase Price of such Loan; provided, however, that in no event shall such substitution or purchase occur more than 540 days from the Closing Date. . ." Equity One PSA § 2.02<br><br>"Upon discovery by any of the parties hereto of a breach of a representation or warranty made pursuant to Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Loan, the party discovering such breach shall give prompt notice thereof to the other parties. Each Seller, for itself and not jointly and severally for all other Sellers, hereby covenants that within 90 days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to Section 2.03(b) with respect to any Loan listed on the Loan Schedule that pertains to such Seller, such Seller may, and if such breach materially and adversely affects the interests of the Certificateholders such Seller shall, cure such breach in all material respects, and if such breach is not so cured, may or shall, as the case may be, (i) if such 90-day period |

| | |
|---|---|
| | expires prior to the second anniversary of the Closing Date, remove such Loan (a "**Deleted Loan**") from the Trust Fund and substitute in its place a Substitute Loan, in the manner and subject to the conditions set forth in this Section or (ii) repurchase the affected Loan or Loans from the Trustee at the Purchase Price in the manner set forth below; provided, however, that any such substitution pursuant to (i) above shall not be effected prior to the delivery to the Trustee of the Opinion of Counsel required by Section 2.05 hereof, if any, and any such substitution pursuant to (i) above shall not be effected prior to the additional delivery to the Trustee of a Request for Release substantially in the form of Exhibit J and the Mortgage File for any such Substitute Loan. Notwithstanding the preceding sentence, any Loan that does not constitute a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code shall be subject to substitution or repurchase as provided in Section 2.05(b) of this Agreement. The appropriate Seller shall promptly reimburse the Servicer and the Trustee for any expenses reasonably incurred by the Servicer or the Trustee in respect of enforcing the remedies for such breach. With respect to the representations and warranties described in this Section which are made to the best of a Seller's knowledge, if it is discovered by either the Depositor, the appropriate Seller or the Trustee that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Loan or the interests of the Certificateholders therein, notwithstanding such Seller's lack of knowledge with respect to the substance of such representation or warranty, such inaccuracy shall be deemed a breach by such Seller of the applicable representation or warranty." Equity One PSA § 2.03(c) |
| First Horizon PSA §§ 2.2, 2.3 | "If, in the course of such review, the Trustee or the Custodian, on behalf of the Trustee, finds any document constituting a part of a Mortgage File which does not meet the requirements of Section 2.1, the Trustee shall list or shall cause the Custodian to list such as an exception in the Subsequent Certification; provided, however that neither the Trustee nor the Custodian shall make any determination as to whether (i) any endorsement is sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or (ii) any assignment is in recordable form or is sufficient to effect the assignment of and transfer to the assignee thereof under the mortgage to which the assignment relates.  The Seller shall promptly correct or cure such defect within 90 days from the date it was so notified of such defect and, if the Seller does not correct or cure such defect within such period, the Seller shall either (a) substitute for the related Mortgage Loan a Substitute Mortgage Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.3, or (b) purchase such Mortgage Loan from the Trustee within 90 days from the date the Seller was notified of such |

41

| | |
|---|---|
| | defect in writing at the Purchase Price of such Mortgage Loan; provided, however, that in no event shall such substitution or purchase occur more than 540 days from the Closing Date..."<br>First Horizon PSA § 2.2<br><br>"Upon discovery by any of the parties hereto of a breach of a representation or warranty made pursuant to Schedule B to the MLPA that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties. The Seller hereby covenants that within 90 days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty made pursuant to Schedule B to the MLPA which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) if such 90-day period expires prior to the second anniversary of the Closing Date, remove such Mortgage Loan (a 'Deleted Mortgage Loan') from the Trust Fund and substitute in its place a Substitute Mortgage Loan, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below; provided, however, that any such substitution pursuant to (i) above shall not be effected prior to the delivery to the Trustee of the Opinion of Counsel required by Section 2.5 hereof, if any, and any such substitution pursuant to (i) above shall not be effected prior to the additional delivery to the Trustee or the Custodian on its behalf of a Request for Release substantially in the form of Exhibit M and the Mortgage File for any such Substitute Mortgage Loan. The Seller shall promptly reimburse the Master Servicer and the Trustee for any expenses reasonably incurred by the Master Servicer or the Trustee in respect of enforcing the remedies for such breach. With respect to the representations and warranties described in this Section which are made to the best of the Seller's knowledge, if it is discovered by either the Depositor, the Seller or the Trustee that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interests of the Certificateholders therein, notwithstanding the Seller's lack of knowledge with respect to the substance of such representation or warranty, such inaccuracy shall be deemed a breach of the applicable representation or warranty."<br>First Horizon PSA § 2.2(b) |
| Nationstar PSA §§ 3.02(1), 3.06(b) | "Upon discovery by any of the Depositor, the Seller, the Master Servicer, the Servicer, the Securities Administrator, the Custodian, any Sub-Servicer, any Owner or the Trustee (each, for purposes of this paragraph, a party) of a breach of any of the representations and warranties set forth in this Section 3.02(1) which materially and |

| | adversely affects the interests of the Owners, the party discovering such breach shall give prompt written notice to the other parties. As promptly as practicable, but in any event within 60 days of its discovery or its receipt of notice of breach, the Servicer shall cure such breach in all material respects."<br>Nationstar PSA § 3.02(1)<br><br> "If the Custodian, on behalf of the Trustee during such 45-day period finds any document constituting a part of a File which is not executed, has not been received, or is unrelated to the Home Equity Loans identified in the Schedule of Home Equity Loans, or that any Home Equity Loan does not conform to the description thereof as set forth in the Schedule of Home Equity Loans, the Custodian, on behalf of the Trustee shall promptly so notify the Depositor, Nationstar Mortgage and the Owners. In performing any such review, the Custodian, on behalf of the Trustee may conclusively rely on Nationstar Mortgage as to the purported genuineness of any such document and any signature thereon. It is understood that the scope of the review of the items delivered by Nationstar Mortgage pursuant to Section 3.05(b)(i) is limited solely to confirming that the documents listed in Section 3.05(b)(i) have been executed and received, relate to the Files identified in the Schedule of Home Equity Loans and conform to the description thereof in the Schedule of Home Equity Loans. Nationstar Mortgage agrees to use reasonable efforts to remedy a material defect in a document constituting part of a File of which it is so notified by the Custodian, on behalf of the Trustee. If, however, within 90 days after such notice to it respecting such defect Nationstar Mortgage has not remedied the defect and the defect materially and adversely affects the interest in the related Home Equity Loan of the Owners, Nationstar Mortgage will (or will cause an Affiliate to) on the next succeeding Monthly Remittance Date (i) substitute in lieu of such Home Equity Loan a Qualified Replacement Mortgage and deliver the Substitution Amount to the Servicer for deposit in the Principal and Interest Account or (ii) purchase such Home Equity Loan at a purchase price equal to the Loan Purchase Price thereof, which purchase price shall be delivered to the Servicer for deposit in the Principal and Interest Account."<br>Nationstar PSA § 3.06(b) |
|---|---|
| NovaStar PSA §§ 2.01, 2.03 | "If a material defect in any Mortgage File is discovered which may materially and adversely affect the value of the related Mortgage Loan, or the interests of the Trustee or the Certificateholders in such Mortgage Loan, including if any document required to be delivered to the Custodian has not been delivered (provided that a Mortgage File will not be deemed to contain a defect for an unrecorded assignment under clause (iii) above for 180 days following submission of the assignment if the Sponsor has submitted such assignment for recording pursuant to the terms of the following paragraph), the Sponsor shall cure such defect or repurchase the related Mortgage Loan at the Repurchase Price or |

43

| | substitute an Eligible Substitute Mortgage Loan for the related Mortgage Loan upon the same terms and conditions set forth in Section 3.01 of the Purchase Agreement as to the Initial Mortgage Loans and the Subsequent Mortgage Loans and Section 2.02(c) of the Purchase Agreement as to the Subsequent Mortgage Loans for breaches of representations and warranties." § 2.01

"Upon discovery or receipt of written notice of any materially defective document in, or that a document is missing from, a Mortgage File or of the breach by the Sponsor of any representation, warranty or covenant under the Purchase Agreement in respect of any Mortgage Loan which materially adversely affects the value of such Mortgage Loan or the interest therein of the Certificateholders, the Custodian shall promptly notify the Sponsor and the Servicer of such defect, missing document or breach and request that the Sponsor deliver such missing document or cure such defect or breach no later than 90 days from the date of the discovery or receipt of written notice of such missing document, defect or breach, and if the Sponsor does not deliver such missing document or cure such defect or breach in all material respects during such period, the Custodian shall notify the Trustee and the Trustee shall enforce the Sponsor's obligation under the Purchase Agreement and cause the Sponsor to repurchase such Mortgage Loan from the Trust Fund at the Repurchase Price on or prior to the Determination Date following the expiration of such 90 day period." § 2.03 |
|---|---|

44

## Section VII

| | |
|---|---|
| Centex PSA § 10.01 | "Notwithstanding the foregoing, if a Servicer Termination Event of which an Authorized Officer of the Trustee shall have actual knowledge has occurred and has not been cured or waived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. . .. <br><br>No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that: <br><br>   (i)    This subsection shall not be construed to limit the effect of subsection (a) of this Section; <br>The Trustee shall not be personally liable for any error of judgment made in good faith by an Authorized Officer, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts. . . ." |
| Chase PSA § 10.01 | "The Trustee, prior to the occurrence of an Event of Default and after the curing of all Events of Default which may have occurred, undertakes to, and is empowered to, perform such duties and only such duties as are specifically set forth in this Agreement. Any permissive right of the Trustee as enumerated in this Agreement shall not be construed as a duty; provided that in case an Event of Default has occurred (which has not been cured), the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of such man's own affairs. <br><br>No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that: <br><br>(i) Prior to the occurrence of an Event of Default, and after the curing of all such Events of Default which may have occurred, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee and, in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement; <br><br>(ii) The Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the |

45

| | Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts. . . ." |
|---|---|
| CWHEL Indenture § 6.01 | "If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would use under the circumstances in the conduct of its own affairs, except when this Indenture or the Sale and Servicing Agreement requires it to follow the directions of the Credit Enhancer. . . <br><br>The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that: (i) this subsection does not limit the effect of Section 6.01(b); (ii) the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts. . ." |
| EMC PSA § 9.01 | "The Trustee, prior to the occurrence of an Event of Default and after the curing or waiver of all Events of Default which may have occurred, and the Securities Administrator each undertake to perform such duties and only such duties as are specifically set forth in this Agreement as duties of the Trustee and the Securities Administrator, respectively. If an Event of Default has occurred and has not been cured or waived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and subject to Section 8.02(b) use the same degree of care and skill in their exercise, as a prudent person would exercise under the circumstances in the conduct of his own affairs. . . <br><br>(d) No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that: <br><br>(i) Prior to the occurrence of an Event of Default, and after the curing or waiver of all such Events of Default which may have occurred, the duties and obligations of the Trustee and the Securities Administrator shall be determined solely by the express provisions of this Agreement, neither the Trustee nor the Securities Administrator shall be liable except for the performance of their respective duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee or the Securities Administrator and, in the absence of bad faith on the part of the Trustee or the Securities Administrator, respectively, the Trustee or the Securities Administrator, respectively, may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee or the |

| | |
|---|---|
| | Securities Administrator, respectively, and conforming to the requirements of this Agreement; |
| | (ii) Neither the Trustee nor the Securities Administrator shall be liable in its individual capacity for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee or an officer of the Securities Administrator, respectively, unless it shall be proved that the Trustee or the Securities Administrator, respectively, was negligent in ascertaining the pertinent facts; |
| | (iii) Neither the Trustee nor the Securities Administrator shall be liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the directions of the Holders of Certificates evidencing Fractional Undivided Interests aggregating not less than 25% of the Trust Fund, if such action or non-action relates to the time, method and place of conducting any proceeding for any remedy available to the Trustee or the Securities Administrator, respectively, or exercising any trust or other power conferred upon the Trustee or the Securities Administrator, respectively, under this Agreement. . .” |
| Equity One PSA § 8.01 | The Trustee, prior to the occurrence of an Event of Default of which a Responsible Officer of the Trustee shall have actual knowledge and after the curing of all Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case an Event of Default of which a Responsible Officer of the Trustee shall have actual knowledge has occurred and remains uncured or waived, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs. . .<br><br>Notwithstanding anything contained in this Section 8.01 to the contrary, no provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. |
| First Horizon PSA § 8.1 | “In case an Event of Default of which a Responsible Officer of the Trustee has actual knowledge has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. . ..<br><br>No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that: (i) unless an Event of Default of which a Responsible Officer of the Trustee has |

47

| | actual knowledge shall have occurred and be continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement. . .” |
|---|---|
| Nationstar PSA § 10.01 | “(a) [I]f a Servicer Termination Event or Master Servicer Termination Event of which an Authorized Officer of the Trustee or Securities Administrator shall have actual knowledge has occurred and has not been cured or waived, each of the Trustee and Securities Administrator shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person’s own affairs. . ..<br><br>(c) No provision of this Agreement shall be construed to relieve the Trustee or Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:<br><br>(i) This subsection shall not be construed to limit the effect of subsection (a) of this Section;<br><br>(ii) Neither the Trustee nor the Securities Administrator shall be personally liable for any error of judgment made in good faith by an Authorized Officer, unless it shall be proved that the Trustee or Securities Administrator, as applicable, was negligent in ascertaining the pertinent facts.” |
| NovaStar PSA § 8.01 | “On the Closing Date, the Trustee will act as disbursement agent and will distribute the proceeds from the sale of the Offered Certificates according to the closing settlement statement provided by the Sponsor. If a Servicing Default has occurred and is continuing, the Trustee shall exercise the rights and powers vested in it by this Agreement and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person’s own affairs. (a) Except during the continuance of a Servicing Default: (i) the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement with respect to the Trustee and no implied covenants or obligations shall be read into this Agreement against the Trustee; and (ii) in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement; provided, however, that the Trustee shall examine the certificates and opinions delivered to it to determine whether or not they conform to the requirements of this Agreement. (b) The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that: (i) |

| | this paragraph does not limit the effect of paragraph (9) of this Section 8.01; (ii) the Trustee shall not be liable for any error of judgment made in good faith by its Responsible Officer unless it is proved that the Trustee was negligent in ascertaining the pertinent facts; and (iii) the Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it from the Majority Certificateholders. The Trustee shall not be liable for interest on any money received by the Trustee. Money held in trust by the Trustee need not be segregated from other trust funds except to the extent required by law or the terms of this Agreement. No provision of this Agreement shall require the Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it. Subject to the other provisions of this Agreement and without limiting the generality of this Section 8.01, the Trustee shall have no duty (A) to see to any recording, filing or depositing of this Agreement or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the maintenance of any such recording or filing or depositing or to any rerecording, refiling or redepositing of any thereof, (B) to see to any insurance, (C) to see to the payment or discharge of any tax, assessment, or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, any part of the Trust Fund other than from funds available in the Distribution Account, or (D) to confirm or verify the contents of any reports or certificates of the Servicer delivered to the Trustee believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties." |
|---|---|

**Section VIII**

| Centex PSA § 8.01 | "Acting directly or through one or more Sub-Servicers as provided in Section 8.03, the Servicer shall service and administer the Home Equity Loans in accordance with this Agreement and the terms of the respective Home Equity Loans, and with prudent and reasonable care, using the degree of skill and attention that the Servicer exercises with respect to comparable home equity loans that it services for itself or others and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable but without regard to: (i) any relationship that the Servicer, any Sub-Servicer or any Affiliate of the Servicer or any SubServicer may have with the related Mortgagor; (ii) the ownership of any Certificate by the Servicer or any Affiliate of the Servicer; (iii) the Servicer's obligation to make Delinquency Advances or Servicing Advances; or (iv) the Servicer's or any Sub-Servicer's right to receive compensation for its services hereunder or with respect to any particular transaction." |
|---|---|
| Chase PSA §§ 5.01, 5.02, 5.04 | "The Servicer shall service and administer the Mortgage Loans and shall have full power and authority, acting alone or through Sub-Servicers as provided in Section 5.02, to do any and all things which it may deem necessary or desirable in connection with such servicing and administration, all in accordance with Accepted Servicing Practices. Without limiting the generality of the foregoing, the Servicer in its own name or in the name of a Sub-Servicer shall, pursuant to a power of attorney granted hereby by the Trustee for such purposes, when the Servicer or the Sub-Servicer, as the case may be, believes it appropriate in its best judgment, to execute and deliver, on behalf of the Certificateholders and the Trustee or any of them, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge and all other comparable instruments, with respect to the Mortgage Loans and with respect to the related Mortgaged Properties. The Servicer will indemnify the Trustee for any misuse of such power of attorney provided hereunder." Chase PSA § 5.01

"As part of its servicing activities hereunder, the Servicer, for the benefit of the Trustee and the Related Certificateholders, shall enforce the obligations of each Sub-Servicer under the related Sub-Servicing Agreement. Such enforcement, including, without limitation, the legal prosecution of claims, termination of Sub-Servicing Agreements as appropriate, and the pursuit of other remedies, shall be in such form and carried out to such an extent and at such time as the Servicer, in its good faith business judgment, would require were it the owner of the related Mortgage Loans." Chase § 5.02 |

50

| | |
|---|---|
| | "Notwithstanding any Sub-Servicing Agreement, any of the provisions of this <br><br> Agreement relating to agreements or arrangements between the Servicer and a Sub-Servicer or reference to actions taken through a Sub-Servicer or otherwise, the Servicer shall remain obligated and liable to the Trustee and Related Certificateholders for the servicing and administering of the Mortgage Loans in accordance with the provisions of this Agreement without diminution of such obligation or liability by virtue of such Sub-Servicing Agreements or arrangements or by virtue of indemnification from the Sub-Servicer and to the same extent and under the same terms and conditions as if the Servicer alone were servicing and administering the Mortgage Loans." <br> Chase PSA § 5.04 |
| CWHEL Servicing Agreement § 3.01 | "The Master Servicer shall service and administer the Mortgage Loans in a manner consistent with the terms of this Agreement and with general industry practice and shall have full power and authority, acting alone or through a subservicer, <br><br> • to execute and deliver, on behalf of the Secured Parties, the Trust, and the Indenture Trustee, customary consents or waivers and other instruments and documents, <br> • to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages (but only in the manner provided in this Agreement), <br> • to collect any Insurance Proceeds, Charged-off Loan Proceeds, and other Liquidation Proceeds, and <br> • to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan" |
| EMC PSA § 3.01; § 3.03(b) | "The Master Servicer shall, from and after the Closing Date, supervise, monitor and oversee the obligation of the Servicer to service and administer the Mortgage Loans in accordance with the terms of the Countrywide Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices." <br> EMC PSA § 3.01 <br><br> "The Master Servicer, for the benefit of the Trustee and the Certificateholders, shall enforce the obligations of the Servicer under the Countrywide Servicing Agreement, and shall, in the event that the Servicer fails to perform its obligations in accordance with the Countrywide Servicing Agreement, subject to the preceding paragraph, terminate the rights and obligations of the Servicer thereunder and act as servicer of the Mortgage Loans or cause the Trustee to enter into a new |

| | |
|---|---|
| | Servicing Agreement with a successor Servicer selected by the Master Servicer"<br><br>EMC PSA § 3.03 (b) |
| Equity One PSA § 3.01 | "For and on behalf of the Certificateholders, the Servicer shall service and administer the Loans in accordance with the terms of this Agreement and customary and usual standards of practice of prudent mortgage loan servicers, and shall maintain all material licenses necessary for the conduct of its business. In connection with such servicing and administration, the Servicer shall have full power and authority, acting alone and/or through Subservicers as provided in Section 3.02 hereof, to do or cause to be done any and all things that it may deem necessary or desirable in connection with such servicing and administration, including but not limited to, the power and authority, subject to the terms hereof, (i) to execute and deliver, on behalf of the Certificateholders and the Trustee, customary consents or waivers and other instruments and documents, (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages (but only in the manner provided in this Agreement), (iii) to collect any Insurance Proceeds and other Liquidation Proceeds and Recoveries and (iv) to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Loan; provided that the Servicer shall not take any action that is inconsistent with or prejudices the interests of the Trust Fund or the Certificateholders in any Loan or the rights and interests of the Depositor, the Trustee and the Certificateholders under this Agreement. The Servicer shall represent and protect the interests of the Trust Fund in the same manner as it protects its own interests in mortgage loans in its own portfolio in any claim, proceeding or litigation regarding a Loan, and shall not make or permit any modification, waiver or amendment of any Loan which would cause the Trust Fund to fail to qualify as one or more REMICs or result in the imposition of any tax under Section 860F(a) or Section 860G(d) of the Code. Without limiting the generality of the foregoing, the Servicer, in its own name or in the name of the Depositor and the Trustee, is hereby authorized and empowered by the Depositor and the Trustee, when the Servicer believes it appropriate in its reasonable judgment, to execute and deliver, on behalf of the Trustee, the Depositor, the Certificateholders or any of them, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge and all other comparable instruments, with respect to the Loans, and with respect to the Mortgaged Properties held for the benefit of the Certificateholders. The Servicer shall prepare and deliver to the Depositor and/or the Trustee such documents requiring execution and delivery by either or both of them as are necessary or appropriate to enable the Servicer to service and administer the Loans to the extent that the Servicer is not permitted to execute and deliver such documents pursuant to the preceding sentence. Upon receipt of such documents, the |

52

| | |
|---|---|
| | Depositor and/or the Trustee shall execute such documents and deliver them to the Servicer. In addition, upon the request of the Servicer from time to time the Trustee shall execute and deliver to the Servicer one or more powers of attorney in the form attached hereto as Exhibit M." |
| First Horizon PSA § 3.1 | "For and on behalf of the Certificateholders, the Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of (i) the Servicing Rights Transfer and Subservicing Agreement, pursuant to which First Tennessee Mortgage Services, Inc. engaged the Master Servicer to subservice the Mortgage Loans, (ii) this Agreement and (iii) the customary and usual standards of practice of prudent mortgage loan servicers; provided that if there is a conflict between the terms of the Servicing Agreement and the Servicing Rights Transfer and Subservicing Agreement, on the one hand, and this Agreement, on the other hand, the terms of this Agreement shall prevail. . . .[T]he Master Servicer shall not take any action that is inconsistent with or prejudices the interests of the Trust Fund or the Certificateholders in any Mortgage Loan or the rights and interests of the Depositor, the Trustee and the Certificateholders under this Agreement." |
| Nationstar PSA § 8.01 | "Acting directly or through one or more Sub-Servicers as provided in Section 8.03, the Servicer shall service and administer the Home Equity Loans in accordance with this Agreement and the terms of the respective Home Equity Loans, and with prudent and reasonable care, using the degree of skill and attention that the Servicer exercises with respect to comparable home equity loans that it services for itself or others and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable but without regard to: (i) any relationship that the Servicer, any Sub-Servicer or any Affiliate of the Servicer or any Sub-Servicer may have with the related Mortgagor; (ii) the ownership of any Certificate by the Servicer or any Affiliate of the Servicer; (iii) the Servicer's obligation to make Delinquency Advances or Servicing Advances; or (iv) the Servicer's or any Sub-Servicer's right to receive compensation for its services hereunder or with respect to any particular transaction." |
| NovaStar PSA § 3.01 | "The Servicer shall supervise, or take such actions as are necessary to ensure, the servicing and administration of the Mortgage Loans and any REO Property in accordance with this Agreement and its normal servicing practices, which generally shall conform to the standards of an institution prudently servicing mortgage loans for its own account and shall have full authority to do anything it reasonably deems appropriate or desirable in connection with such servicing and administration. The Servicer may perform its responsibilities relating to servicing through other agents or independent contractors, but shall not thereby be released from any of its responsibilities as hereinafter set forth. Subject to Section 3.06(b), the authority of the Servicer, in its capacity as Servicer, and any Subservicer acting on its behalf, shall include, without |

| | |
|---|---|
| | limitation, the power to (i) consult with and advise any Subservicer regarding administration of a related Mortgage Loan, (ii) approve any recommendation by a Subservicer to foreclose on a related Mortgage Loan, (iii) supervise the filing and collection of insurance claims and take or cause to be taken such actions on behalf of the insured Person thereunder as shall be reasonably necessary to prevent the denial of coverage thereunder, and (iv) effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing a related Mortgage Loan, including the employment of attorneys, the institution of legal proceedings, the collection of deficiency judgments, the acceptance of compromise proposals and any other matter pertaining to a delinquent Mortgage Loan. The authority of the Servicer shall include, in addition, the power on behalf of the Certificateholders, the Trustee, or any of them to (i) execute and deliver customary consents or waivers and other instruments and documents, (ii) consent to transfer of any related Mortgaged Property and assumptions of the related Mortgage Notes and Mortgages (in the manner provided in this Agreement) and (iii) collect any Insurance Proceeds and Liquidation Proceeds. Without limiting the generality of the foregoing, the Servicer and any Subservicer acting on its behalf may, and is hereby authorized, and empowered by the Trustee when the Servicer believes it is reasonably necessary in its best judgment in order to comply with its servicing duties hereunder, to execute and deliver, on behalf of itself, the Certificateholders, the Trustee, or any of them, any instruments of satisfaction, cancellation, partial or full release, discharge and all other comparable instruments, with respect to the related Mortgage Loans, the insurance policies and the accounts related thereto, and the Mortgaged Properties. The Servicer may exercise this power in its own name or in the name of a Subservicer." NovaStar PSA § 3.01 |

**Section IX**

| | |
|---|---|
| Centex PSA<br>§ 8.20 (a) | "The Trustee or the Owners of at least a 51% Percentage Interest in all of the Certificates may remove the Servicer upon the occurrence of any of the following events (each a "Servicer Termination Event"):<br><br>(i) The Servicer shall (I) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian or similar entity with respect to itself or its property, (II) admit in writing its inability to pay its debts generally as they become due, (III) make a general assignment for the benefit of creditors, (IV) be adjudicated a bankrupt or insolvent, (V) commence a voluntary case under the federal bankruptcy laws of the United States of America or any state bankruptcy law or similar laws or file a voluntary petition or answer seeking reorganization, an arrangement with creditors or an order for relief or seeking to take advantage of any insolvency law or file an answer admitting the material allegations of a petition filed against it in any bankruptcy, reorganization or insolvency proceeding or (VI) take corporate, limited liability company or other entity action, as applicable, for the purpose of effecting any of the foregoing. . .<br><br>(iii) The Servicer shall fail to perform any one or more of its obligations hereunder and shall continue in default thereof for a period of thirty (30) days (one (1) Business Day in the case of a delay in making a payment or deposit required of the Servicer under this Agreement) which failure materially and adversely affects the Owners after the earlier of (a) actual knowledge of an officer of the Servicer or (b) receipt of notice from the Trustee of said failure; or<br><br>(iv) The Servicer shall fail to cure any breach of any of its representations and warranties set forth in Section 3.02 or in the other Operative Documents which materially and adversely affects the interests of the Owners which remains unremedied for a period of sixty (60) days after the earlier of the Servicer's discovery or receipt of notice thereof. . .<br><br>After the occurrence of a Servicer Termination Event, the Trustee or the Owners of at least 51% Percentage Interest in all the Certificates may remove the Servicer by written notice to the Servicer. Such termination shall be effective on the date specified in such notice, provided that a successor Servicer or the Trustee has assumed the servicing obligations. Upon the effective date of termination of the Servicer, the Trustee shall assume the servicing obligations hereunder. Notwithstanding the foregoing, upon the occurrence of a Servicer Termination Event pursuant to clause (iii) of section (a) above in connection with a failure by the Servicer to make a required Delinquency Advance, the Servicer will be deemed to have been immediately removed as Servicer and the |

55

| | |
|---|---|
| | Trustee will immediately become the successor Servicer. The Trustee, in its capacity as successor Servicer, immediately will assume all of the obligations of the Servicer to make Delinquency Advances and the Trustee will assume the other duties of the Servicer as soon as practicable, but in no event later than 90 days after the Trustee becomes successor Servicer." |
| Chase PSA § 9.01 | ""Events of Default". If one or more of the following Events of Default shall occur and be continuing, that is to say: <br><br> (a) any failure by the Servicer to remit any payment required to be made or distributed under the terms of this Agreement which continues un-remedied for a period of three (3) Business Days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Trustee, the Paying Agent or the Depositor or to the Servicer, the Trustee, the Paying Agent and the Depositor by the Holders of Certificates of any Class evidencing, as to such Class, Percentage Interests aggregating not less than 25%; or <br><br> (b) a breach by the Servicer in a material respect of any representation or warranty set forth in Section 3.02, or failure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer set forth in this Agreement, which continues un-remedied for a period of 60 days after the date on which written notice of such breach or failure, requiring the same to be remedied, shall have been given to the Servicer by the Trustee or the Depositor or to the Servicer, the Trustee and the Depositor by the Holders of Certificates of any Class evidencing, as to such Class, Percentage Interests aggregating not less than 25%; or. . . . <br><br> The Trustee may, upon receipt of such notice or knowledge, and at the written direction of the Holders of Certificates evidencing Percentage Interests aggregating more than 50% (with respect to a particular Mortgage Pool), shall, by notice in writing to the Servicer, terminate all the rights and obligations of the Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof." |
| CWHEL Servicing Agreement § 6.01 | "If any one of the following events ('Events of Servicing Termination') shall occur and be continuing. . .(2) failure by the Master Servicer duly to observe or perform in any material respect any other covenants or agreements of the Master Servicer in the Notes or in this Agreement (except with respect to a failure related to a Limited Exchange Act Reporting Obligation) that materially and adversely affects the interests of the Noteholders or the Credit Enhancer and continues unremedied for 60 days after the date on which notice of the failure, requiring it to be remedied, and stating that the notice is a 'Notice of Default' under this Agreement, has been given to the Master Servicer by the Indenture Trustee or to the Master Servicer and the Indenture Trustee by the |

56

| | Credit Enhancer or the Holders of Notes representing not less than 25% of the Outstanding Amount of all Classes of Notes" |
|---|---|
| EMC PSA § 8.01 | "'Event of Default'. Wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body) and only with respect to the defaulting Master Servicer. . .<br><br>(ii) The Master Servicer fails to observe or perform in any material respect any other material covenants and agreements set forth in this Agreement to be performed by it, which covenants and agreements materially affect the rights of Certificateholders, and such failure continues unremedied for a period of 60 days (or, in the case of a breach of its obligation to provide a Master Servicer Certification pursuant to Section 3.18, for a period of five days) after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or to the Master Servicer and the Trustee by the Holders of Certificates evidencing Fractional Undivided Interests aggregating not less than 25% of the Trust Fund; or. . .<br><br>In each and every such case, so long as such Event of Default with respect to the Master Servicer shall not have been remedied, either the Trustee or the Holders of Certificates evidencing Fractional Undivided Interests aggregating not less than 51% of the principal of the Trust Fund, by notice in writing to the Master Servicer (and to the Trustee, if given by such Certificateholders), with a copy to the Rating Agencies, and with the consent of EMC, may terminate all of the rights and obligations (but not the liabilities) of the Master Servicer under this Agreement and in and to the Mortgage Loans and/or the REO Property serviced by the Master Servicer and the proceeds thereof. . ."<br>EMC PSA § 8.01 |
| Equity One PSA § 7.01 | "'Event of Default,' wherever used herein, means any one of the following events. . .<br><br>(ii) any failure by the Servicer to duly observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer contained in this Agreement, which failure shall continue unremedied for a period of 30 days after the date on which written notice of such failure shall have been given (a) to the Servicer by the Trustee or the Depositor or (b) to the Servicer, the Depositor and the Trustee by the Holders of Certificates of any Class evidencing not less than 25% of the Voting Rights allocated to such Class. . . |

| | |
|---|---|
| | If an Event of Default described in clauses (i) to (vi) of this Section shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, the Trustee may, and at the direction of the Holders of Certificates of any Class evidencing not less than 25% of the Voting Rights allocated to such Class, by notice in writing to the Servicer (with a copy to each Rating Agency) shall, terminate all of the rights and obligations of the Servicer under this Agreement and in and to the Loans and the proceeds thereof, other than its rights as a Certificateholder hereunder." |
| First Horizon PSA § 7.1 | "'Event of Default,' wherever used herein, means any one of the following events: . . . (ii) any failure by the Master Servicer to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in this Agreement, which failure materially affects the rights of Certificateholders, which failure continues unremedied for a period of 60 days after the date on which written notice of such failure shall have been given to the Master Servicer by the Trustee or the Depositor, or to the Master Servicer and the Trustee by the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates; provided, however, that the 60-day cure period shall not apply to the initial delivery of the Mortgage File for Delay Delivery Mortgage Loans nor the failure to substitute or repurchase in lieu thereof. . . . <br><br> If an Event of Default described in clauses (i) to (v) of this Section shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, the Trustee may, or at the direction of the Holders of Certificates evidencing not less than 66 2/3% of the Voting Rights evidenced by the Certificates, the Trustee shall by notice in writing to the Master Servicer (with a copy to each Rating Agency), terminate all of the rights and obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof, other than its rights as a Certificateholder hereunder. . . . <br><br> On and after the receipt by the Master Servicer of such written notice, all authority and power of the Master Servicer hereunder, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the Trustee or another successor to the Master Servicer appointed by the Trustee pursuant to Section 7.2." |
| Nationstar PSA § 8.20 | "The Master Servicer or the Owners of at least a 51% Percentage Interest in all of the Certificates may remove the Servicer (including the Master Servicer in its capacity as successor Servicer hereunder) upon the occurrence of any of the following events (each a 'Servicer Termination Event'): |

|  | (i) The Servicer shall (I) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian or similar entity with respect to itself or its property, (II) admit in writing its inability to pay its debts generally as they become due, (III) make a general assignment for the benefit of creditors, (IV) be adjudicated a bankrupt or insolvent, (V) commence a voluntary case under the federal bankruptcy laws of the United States of America or any state bankruptcy law or similar laws or file a voluntary petition or answer seeking reorganization, an arrangement with creditors or an order for relief or seeking to take advantage of any insolvency law or file an answer admitting the material allegations of a petition filed against it in any bankruptcy, reorganization or insolvency proceeding or (VI) take corporate, limited liability company or other entity action, as applicable, for the purpose of effecting any of the foregoing; or<br><br>(ii) If without the application, approval or consent of the Servicer, a proceeding shall be instituted in any court of competent jurisdiction, under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking in respect of the Servicer an order for relief or an adjudication in bankruptcy, reorganization, dissolution, winding up, liquidation, a composition or arrangement with creditors, a readjustment of debts, the appointment of a trustee, receiver, liquidator or custodian or similar entity with respect to the Servicer or of all or any substantial part of its assets, or other like relief in respect thereof under any bankruptcy or insolvency law, and, if such proceeding is being contested by the Servicer in good faith, the same shall (A) result in the entry of an order for relief or any such adjudication or appointment or ( B) continue undismissed or pending and unstayed for any period of seventy-five (75) consecutive days; or<br><br>(iii) The Servicer shall fail to perform any one or more of its obligations hereunder and shall continue in default thereof for a period of thirty (30) days (one (1) Business Day in the case of a delay in making a payment or deposit (including without limitation the deposit of the Monthly Remittance Amount to Securities Administration for deposit into the Certificate Account) required of the Servicer under this Agreement) which failure materially and adversely affects the Owners after the earlier of (a) actual knowledge of an officer of the Servicer or (b) receipt of notice from the Trustee or the Securities Administrator of said failure; or<br>(iv) The Servicer shall fail to cure any breach of any of its representations and warranties set forth in Section 3.02(1) or in the other Operative Documents which materially and adversely affects the interests of the Owners which remains unremedied for a period of sixty (60) days after the earlier of the Servicer's discovery or receipt of notice thereof; or |
|---|---|

| | |
|---|---|
| | (v) The Servicer shall be declared in default of its credit facility by its credit facility provider, which default, if left uncured, would result in termination or acceleration of amounts owed thereunder. . . |
| | In the event the Master Servicer becomes the successor Servicer pursuant to the terms of this Agreement, any Servicer Termination Event with respect to the Master Servicer in its capacity as successor Servicer shall be a Master Servicer Termination Event and the provisions of Section 8A.09 shall apply" |
| NovaStar PSA § 7.01 | "(a) If any one of the following events (a 'Servicing Default') shall occur and be continuing. . .(ii) Failure on the part of the Servicer duly to observe or perform in any material respect any other covenants or agreements of the Servicer set forth in this Agreement, which failure, in each case, materially and adversely affects the interests of Certificateholders or the breach of any representation or warranty of the Servicer in this Agreement which materially and adversely affects the interests of the Certificateholders, and which in either case continues unremedied for a period of 30 days after the date on which written notice of such failure or breach, requiring the same to be remedied, and stating that such notice is a "Notice of Default" hereunder, shall have been given to the Servicer by the Trustee or to the Servicer and the Trustee by the Holders of Certificates evidencing at least 25% of the Voting Rights. . .<br><br>(b) then, and in each and every such case, so long as a Servicing Default shall not have been remedied within the applicable grace period, (x) with respect solely to clause (i)(A) above, if such Advance is not made by 5:00 P.M., New York time, on the Business Day immediately following the Servicer Remittance Date (provided the Trustee shall give the Servicer notice of such failure to advance by 5:00 P.M. New York time on the Servicer Remittance Date), the Trustee shall terminate all of the rights and obligations of the Servicer under this Agreement and the Trustee, or a successor servicer appointed in accordance with Section 7.02, shall assume, pursuant to Section 7.02, the duties of a successor Servicer and (y) in the case of (i)(B), (ii), (iii), (iv), (v) and (vi) and (vii) above, the Trustee shall, at the direction of the Holders of Certificates evidencing at least 51% of the Voters Rights, by notice then given in writing to the Servicer (and to the Trustee if given by Holders of Certificates), terminate all of the rights and obligations of the Servicer as servicer under this Agreement. Any such notice to the Servicer shall also be given to the Servicing Rights Pledgee, Trustee, each Rating Agency, the Depositor, each Hedge Counterparty (if prior to the Class I Termination Date) and the Sponsor. On or after the receipt by the Servicer (and by the Trustee if such notice is given by the Holders) of such written notice, all authority and power of the Servicer under this Agreement, whether with respect to the Certificates or the Mortgage |

60

| | Loans or otherwise, shall pass to and be vested in the Trustee or other Successor Servicer appointed in accordance with Section 7.02." |
|---|---|

**Section X**

| Centex PSA § 8.20 (b), (h) | "Upon the occurrence of a Servicer Termination Event, the Servicer shall continue to act as Servicer under this Agreement until removed as set forth in this Section 8.20 and a successor Servicer has assumed the servicing obligations. After the occurrence of a Servicer Termination Event, the Trustee or the Owners of at least 51% Percentage Interest in all the Certificates may remove the Servicer by written notice to the Servicer. Such termination shall be effective on the date specified in such notice, provided that a successor Servicer or the Trustee has assumed the servicing obligations. Upon the effective date of termination of the Servicer, the Trustee shall assume the servicing obligations hereunder." |
|---|---|
| | "Upon removal or resignation of the Servicer, the Trustee (A) may, solicit bids for a successor Servicer as described below and (B) until such time as another successor Servicer is appointed by the Trustee, shall assume the duties and obligations of the Servicer hereunder. The Trustee agrees to act as Servicer during the solicitation process and shall assume all duties and obligations of the Servicer. |
| | The Trustee shall, if it is unable to obtain a qualifying bid and is prevented by law from acting as Servicer, appoint, or petition a court of competent jurisdiction to appoint, any housing and home finance institution, bank or mortgage servicing institution which has been designated as an approved seller-servicer by FNMA or FHLMC for first and second home equity loans and having equity of not less than $5,000,000, as determined in accordance with generally accepted accounting principles, act as the successor to the Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Servicer hereunder. The compensation of any successor Servicer (other than the Trustee in its capacity as successor Servicer) so appointed shall be the amount agreed to between the successor Servicer and the Trustee (up to a maximum of 0.50% per annum on the outstanding principal balance of each Home Equity Loan), together with the other servicing compensation in the form of assumption fees, late payment charges or otherwise as provided in Sections 8.08 and 8.15; provided, however, that if the Trustee becomes the successor Servicer it shall receive as its compensation the same compensation paid to the Servicer immediately prior to the Servicer's removal or resignation; provided, further, however, that the predecessor Servicer agrees to pay to the Trustee or other successor Servicer at such time that it becomes such successor Servicer a setup fee of twenty-five dollars ($25) for each Home Equity Loan then included in the Trust Estate. The amount payable in excess of twenty-five dollars ($25) per Home Equity Loan, if |

62

| | |
|---|---|
| | any, shall be payable to the successor Servicer and reimbursable pursuant to Section 7.03(b) (clause C.27) hereof. The Trustee shall be obligated to serve as successor Servicer whether or not the fee described in this section is paid by the Servicer, but shall in any event be entitled to receive, and to enforce payment of, such fee from the Servicer." |
| Chase PSA § 8.05; 9.01 | "In connection with the termination of the Servicer's responsibilities and duties under this Agreement pursuant to Section 8.04 or 9.01, the Trustee shall succeed to and assume all of the Servicer's responsibilities, rights, duties and obligations as Servicer (but not in any other capacity) under this Agreement (except that the Trustee shall not be obligated to make Advances if prohibited by applicable law nor to effectuate repurchases or substitutions of Mortgage Loans pursuant to Section 2.02 and except that the Trustee makes no representations and warranties pursuant to Sections 3.01 and 3.02). Prior to the termination of the Servicer's responsibilities, duties and liabilities under this Agreement, the Trustee may appoint a successor having a net worth of not less than $15,000,000 and which is a FNMA or FHLMC approved seller/servicer in good standing and which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Servicer under this Agreement, except as aforesaid, if the Trustee receives a letter from each Rating Agency that such appointment would not result in a reduction or withdrawal of the current rating of any Class of Certificates that is rated by a Rating Agency. Any co-trustee appointed pursuant to Section 10.10 for purposes of this Section 8.05 shall have an obligation to make Advances pursuant to Section 6.03 during such time as the Trustee is the Servicer, which obligation shall be joint and several with that of the Trustee as Servicer. If the Trustee has become the successor to the Servicer in accordance with this Section or Section 9.03, then notwithstanding the above, the Trustee may, if it shall be unwilling to so act, or shall, if it is unable to so act, appoint, or petition a court of competent jurisdiction to appoint, any established housing and home finance institution having a net worth of not less than $15,000,000 and which is a FNMA or FHLMC approved seller/servicer in good standing as the successor to the Servicer hereunder in the assumption of all of the responsibilities, duties or liabilities of the Servicer hereunder. In connection with any such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree or such court shall determine; provided, however, that no such compensation shall be in excess of that permitted under this Agreement without the consent of all of the Certificateholders. If the Trustee is acting as Servicer, the Trustee shall be entitled to all compensation of the Servicer hereunder, and all such compensation due to the Trustee as Servicer shall be in addition to all compensation it is entitled to as Trustee under this Agreement. If the Servicer's duties, responsibilities and liabilities under this Agreement should be terminated pursuant to |

63

| | |
|---|---|
| | Section 8.02, 8.04 or 9.01, the Servicer shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of its successor or the Trust Fund. The resignation or removal of the Servicer pursuant to Section 8.02, 8.04 or 9.01 shall not become effective until a successor shall be appointed pursuant to this Section and shall in no event relieve the Servicer of liability for breach of the representations and warranties made pursuant to Section 3.02. |
| | Any successor appointed as provided herein shall execute, acknowledge and deliver to the Servicer and to the Trustee an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer, with like effect as if originally named as a party to this Agreement and the Certificates. Any termination or resignation of the Servicer or this Agreement pursuant to Section 8.02, 8.04, 9.01 or 11.01 shall not affect any claims that the Trustee may have against the Servicer for events or actions taken or not taken by the Servicer arising prior to any such termination or resignation. The Servicer shall timely deliver to the successor the funds that were, or were required to be, in the Collection Account and the Escrow Account, if any, and all Mortgage Files and related documents, statements and recordkeeping held by it hereunder and the Servicer shall account for all funds and shall execute and deliver such instruments and do such other things as may reasonably be required to more fully and definitely vest and confirm in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Servicer. Upon a successor's acceptance of appointment as such, the Servicer shall notify, in writing, the Trustee, the Certificateholders and each Rating Agency of such appointment." |
| CWHEL Servicing Agreement § 6.02 | "From the time the Master Servicer receives a notice of termination pursuant to Section 6.01 or resigns pursuant to Section 5.04, the Indenture Trustee shall be the successor in all respects to the Master Servicer in its capacity as Master Servicer under this Agreement and the transactions contemplated by this Agreement and shall be subject to all the obligations of the Master Servicer under this Agreement. . . Pending appointment of a successor to the Master Servicer, unless the Indenture Trustee is prohibited by law from so acting, the Indenture Trustee shall act as Master Servicer." |
| EMC PSA § 8.02 | "Upon the receipt by the Master Servicer of a notice of termination pursuant to Section 8.01 or an Opinion of Independent Counsel pursuant to Section 7.05 to the effect that the Master Servicer is legally unable to act or to delegate its duties to a Person which is legally able to act, the Trustee shall automatically become the successor in all respects to the |

64

| | |
|---|---|
| | Master Servicer in its capacity under this Agreement and the transactions set forth or provided for herein and shall thereafter be subject to all the responsibilities, duties, liabilities and limitations on liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof; provided, however, that EMC shall have the right to either (a) immediately assume the duties of the Master Servicer or (b) select a successor Master Servicer; provided, further, however, that the Trustee shall have no obligation whatsoever with respect to any liability (other than advances deemed recoverable and not previously made) incurred by the Master Servicer at or prior to the time of termination. As compensation therefor, but subject to Section 7.06, the Trustee shall be entitled to all funds relating to the Mortgage Loans which the Master Servicer would have been entitled to retain if the Master Servicer had continued to act hereunder, except for those amounts due the Master Servicer as reimbursement permitted under this Agreement for advances previously made or expenses previously incurred. Notwithstanding the above, the Trustee may, if it shall be unwilling so to act, or shall, if it is legally unable so to act, appoint or petition a court of competent jurisdiction to appoint any established housing and home finance institution which is a Fannie Mae- or Freddie Mac-approved servicer, and with respect to a successor to the Master Servicer only having a net worth of not less than $10,000,000, as the successor to the Master Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Master Servicer hereunder; provided, that the Trustee shall obtain a letter from each Rating Agency that the ratings, if any, of such Rating Agency on each of the Certificates will not be downgraded, qualified or withdrawn as a result of the selection of the successor to the Master Servicer. Pending appointment of a successor to the Master Servicer hereunder, the Trustee shall act in such capacity as hereinabove provided. In connection with such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on the Mortgage Loans as it and such successor shall agree; provided, however, that the provisions of Section 7.06 shall apply, no such compensation shall be in excess of that permitted the Trustee under this Subsection 8.02(a), and that such successor shall undertake and assume the obligations of the Trustee to pay compensation to any third Person acting as an agent or independent contractor in the performance of master servicing responsibilities hereunder. The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession." |
| Equity One PSA § 7.02 | "On and after the time the Servicer receives a notice of termination pursuant to Section 7.01 hereof, the Trustee shall, subject to and to the extent provided in Section 3.04, be the successor to the Servicer in its capacity as servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, |

|  | duties and liabilities relating thereto placed on the Servicer by the terms and provisions hereof and applicable law including the obligation to make Advances pursuant to Section 4.01. As compensation therefor, the Trustee shall be entitled to all funds relating to the Loans that the Servicer would have been entitled to charge to the Certificate Account or Distribution Account if the Servicer had continued to act hereunder. Notwithstanding the foregoing, if the Trustee has become the successor to the Servicer in accordance with Section 7.01 hereof, the Trustee may, if it shall be unwilling to so act, or shall, if it is prohibited by applicable law from making Advances pursuant to Section 4.01 hereof or if it is otherwise unable to so act, appoint, or petition a court of competent jurisdiction to appoint, any established mortgage loan servicing institution the appointment of which does not adversely affect the then current rating of the Certificates by each Rating Agency as the successor to the Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Servicer hereunder. Any successor to the Servicer shall be an institution which is a FNMA and FHLMC approved seller/servicer in good standing, which has a net worth of at least $10,000,000, and which is willing to service the Loans and executes and delivers to the Depositor and the Trustee an agreement accepting such delegation and assignment, which contains an assumption by such Person of the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer (other than liabilities of the Servicer under Section 6.03 hereof incurred prior to termination of the Servicer under Section 7.01), with like effect as if originally named as a party to this Agreement; and provided further that no such delegation and assignment shall become effective unless each Rating Agency acknowledges that its rating of the Certificates in effect immediately prior to such delegation and assignment will not be qualified or reduced as a result of such delegation and assignment. Pending appointment of a successor to the Servicer hereunder, the Trustee, unless the Trustee is prohibited by law from so acting, shall, subject to Section 3.04 hereof, act in such capacity as hereinabove provided. In connection with such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on Loans as it and such successor shall agree; provided, however, that no such compensation shall be in excess of the Servicing Fee permitted the Servicer hereunder. The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession. Neither the Trustee nor any other successor servicer shall be deemed to be in default hereunder by reason of any failure to make, or any delay in making, any distribution hereunder or any portion thereof or any failure to perform, or any delay in performing, any duties or responsibilities hereunder, in either case caused by the failure of the Servicer to deliver or provide, or any delay in delivering or providing, any cash, information, documents or records |
|---|---|

66

| | |
|---|---|
| | to it. Any successor to the Servicer as servicer shall give notice to the Mortgagors of such change of servicer." |
| First Horizon PSA § 7.2 | "On and after the time the Master Servicer receives a notice of termination pursuant to Section 7.1 hereof, the Trustee shall, subject to and to the extent provided in Section 3.4, be the successor to the Master Servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof and applicable law including the obligation to make Advances pursuant to Section 4.1. As compensation therefor, the Trustee shall be entitled to all funds relating to the Mortgage Loans that the Master Servicer would have been entitled to charge to the Certificate Account or Distribution Account if the Master Servicer had continued to act hereunder. Notwithstanding the foregoing, if the Trustee has become the successor to the Master Servicer in accordance with Section 7.1 hereof, the Trustee may, if it shall be unwilling to so act, or shall, if it is prohibited by applicable law from making Advances pursuant to Section 4.1 hereof or if it is otherwise unable to so act, (i) appoint, or petition a court of competent jurisdiction to appoint, any established mortgage loan servicing institution the appointment of which does not adversely affect the then current rating of the Certificates by each Rating Agency as the successor to the Master Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Master Servicer hereunder. Any successor to the Master Servicer shall be an institution which is a FNMA and FHLMC approved seller/servicer in good standing, which has a net worth of at least \$10,000,000, and which is willing to service the Mortgage Loans and executes and delivers to the Depositor and the Trustee an agreement accepting such delegation and assignment, which contains an assumption by such Person of the rights, powers, duties, responsibilities, obligations and liabilities of the Master Servicer (other than liabilities of the Master Servicer under Section 6.3 hereof incurred prior to termination of the Master Servicer under Section 7.1), with like effect as if originally named as a party to this Agreement; and provided further that each Rating Agency acknowledges that its rating of the Certificates in effect immediately prior to such assignment and delegation will not be qualified or reduced, as a result of such assignment and delegation and (ii) provide to the Depositor in writing, fifteen (15) days prior to the effective date of such appointment, and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8K with respect to a replacement master servicer. The Trustee shall provide written notice to the Depositor of such successor pursuant to this Section. The Trustee shall not resign as servicer until a successor servicer has been appointed and has accepted such appointment. Pending appointment of a successor to the Master Servicer hereunder, |

67

| | |
|---|---|
| | the Trustee, unless the Trustee is prohibited by law from so acting, shall, subject to Section 3.4 hereof, act in such capacity as provided above. In connection with such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree; provided, however, that no such compensation shall be in excess of the Master Servicing Fee permitted the Master Servicer hereunder. The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession. Neither the Trustee nor any other successor master servicer shall be deemed to be in default hereunder by reason of any failure to make, or any delay in making, any distribution hereunder or any portion thereof or any failure to perform, or any delay in performing, any duties or responsibilities hereunder, in either case caused by the failure of the Master Servicer to deliver or provide, or any delay in delivering or providing, any cash, information, documents or records to it." |
| Nationstar PSA § 7.02 | "Within 90 days of the time the Servicer (and the Trustee if notice is sent by the Holders) receives a notice of termination pursuant to Section 7.01, the Trustee (or such other successor Servicer as is approved in accordance with this Agreement) shall be the successor in all respects to the Servicer in its capacity as servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Servicer by the terms and provisions hereof arising on and after its succession. Notwithstanding the foregoing, the parties hereto agree that the Trustee, in its capacity as successor Servicer, immediately will assume all of the obligations of the Servicer to make Advances; provided however, that the obligation of the Trustee to make Advances is subject to the standards set forth in Section 3.25 hereof.<br><br>Notwithstanding the foregoing, the Trustee, in its capacity as successor Servicer, shall not be responsible for the lack of information and/or documents that it cannot obtain through reasonable efforts. As compensation therefor, the Trustee (or such other successor Servicer) shall be entitled to such compensation as the Servicer would have been entitled to hereunder if no such notice of termination had been given. Notwithstanding the above, (i) if the Trustee is unwilling to act as successor Servicer or (ii) if the Trustee is legally unable so to act, the Trustee shall appoint or petition a court of competent jurisdiction to appoint, any established housing and home finance institution, bank or other mortgage loan or home equity loan servicer having a net worth of not less than $100,000,000 as the successor to the Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Servicer hereunder; provided, that the appointment of any such successor Servicer will not result in the qualification, reduction or withdrawal of the ratings assigned to the Certificates by the Rating |

68

| | |
|---|---|
| | Agencies as evidenced by a letter to such effect from the Rating Agencies. Pending appointment of a successor to the Servicer hereunder, unless the Trustee is prohibited by law from so acting, the Trustee shall act in such capacity as hereinabove provided. In connection with such appointment and assumption, the successor shall be entitled to receive compensation out of payments on Mortgage Loans in an amount equal to the compensation which the Servicer would otherwise have received pursuant to Section 3.15 (or such other compensation as the Trustee and such successor shall agree, not to exceed the Servicing Fee). The appointment of a successor Servicer shall not affect any liability of the predecessor Servicer which may have arisen under this Agreement prior to its termination as Servicer to pay any deductible under an insurance policy pursuant to Section 3.11 or to indemnify the Trustee pursuant to Section 3.06, nor shall any successor Servicer be liable for any acts or omissions of the predecessor Servicer or for any breach by such Servicer of any of its representations or warranties contained herein or in any related document or agreement. <br><br> The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession. All Servicing Transfer Costs shall be paid by the predecessor Servicer upon presentation of reasonable documentation of such costs, and if such predecessor Servicer defaults in its obligation to pay such costs, such costs shall be paid by the successor Servicer or the Trustee (in which case the successor Servicer or the Trustee, as applicable, shall be entitled to reimbursement therefor from the assets of the Issuing Entity)." |
| NovaStar PSA § 7.02 | "Within 90 days of the time the Servicer (and the Trustee if notice is sent by the Holders) receives a notice of termination pursuant to Section 7.01, the Trustee (or such other successor Servicer as is approved in accordance with this Agreement) shall be the successor in all respects to the Servicer in its capacity as servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Servicer by the terms and provisions hereof arising on and after its succession. Notwithstanding the foregoing, the parties hereto agree that the Trustee, in its capacity as successor Servicer, immediately will assume all of the obligations of the Servicer to make Advances; provided however, that the obligation of the Trustee to make Advances is subject to the standards set forth in Section 3.25 hereof. <br><br> Notwithstanding the foregoing, the Trustee, in its capacity as successor Servicer, shall not be responsible for the lack of information and/or documents that it cannot obtain through reasonable efforts. As compensation therefor, the Trustee (or such other successor Servicer) shall be entitled to such compensation as the Servicer would have been entitled to hereunder if no such notice of termination had been given. |

69

| | Notwithstanding the above, (i) if the Trustee is unwilling to act as successor Servicer or (ii) if the Trustee is legally unable so to act, the Trustee shall appoint or petition a court of competent jurisdiction to appoint, any established housing and home finance institution, bank or other mortgage loan or home equity loan servicer having a net worth of not less than $100,000,000 as the successor to the Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Servicer hereunder; provided, that the appointment of any such successor Servicer will not result in the qualification, reduction or withdrawal of the ratings assigned to the Certificates by the Rating Agencies as evidenced by a letter to such effect from the Rating Agencies. Pending appointment of a successor to the Servicer hereunder, unless the Trustee is prohibited by law from so acting, the Trustee shall act in such capacity as hereinabove provided. In connection with such appointment and assumption, the successor shall be entitled to receive compensation out of payments on Mortgage Loans in an amount equal to the compensation which the Servicer would otherwise have received pursuant to Section 3.15 (or such other compensation as the Trustee and such successor shall agree, not to exceed the Servicing Fee). The appointment of a successor Servicer shall not affect any liability of the predecessor Servicer which may have arisen under this Agreement prior to its termination as Servicer to pay any deductible under an insurance policy pursuant to Section 3.11 or to indemnify the Trustee pursuant to Section 3.06, nor shall any successor Servicer be liable for any acts or omissions of the predecessor Servicer or for any breach by such Servicer of any of its representations or warranties contained herein or in any related document or agreement. The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession. All Servicing Transfer Costs shall be paid by the predecessor Servicer upon presentation of reasonable documentation of such costs, and if such predecessor Servicer defaults in its obligation to pay such costs, such costs shall be paid by the successor Servicer or the Trustee (in which case the successor Servicer or the Trustee, as applicable, shall be entitled to reimbursement therefor from the assets of the Issuing Entity)." |
| --- | --- |

**Section XI**

| | |
|---|---|
| Centex PSA §§ 3.03; 3.04(b) | "Each of the Seller and the Conduit Seller, as applicable, hereby severally and not jointly represents, warrants and covenants to the Depositor, the Trustee and the Owners that as of the Startup Day. . .

(c) This Agreement and the other Operative Documents to which the Seller or the Conduit Seller, as applicable, is a party, assuming due authorization, execution and delivery by the other parties hereto and thereto, each constitutes a valid, legal and binding obligation of the Seller or the Conduit Seller, as applicable, enforceable hereof and thereof against it in accordance with the terms hereof and thereof, except as the enforcement hereof and thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law). . ..

(c) This Agreement and the other Operative Documents to which the Seller or the Conduit Seller, as applicable, is a party, assuming due authorization, execution and delivery by the other parties hereto and thereto, each constitutes a valid, legal and binding obligation of the Seller or the Conduit Seller, as applicable, enforceable hereof and thereof against it in accordance with the terms hereof and thereof, except as the enforcement hereof and thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law). . ..

(i) The origination practices used by the Seller with respect to the Home Equity Loans have been, in all material respects, legal, proper, prudent and customary in the home equity lending business. All of the Home Equity Loans were originated by the Seller, an Affiliate of the Seller or a broker for simultaneous assignment to the Seller or were acquired by the Seller from correspondent lenders and reunderwritten to comply with the Seller's underwriting standards.

(j) The transactions contemplated by this Agreement are in the ordinary course of business of the Seller or the Conduit Seller, as applicable.. . .

(n) The Seller or the Conduit Seller, as applicable, did not sell any interest in any Home Equity Loan with any intent to hinder, delay or defraud any of its creditors.. . .

(r) The sale, transfer, assignment and conveyance of Home Equity Loans by the Seller or the Conduit Seller, as applicable, pursuant to this Agreement is not subject to and will not result in any tax, fee or |

governmental charge payable by the Seller or the Conduit Seller, as applicable, the Depositor or the Trustee to any federal, state or local government ("Transfer Taxes") other than Transfer Taxes which have been or will be paid as due by the Seller or the Conduit Seller, as applicable. The Seller or the Conduit Seller, as applicable, shall pay any and all such Transfer Taxes.

(s) No certificate of an officer, statement furnished in writing or report delivered pursuant to the terms hereof by the Seller or the Conduit Seller, as applicable, contains any untrue statement of a material fact or omits to state any material fact necessary to make the certificate, statement or report not misleading.

It is understood and agreed that the representations and warranties set forth in this Section 3.03 shall survive delivery of the respective Home Equity Loans to the Trustee."
Centex PSA § 3.03

"The Seller, with respect to the Seller Home Equity Loans, and the Servicer, in consideration of its appointment hereunder, with respect to the Conduit Home Equity Loans, and with respect to the Home Equity Loans taken as a whole or by Group, hereby represent, warrant and covenant to the Trustee, the Depositor, the Servicer and the Owners that as of the Startup Day (or the Replacement Cut-Off Date, with respect to a Qualified Replacement Mortgage):

(i) The information with respect to each Home Equity Loan set forth in the related Schedule of Home Equity Loans is true and correct in all material respects as of the Cut-Off Date;

(ii) Each of the Seller and the Conduit Seller has transferred good and marketable title. . .

(v) As of the Cut-Off Date or Replacement Cut-Off Date, as applicable, no Home Equity Loan has a Loan-to-Value Ratio in excess of 100%;

(vi) Each Home Equity Loan is being serviced by the Servicer in accordance with the terms of this Agreement. . .

(ix) As of the Startup Day, each Mortgage is a valid and enforceable first or second lien of record (or is in the process of being recorded) on the Property subject in the case of any Second Mortgage Loan only to a Senior Lien on such Property and subject in all cases to the exceptions to title set forth in the title insurance policy (or the binding commitment therefor) or attorney's opinion of title, with respect to the related Home Equity Loan, which exceptions are generally acceptable to banking institutions in connection with their regular mortgage lending activities, and such other exceptions to which similar properties are commonly subject and which do not individually, or in the aggregate, materially

72

| | and adversely affect the benefits of the security intended to be provided by such Mortgage; |
|---|---|
| | (x) Immediately prior to the transfer and assignment of the Home Equity Loans by the Seller or the Conduit Seller, as applicable, to the Depositor and by the Depositor to the Trustee herein contemplated, the Seller, the Conduit Seller and the Depositor, as the case may be, each held good and marketable title (without any implication of a ready market for the sale thereof) to, and was the sole owner of, each Home Equity Loan (including the related Note) conveyed by the Seller (or the Conduit Seller, as applicable) subject to no liens, charges, mortgages, encumbrances or rights of others except as set forth in clause (ix) or other liens which will be released simultaneously with such transfer and assignment; and immediately upon the transfer and assignment herein contemplated, the Trustee will hold good and marketable title (without any implication of a ready market for the sale thereof) to, and be the sole owner of, each Home Equity Loan subject to no liens, charges, mortgages, encumbrances or rights of others except as set forth in paragraph (ix) or other liens which will be released simultaneously with such transfer and assignment. . . |
| | (xii) To the best knowledge of the Seller or the Servicer, as applicable, there is no delinquent tax or assessment lien on any Property, and each Property is free of substantial damage and is in good repair (ordinary wear and tear excepted); |
| | (xiii) To the best knowledge of the Seller or the Servicer, as applicable, there is no valid and enforceable right of offset, claim, defense or counterclaim to any Note or Mortgage, including the obligation of the related Mortgagor to pay the unpaid principal of or interest on such Note, nor has any such claim, defense, offset or counterclaim been asserted; |
| | (xiv) To the best knowledge of the Seller or the Servicer, as applicable, there is no mechanics' lien or claim for work, labor or material affecting any Property which is or may be a lien prior to, or equal with, the lien of the related Mortgage except those which are insured against by any title insurance policy referred to in paragraph (xvi) below; |
| | (xv) To the best knowledge of the Seller, each Home Equity Loan at the time it was made complied in all material respects with applicable local, state and federal laws and regulations, including, without limitation, all applicable predatory and abusive lending laws, the federal Truth-in-Lending Act (as amended by the Riegle Community Development and Regulatory Improvement Act of 1994) and other consumer protection, usury, equal credit opportunity, disclosure and recording laws. None of |

the Home Equity Loans is subject to the Home Ownership and Equity Protection Act of 1994. None of the Home Equity Loans is a 'high-cost' loan as defined by the applicable predatory and abusive lending laws. No Home Equity Loan is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary which is now Version 5.6B Revised, Appendix E) and no Home Equity Loan originated on or after October 1, 2002 through March 6, 2003, if any, is governed by the Georgia Fair Lending Act. . .

(xvii) The improvements upon each Property are covered by a valid and existing hazard insurance policy with a carrier generally acceptable to the Servicer that provides for fire and extended coverage representing coverage not less than the least of (A) the outstanding principal balance of the related Home Equity Loan (together, in the case of a Second Mortgage Loan, with the outstanding principal balance of the Senior Lien), (B) the minimum amount required to compensate for damage or loss on a replacement cost basis or (C) the full insurable value of the Property;

(xviii) If any Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with respect to such Property with a carrier generally acceptable to the Servicer in an amount representing coverage not less than the least of (A) the outstanding principal balance of the related Home Equity Loan (together, in the case of a Second Mortgage Loan, with the outstanding principal balance of the Senior Lien), (B) the minimum amount required to compensate for damage or loss on a replacement cost basis or (C) the maximum amount of insurance that is available under the Flood Disaster Protection Act of 1973;

(xix) Each Mortgage and Note are the legal, valid and binding obligation of the maker thereof and are enforceable in accordance with their terms, except only as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law), and all parties to each Home Equity Loan had full legal capacity to execute all documents relating to such Home Equity Loan and convey the estate therein purported to be conveyed. . .

(xxii) Each original Mortgage was recorded or is in the process of being recorded, and all subsequent assignments of the original Mortgage (other than unrecorded warehouse assignments which are being

74

simultaneously released in connection with the Closing) have been delivered for recordation or have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof as against creditors of or purchasers from the Seller or the Conduit Seller (or, subject to Section 3.05 hereof, are in the process of being recorded); each Mortgage and assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Property securing such Mortgage is located;

(xxiii) The terms of each Note and each Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary, to protect the interest of the Owners and which has been delivered to the Trustee. The substance of any such waiver, alteration or modification is reflected on the related Schedule of Home Equity Loans. . .

(xxx) To the best knowledge of the Seller or the Servicer, as applicable, there is no proceeding pending or threatened for the total or partial condemnation of any Property, nor is such a proceeding currently occurring, and each Property is undamaged by waste, fire, water, flood, earthquake, earth movement or other casualty;

(xxxi) All of the improvements which were included for the purposes of determining the Appraised Value of any Property lie wholly within the boundaries and building restriction lines of such Property, and no improvements on adjoining properties encroach upon such Property, and are stated in the title insurance policy and affirmatively insured. . .

(xxxv) To the best knowledge of the Seller or the Servicer, there is no default, breach, violation or event of acceleration existing under any Mortgage or the related Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration; and none of the Servicer, the Seller, the Conduit Seller nor the Conduit Servicer, as applicable, has waived any default, breach, violation or event of acceleration or advanced funds, directly or indirectly, for the payment of any amount required under any Home Equity Loan;

(xxxvi) No instrument of release or waiver has been executed in connection with any Home Equity Loan, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement which has been approved by the primary mortgage guaranty insurer, if any, and which has been delivered to the Trustee. . .

(xxxv) To the best knowledge of the Seller or the Servicer, there is no default, breach, violation or event of acceleration existing under any Mortgage or the related Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would

75

| | |
|---|---|
| | constitute a default, breach, violation or event of acceleration; and none of the Servicer, the Seller, the Conduit Seller nor the Conduit Servicer, as applicable, has waived any default, breach, violation or event of acceleration or advanced funds, directly or indirectly, for the payment of any amount required under any Home Equity Loan; |
| | (xxxvi) No instrument of release or waiver has been executed in connection with any Home Equity Loan, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement which has been approved by the primary mortgage guaranty insurer, if any, and which has been delivered to the Trustee. . . |
| | (lvii) The Seller or the Conduit Seller, as applicable, has duly fulfilled all obligations to be fulfilled on the lender's part under or in connection with the origination, acquisition and assignment of the Home Equity Loans and the related Mortgage and Note, and has done nothing to impair the rights of the Trustee or the Owners in payments with respect thereto; |
| | (lviii) To the Seller's or the Servicer's, as applicable, knowledge, the documents, instruments and agreements submitted by each Mortgagor for loan underwriting were not falsified and contain no untrue statement of a material fact and do not omit to state a material fact required to be stated therein or necessary to make the information and statements contained therein not misleading;" Centex PSA § 3.04(b) |
| Chase PSA § 3.01 | "The Depositor hereby represents and warrants to the Trustee for the benefit of the Related Certificateholders that on or before the Closing Date it has entered into the Sale Agreement with the Seller, that the Seller has made the following representations and warranties with respect to each Mortgage Loan in the Sale Agreement as of the Closing Date, which representations and warranties run to and are for the benefit of the Depositor and the Trustee for the benefit of the Related Certificateholders, and as to which the Depositor has assigned to the Trustee for the benefit of the Related Certificateholders, pursuant to Section 2.01 hereof, the right to cause the Seller to repurchase a Mortgage Loan as to which there has occurred an uncured breach of representations and warranties in accordance with the provisions of the Sale Agreement. |
| | (a) The information set forth in the Mortgage Loan Schedule is complete, true and correct in all material respects; (b) With respect to a Mortgage Loan which is not a Coop Loan, the Mortgage creates a first lien or a first priority ownership interest in an estate in fee simple in real property securing the related Mortgage Note. . . . |

76

(c) All payments due prior to the Cutoff Date for such Mortgage Loan have been made as of the Closing Date, the Mortgage Loan is not delinquent in payment more than 30 days and has not been dishonored; to the best of the Seller's knowledge, there are no material defaults under the terms of the Mortgage Loan; the Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the Mortgaged Property subject to the Mortgage (or, with respect to a Coop Loan, the related Mortgagor), directly or indirectly, for the payment of any amount required by the Mortgage Loan; there has been no more than one delinquency in excess of 30 days during the preceding twelve-month period . . . .

(g) With respect to a Mortgage Loan which is not a Coop Loan, all buildings or other customarily insured improvements upon the Mortgaged Property are insured by an insurer acceptable under the FNMA Guides against loss by fire, hazards of extended coverage and such other hazards as are provided for in the FNMA Guides or by FHLMC. . . .

(h) Any and all requirements of any federal, state or local laws and all applicable predatory and abusive lending laws, including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with in all material respects . . . .

(k) The Mortgage Note and the related Mortgage are original and genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in all respects in accordance with its terms. . . .

(l) The Seller is the sole owner and holder of the Mortgage Loan and the indebtedness evidenced by the Mortgage Note, except for the Assignments of Mortgage which have been sent for recording, and upon recordation the Seller will be the owner of record of the Mortgage and the indebtedness evidenced by the Mortgage Note. . . .

(n) There is no default, breach, violation or event of acceleration existent, under the Mortgage or the related MortgageNote and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration; and neither the Seller nor any prior mortgagee has waived any default, breach, violation or event permitting acceleration;

(q) The Mortgage Loan complies in all material respects with all the terms, conditions and requirements of the Seller's underwriting standards in effect at the time of origination of such Mortgage Loan. The Mortgage Notes and Mortgages (exclusive of any riders) are on

77

| | |
|---|---|
| | forms generally acceptable to FNMA or FHLMC. Monthly Payments under the Mortgage Note are due and payable on the first day of each month. . . . |
| | (tt) None of the Mortgage Loans are (a) covered by the Home Ownership and Equity Protection Act of 1994 or (b) classified as a "high cost" loan or similarly classified using different terminology under any federal, state or local law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees such as predatory lending laws; None of the Mortgage Loans are "high cost" loans as defined by the applicable federal, state or local predatory and abusive lending laws nor is any Mortgage Loan a "High Cost Loan" or "Covered Loan," as applicable (as such terms are defined in the current Standard & Poor's LEVELS® Glossary which is now version 6.0 revised, appendix E) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act of 2002, as amended; and |
| | (uu) As to each Mortgage Loan that is secured by an interest in a leasehold estate, (i) the use of a leasehold estate for residential properties is an accepted practice in the area where the related Mortgaged Property is located, (ii) residential property consisting of leasehold estates is marketable in the area where the related Mortgaged Property is located, (iii) the related lease has been recorded in the applicable land records, (iv) the lease is valid and in good standing and is not subject to any prior lien by which the lease could be terminated or subject to any charge or penalty, and (v) the remaining term of the lease does not terminate less than five years after the maturity date of such Mortgage Loan." |
| CWHEL Servicing Agreement § 2.04(a)  CWHEL Purchase Agreement § 3.02 | "The Sponsor by this reference repeats and incorporates in this Agreement each representation and warranty made by it (as a Seller) in Section 3.02(a) and (b) of the Purchase Agreement (other than Section 3.02(a)(1) and (2)) to the Indenture Trustee, the Credit Enhancer, and the Trust and, in addition, represents and warrants to the Indenture Trustee, the Credit Enhancer, and the Trust that as of the Cut-off Date, unless specifically stated otherwise." CWHEL Servicing Agreement § 2.04(a).  (a) CHL represents and warrants to the Purchaser as of the Cut-off Date, unless specifically stated otherwise:  (1) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, this Agreement constitutes a valid and legally binding obligation of CHL, enforceable against CHL |

in accordance with its terms.

(2) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, either

(A) this Agreement constitutes a valid transfer to the Purchaser of all right, title, and interest of each of the Sellers in the applicable Mortgage Loans, and all collections received in respect of the applicable Mortgage Loans after the Cut-off Date or Subsequent Cut-off Date, as applicable (excluding payments due by the Cut-off Date or Subsequent Cut-off Date, as applicable), all proceeds of the applicable Mortgage Loans, and all other property specified in Section 2.01(a) or (b), and the Sale and Servicing Agreement constitutes a valid transfer to the Trust of the foregoing property and all other property specified in Section 2.01(a) or (b) of the Sale and Servicing Agreement such that, on execution of the Sale and Servicing Agreement, it is owned by the Trust free of all liens and other encumbrances, and is part of the corpus of the Trust transferred to the Trust by the Purchaser, and upon payment for the Additional Balances, this Agreement and the Sale and Servicing Agreement will constitute a valid transfer to the Trust of all interest of each of the Sellers in the Additional Balances, all proceeds of the Additional Balances, and all Other property specified in Section 2.01(a) of the Sale and Servicing Agreement relating to the Additional Balances free of all liens and other encumbrances, and the Indenture constitutes a valid Grant of a Security Interest to the Indenture Trustee in that property, and the Indenture Trustee has a first priority perfected Security Interest in the property, subject to the effect of Section 9-315 of the UCC with respect to collections on the Mortgage Loans that are deposited in the Collection Account in accordance with the next to last paragraph of Section 3.02(b) of the Sale and Servicing Agreement, or

(B) this Agreement or the Sale and Servicing Agreement, as appropriate, constitutes a Grant of a Security Interest to the Owner Trustee on behalf of the Trust and the Indenture constitutes a Grant of a Security Interest to the Indenture Trustee in the property described in clause (A) above. . .

(3) CHL has not authorized the filing of and is not aware of any financing statements against either Seller that include a description of collateral covering the Collateral other than any financing statement (A) relating to the Security Interests granted to the Depositor, the Trust, or the Indenture Trustee under this Agreement, pursuant to the Sale and Servicing Agreement, or pursuant to the Indenture, (B) that has been terminated, or (C) that names the Depositor, the Trust, or the Indenture Trustee as secured party.

79

(4) As of the Closing Date, the information in the Mortgage Loan Schedule for the Initial Mortgage Loans is correct in all material respects. As of the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, the information in the Mortgage Loan Schedule for the relevant Additional Home Equity is correct in all material respects. As of the applicable date of substitution for an Eligible Substitute Mortgage Loan, the information with respect to the Eligible Substitute Mortgage Loan in the Mortgage Loan Schedule is correct in all material respects. As of the date any Additional Balance is created, the information as to the Mortgage Loan identification number and the Additional Balance of that Mortgage Loan reported for inclusion in the Mortgage Loan Schedule is correct in all material respects.

(5) The applicable Mortgage Loans have not been assigned or pledged, and the related Seller is their sole owner and holder free of any liens, claims, encumbrances, participation interests, equities, pledges, charges, or Security Interests of any nature, and has full authority, under all governmental and regulatory bodies having jurisdiction over the ownership of the applicable Mortgage Loans, to transfer them pursuant to this Agreement.

(6) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the related Mortgage Note and the mortgage for each Mortgage Loan have not been assigned or pledged. . .

(7) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the related mortgage is a valid and subsisting first or second lien on the property described in it, as shown on the Mortgage Loan Schedule. . .

(8) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no obligor has a valid offset, defense, or counterclaim under any Credit Line Agreement or mortgage.

(9) To the best knowledge of CHL, as of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no related Mortgaged Property has any delinquent recording or

80

|  | other tax or fee or assessment lien or governmental charge against it, other than those that have been or will be paid by the Seller.

(10) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no proceeding is pending or, to the best knowledge of CHL, threatened for the total or partial condemnation of the related Mortgaged Property, and the property is free of material damage and is in good repair.

(11) To the best knowledge of CHL, as of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no mechanics' or similar liens or claims have been filed for work, labor, or material affecting the related Mortgaged Property that are, or may be, liens prior or equal to the lien of the related mortgage, except liens that are fully insured against by the title insurance policy referred to in clause (16).

(12) As of the Initial Cut-off Date, no Initial Mortgage Loan is 60 days or more delinquent and no more than the applicable percentage specified in the Adoption Annex of the Initial Mortgage Loans in a Loan Group being transferred on the Closing Date (by Cut-off Date Loan Balance) were 30-59 days delinquent; and as of the applicable date on which any other Mortgage Loan is being subsequently transferred, no such Mortgage Loan is 30 days or more delinquent.

(13) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the Mortgage File for each Mortgage Loan contains each of the documents specified to be included in it.

(14) At origination, each Mortgage Loan and the related Mortgage Note complied in all material respects with applicable local, state, and federal laws, including all applicable predatory and abusive lending laws, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, or disclosure laws applicable to the Mortgage Loan, and the servicing practices used by the Master Servicer with respect to each Mortgage Loan have been consistent with the practices and the degree of skill and care the Master Servicer exercises in servicing for itself loans that it owns that are comparable to the Mortgage Loans. |
|---|---|

(15) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no Mortgage Loan is a High Cost Loan or Covered Loan, as applicable. . .

(16) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, either a lender's title insurance policy or binder was issued or a guaranty of title customary in the relevant jurisdiction was obtained, on the date of origination of the Mortgage Loan being transferred on the relevant date and each policy is valid and remains in full force.

(17) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, none of the Mortgaged Properties is a mobile home or a manufactured housing unit that is not considered or classified as part of the real estate under the laws of the jurisdiction in which it is located.

(18) No more than the percentage specified in the Adoption Annex of the Initial Mortgage Loans in each Loan Group, by aggregate principal balance of the related Mortgage Loans, are secured by Mortgaged Properties located in one United States postal zip code.

(19) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the Combined Loan-to-Value Ratio for each Mortgage Loan in each Loan Group was not in excess of the percentage specified in the Adoption Annex.

(20) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no selection procedure reasonably believed by CHL to be adverse to the interests of the Transferor, the Noteholders, or the Credit Enhancer was used in selecting the Mortgage Loans.

(21) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect

82

to any Eligible Substitute Mortgage Loan, neither Seller has transferred the Mortgage Loans to the Trust with any intent to hinder, delay, or defraud any of its creditors.

(22) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the Minimum Monthly Payment with respect to any Mortgage Loan is not less than the interest accrued at the applicable Loan Rate on the average daily Asset Balance during the interest period relating to the date on which the Minimum Monthly Payment is due.

(23) The Mortgage Notes constitute either "instruments" or "general intangibles" as defined in the UCC.

(24) By the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or within 30 days of the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the Sponsor will file UCC1 financing statements in the proper filing office in the appropriate jurisdiction to perfect the Security Interest in the Collateral Granted under the Indenture.

(25) The Mortgage Notes that constitute or evidence the Collateral do not have any marks or notations indicating that they have been pledged, assigned, or otherwise transferred to any person other than the Purchaser, the Trust, or the Indenture Trustee. All financing statements filed or to be filed against each Seller in favor of the Purchaser, the Trust, or the Indenture Trustee in connection with this Agreement, the Sale and Servicing Agreement, or the Indenture describing the Collateral contain a statement to the following effect: 'A purchase of the Mortgage Loans included in the collateral covered by this financing statement will violate the rights of the Purchaser, the Trust, or the Indenture Trustee.'

(26) As of the Closing Date, CHL and Park Monaco will have received a written acknowledgement from the Custodian that is acting solely as agent of the Indenture Trustee.

(27) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, each Credit Line Agreement and each Mortgage Loan is an enforceable obligation of the related mortgagor.

83

(28) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, neither Seller has received a notice of default of any senior mortgage loan related to a Mortgaged Property that has not been cured by a party other than the Master Servicer.

(29) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the definition of "prime rate" in each Credit Line Agreement relating to a Mortgage Loan does not differ materially from "the highest `prime rate' as published in the `Money Rates' table of The Wall Street Journal as of the first business day of the calendar month for the applicable interest rate adjustment date."

(30) The weighted average remaining term to maturity of the Initial Mortgage Loans in each Loan Group on a contractual basis as of the Cut-off Date is approximately the number of months specified for that Loan Group in the Adoption Annex. . .

(31) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, each Mortgaged Property consists of a single parcel of real property with a one-to-four unit single family residence erected on it, or an individual condominium unit, planned unit development unit, or townhouse.

(32) No more than the percentage specified in the Adoption Annex (by Cut-off Date Loan Balance) for each Loan Group of the Initial Mortgage Loans in the related Loan Group are secured by real property improved by individual condominium units, units in planned unit developments, townhouses, or two-to-four family residences erected on them, and at least the percentage specified in the Adoption Annex (by Cut-off Date Loan Balance) for each Loan Group of the Mortgage Loans in the related Loan Group are secured by real property with a detached one-family residence erected on them.

(33) The Credit Limits on the Initial Mortgage Loans in each Loan Group range between approximately the dollar amounts specified in the Adoption Annex for that Loan Group with an average of approximately the dollar amount specified in the Adoption Annex for that Loan Group.

As of the Cut-off Date for the Initial Mortgage Loans, no Mortgage Loan in either Loan Group had a principal balance in excess of approximately the dollar amount specified in the Adoption Annex for that Loan Group and the average principal balance of the Initial Mortgage Loans in each Loan Group is equal to approximately the dollar amounts specified in the Adoption Annex for that Loan Group. (34) Approximately the percentages specified in the Adoption Annex of the Initial Mortgage Loans, by aggregate principal balance as of the Cut-off Date, are secured by first and second liens.

(35) As of the Closing Date, no more than the percentage specified in the Adoption Annex for each Loan Group of the Initial Mortgage Loans in the related Loan Group, by aggregate principal balance, were appraised electronically.

(36) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no default exists under any applicable Mortgage Note or applicable Mortgage Loan and no event that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default under any applicable Mortgage Note or applicable Mortgage Loan has occurred and been waived. As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no modifications to the applicable Mortgage Notes and applicable Mortgage Loans have been made and not disclosed.

(37) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, each Mortgage Loan was originated in accordance with the Sponsor's underwriting guidelines and the Sponsor had no knowledge of any fact that would have caused a reasonable originator of mortgage loans to conclude on the date of origination of each Mortgage Loan that each such Mortgage Loan would not be paid in full when due.

(38) To the best knowledge of CHL at the time of origination of each Mortgage Loan, no improvement located on or being part of the Mortgaged Property was in violation of any applicable zoning and subdivision laws or ordinances.

(39) As of the Closing Date with respect to the Initial Mortgage Loans,

85

the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, any leasehold estate securing a Mortgage Loan has a term of not less than five years in excess of the term of the related Mortgage Loan.

(40) Based on the drawn balances of the Initial Mortgage Loans, the Initial Mortgage Loans had the characteristics set out in the Adoption Annex for each Loan Group in respect of the following: weighted average Combined Loan-to-Value Ratio; range of Combined Loan-to-Value Ratios; percentage of primary residences; weighted average FICO score; range of FICO scores; Weighted Average Net Loan Rate; range of net Loan Rates; weighted average original stated term to maturity; range of original term to maturity; range of remaining term to maturity; average drawn balance; weighted average utilization ratio; and percentage of the Initial Mortgage Loans that have their respective Mortgaged Properties located in the top five states, measured by aggregate drawn balances.

(41) Any Initial Mortgage Loan that has been modified in any manner has been so modified in accordance with the policies and procedures of the Master Servicer and in a manner that was permitted by the Sale and Servicing Agreement, the Indenture, and any other Transaction Document.

(42) Each Initial Mortgage Loan was originated (within the meaning of Section 3(a)(41) of the Securities Exchange Act of 1934) by an entity that satisfied at the time of origination the requirements of Section 3(a)(41) of the Securities Exchange Act of 1934.

(43) At the time each Initial Mortgage Loan was originated, each Seller was, and each Seller is an approved seller of conventional mortgage loans for Fannie Mae and Freddie Mac and is a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

(44) A lender's policy of title insurance together with a condominium endorsement and extended coverage endorsement, if applicable, in an amount at least equal to the principal balance of the related Mortgage Loan as of the Cut-off Date or the relevant Subsequent Cut-off Date, as applicable, or a commitment (binder) to issue the same was effective on the date of the origination of each Mortgage Loan, each such policy is valid and remains in full force, and each such policy was issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located and acceptable to Fannie Mae and Freddie Mac and is in a form acceptable to Fannie Mae and Freddie Mac, which policy insures the Sponsor and successor owners of

| | indebtedness secured by the insured Mortgage, as to the first priority lien, of the Mortgage subject to the exceptions in paragraph (7) above. |
|---|---|
| | (45) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, the improvements on each Mortgaged Property are covered by a valid and existing hazard insurance policy with a generally acceptable carrier that provides for fire and extended coverage and coverage for such other hazards as are customary in the area where the Mortgaged Property is located. . . |
| | (46) If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with respect to the Mortgaged Property with a generally acceptable carrier. . . |
| | (47) Each Mortgage Note and the related Mortgage are genuine, and each is the valid and legally binding obligation of its maker, enforceable in accordance with its terms and under applicable law, except that (a) its enforceability may be limited by bankruptcy, insolvency, moratorium, receivership, and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought. To the best of CHL's knowledge, all parties to the Mortgage Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and each Mortgage Note and Mortgage have been duly and properly executed by such parties. |
| | (48) No Mortgage Loan has a shared appreciation feature, or other contingent interest feature. |
| | (49) To the best of CHL's knowledge, all of the improvements that were included for the purpose of determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach on the Mortgaged Property. |
| | (50) To the best of CHL's knowledge, all inspections, licenses, and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including certificates of occupancy and fire underwriting certificates, have been made or obtained from the |

87

|  | appropriate authorities, unless their lack would not have a material adverse effect on the value of the Mortgaged Property, and the Mortgaged Property is lawfully occupied under applicable law.

(51) Each Mortgage contains customary and enforceable provisions that render the rights and remedies of its holder adequate for the realization against the Mortgaged Property of the benefits of the security intended to be provided by it, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.

(52) Before the approval of the Mortgage Loan application, an appraisal of the related Mortgaged Property was obtained from a qualified appraiser, duly appointed by the Sponsor, who had no interest, direct or indirect, in the Mortgaged Property or in any loan secured by the Mortgaged Property, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan.

(53) Except for (A) payments in the nature of escrow payments, and (B) interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage proceeds, whichever is later, to the day that precedes by one month the Due Period of the first installment of principal and interest and taxes and insurance payments, the Sponsor has not advanced funds, or induced, solicited, or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required by the Mortgage.

(54) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, no foreclosure proceedings are pending against any Mortgaged Property and no Mortgage Loan is subject to any pending bankruptcy or insolvency proceeding.

(55) As of the Closing Date with respect to the Initial Mortgage Loans, the relevant Subsequent Closing Date with respect to any Additional Home Equity Loans, or the applicable date of substitution with respect to any Eligible Substitute Mortgage Loan, there is no homestead exemption available and enforceable that materially interferes with the right to sell any Mortgaged Property at a trustee's sale or the right to foreclose the related Mortgage.

(56) No borrower was required to purchase any single premium credit insurance policy (e.g., life, disability, accident, unemployment, or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit. No borrower obtained a prepaid |

88

| | |
|---|---|
| | single-premium credit insurance policy (e.g., life, disability, accident, unemployment, mortgage, or health insurance) in connection with the origination of the Mortgage Loan. No proceeds from any Mortgage Loan were used to purchase debt cancellation agreements as part of the origination of, or as a condition to closing, the Mortgage Loan.<br>(57) The Initial Mortgage Loans, individually and in the aggregate, conform in all material respects to their descriptions in the Prospectus Supplement."<br>CWHEL Purchase Agreement § 3.02. |
| Mortgage Loan Purchase Agreement for EMC 2006-AR3[7] ("EMC MLPA") §7 | The Mortgage Loan Seller hereby represents and warrants to the Purchaser as of the Closing Date, or such other date as may be specified below with respect to each Mortgage Loan being sold by it, that:<br><br>(i) the information set forth in the Mortgage Loan Schedule hereto is true and correct in all material respects and the information provided to the Rating Agencies, including the Mortgage Loan level detail, is true and correct according to the Rating Agency requirements;<br><br>(ii) immediately prior to the transfer to the Purchaser, the Mortgage Loan Seller was the sole owner of beneficial title and holder of each Mortgage and Mortgage Note relating to the Mortgage Loans and is conveying the same free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges or security interests of any nature and the Mortgage Loan Seller has full right and authority to sell or assign the same pursuant to this Agreement;<br><br>(iii) each Mortgage Loan at the time it was made complied in all material respects with all applicable laws and regulations, including, without limitation, usury, equal credit opportunity, disclosure and recording laws and all applicable predatory, abusive and fair lending laws; and each Mortgage Loan has been serviced in all material respects in accordance with all applicable laws and regulations, including, without limitation, usury, equal credit opportunity, disclosure and recording laws and all applicable anti-predatory lending laws and the terms of the related Mortgage Note, the Mortgage and other loan documents;<br><br>(iv) there is no monetary default existing under any Mortgage or the related Mortgage Note and there is no material event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach or event of acceleration; and neither the Mortgage Loan Seller, any of its affiliates nor any servicer of any related Mortgage Loan has taken any action to waive any default, |

---

[7] Although the Mortgage Loan Purchase Agreements for all the EMC RMBS are not available, plaintiff believes that the Mortgage Loan Purchase Agreements for the other three EMC RMBS are substantially similar.

breach or event of acceleration; and no foreclosure action is threatened or has been commenced with respect to the Mortgage Loan;

(v) the terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments, (i) if required by law in the jurisdiction where the Mortgaged Property is located, or (ii) to protect the interests of the Trustee on behalf of the Certificateholders;

(vi) no selection procedure reasonably believed by the Mortgage Loan Seller to be adverse to the interests of the Certificateholders was utilized in selecting the Mortgage Loans;

(vii) each Mortgage is a valid and enforceable first lien on the property securing the related Mortgage Note and each Mortgaged Property is owned by the Mortgagor in fee simple (except with respect to common areas in the case of condominiums, PUDs and de minimis PUDs) or by leasehold for a term longer than the term of the related Mortgage, subject only to (i) the lien of current real property taxes and assessments, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage, such exceptions being acceptable to mortgage lending institutions generally or specifically reflected in the appraisal obtained in connection with the origination of the related Mortgage Loan or referred to in the lender's title insurance policy delivered to the originator of the related Mortgage Loan and (iii) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by such Mortgage;

(viii) there is no mechanics' lien or claim for work, labor or material affecting the premises subject to any Mortgage which is or may be a lien prior to, or equal with, the lien of such Mortgage except those which are insured against by the title insurance policy referred to in xiii below;

(ix) there was no delinquent tax or assessment lien against the property subject to any Mortgage, except where such lien was being contested in good faith and a stay had been granted against levying on the property;

(x) there is no valid offset, defense or counterclaim to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal and interest on such Mortgage Note;

(xi) the physical property subject to any Mortgage is free of material damage and is in good repair and there is no proceeding pending or threatened for the total or partial condemnation of any Mortgaged Property;

90

|  | (xii) the Mortgaged Property and all improvements thereon comply with all requirements of any applicable zoning and subdivision laws and ordinances;<br><br>(xiii) a lender's title insurance policy (on an ALTA or CLTA form) or binder, or other assurance of title customary in the relevant jurisdiction therefor in a form acceptable to Fannie Mae or Freddie Mac, was issued on the date that each Mortgage Loan was created by a title insurance company which, to the best of the Mortgage Loan Seller's knowledge, was qualified to do business in the jurisdiction where the related Mortgaged Property is located, insuring the Mortgage Loan Seller and its successors and assigns that the Mortgage is a first priority lien on the related Mortgaged Property in the original principal amount of the Mortgage Loan. The Mortgage Loan Seller is the sole insured under such lender's title insurance policy, and such policy, binder or assurance is valid and remains in full force and effect, and each such policy, binder or assurance shall contain all applicable endorsements including a negative amortization endorsement, if applicable;<br><br>(xiv) at the time of origination, each Mortgaged Property was the subject of an appraisal which conformed to the underwriting requirements of the originator of the Mortgage Loan and, the appraisal is in a form acceptable to Fannie Mae or FHLMC;<br><br>(xv) the improvements on each Mortgaged Property securing a Mortgage Loan are insured (by an insurer which is acceptable to the Mortgage Loan Seller) against loss by fire and such hazards as are covered under a standard extended coverage endorsement in the locale in which the Mortgaged Property is located, in an amount which is not less than the lesser of the maximum insurable value of the improvements securing such Mortgage Loan or the outstanding principal balance of the Mortgage Loan, but in no event in an amount less than an amount that is required to prevent the Mortgagor from being deemed to be a co-insurer thereunder; if the improvement on the Mortgaged Property is a condominium unit, it is included under the coverage afforded by a blanket policy for the condominium project; if upon origination of the related Mortgage Loan, the improvements on the Mortgaged Property were in an area identified as a federally designated flood area, a flood insurance policy is in effect in an amount representing coverage not less than the least of (i) the outstanding principal balance of the Mortgage Loan, (ii) the restorable cost of improvements located on such Mortgaged Property or (iii) the maximum coverage available under federal law; and each Mortgage obligates the Mortgagor thereunder to maintain the insurance referred to above at the Mortgagor's cost and expense; |
|---|---|

91

(xvi) each Mortgage Loan constitutes a "qualified mortgage" under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9) without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9);

(xvii) none of the Mortgage Loans are (a) loans subject to 12 CFR Part 226.31, 12 CFR Part 226.32 or 12 CFR Part 226.34 of Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended or (b) "high cost home," "covered" (excluding home loans defined as "covered home loans" in the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004), "high risk home" or "predatory" loans under any applicable state, federal or local law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees);

(xviii) the information set forth in Schedule A of the Prospectus Supplement with respect to the Mortgage Loans is true and correct in all material respects;

(xix) no Mortgage Loan (a) is a "high cost loan" or "covered loan" as applicable (as such terms are defined in the then current Standard & Poor's LEVELS(R) Glossary, which is now Version 5.6c, Appendix E, attached hereto as Exhibit 6 or (b) was originated on or after October 1, 2002 through March 6, 2003 and is governed by the Georgia Fair Lending Act;

(xx) each Mortgage Loan was originated in accordance with the underwriting guidelines of the related originator;

(xxi) each original Mortgage has been recorded or is in the process of being recorded, unless such recordation is not required, in each case pursuant to the requirements of Section 2.01 of the Pooling and Servicing Agreement in the appropriate jurisdictions wherein such recordation is required to perfect the lien thereof for the benefit of the Trust Fund;

(xxii) the related Mortgage File contains each of the documents and instruments listed in Section 2.01 of the Pooling and Servicing

92

| | |
|---|---|
| | Agreement, subject to any exceptions, substitutions and qualifications as are set forth in such Section; |
| | (xxiii) the Mortgage Loans are currently being serviced in accordance with accepted servicing practices; |
| | (xxiv) with respect to each Mortgage Loan that has a prepayment penalty feature, each such prepayment penalty is enforceable and will be enforced by the Mortgage Loan Seller and each prepayment penalty is permitted pursuant to federal, state and local law, provided that (i) no Mortgage Loan will impose a prepayment penalty for a term in excess of five years from the date such Mortgage Loan was originated and (ii) such prepayment penalty is at least equal to the lesser of (A) the maximum amount permitted under applicable law and (B) six months interest at the related Mortgage Interest Rate on the amount prepaid in excess of 20% of the original principal balance of such Mortgage Loan. |
| | (xxv) If any of the Mortgage Loans are secured by a leasehold interest, with respect to each leasehold interest: the use of leasehold estates for residential properties is an accepted practice in the area where the related Mortgaged Property is located; residential property in such area consisting of leasehold estates is readily marketable; the lease is recorded and no party is in any way in breach of any provision of such lease; the leasehold is in full force and effect and is not subject to any prior lien or encumbrance by which the leasehold could be terminated or subject to any charge or penalty; and the remaining term of the lease does not terminate less than ten years after the maturity date of such Mortgage Loan. |
| Equity One PSA Schedule IIIA | "[Seller] hereby makes the representations and warranties set forth in this Schedule IIIA to the Depositor and the Trustee as of the Closing Date, or if so specified herein, as of the Cut-off Date with respect to the Loans being conveyed by Seller and the Mortgages, Mortgage Notes and Mortgaged Properties related thereto. |
| | Capitalized terms used but not otherwise defined in this Schedule IIIA shall have the meanings ascribed thereto in the Pooling and Servicing Agreement (the 'Pooling and Servicing Agreement') relating to the above-referenced Series, among Seller, the other Sellers and the Servicer identified therein, Popular ABS, Inc., as depositor, and JPMorgan Chase Bank, N.A., as trustee. The term 'Agreement' shall be used in this Schedule to refer to the Pooling and Servicing Agreement. |
| | (1) The information set forth on Schedule I to the Agreement with respect to the Loans is true and correct in all material respects as of the Closing Date. |

93

(2) As of the close of business on May 31, 2006, no Loan was 30 or more days contractually past due (assuming 30 day months). . . .

(4) No Loan had a Combined Loan-to-Value Ratio at origination in excess of 100%. For purposes of determining the date of origination on which each Loan's Combined Loan-to-Value Ratio is measured, no Loan has been significantly modified within the meaning of Treasury Regulation 1.860G-2(b) as of the Closing Date.

(5) Each Mortgage is a valid and enforceable first lien on the referenced Mortgaged Property subject. . .
(6) Immediately prior to the assignment of the Loans to the Depositor, the Seller had good title to, and was the sole owner of, each such Loan free and clear of any pledge, lien, encumbrance or security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign the same pursuant to the Agreement.

(7) To the best of Seller's knowledge, there is no delinquent tax or assessment lien against any Mortgaged Property.

(8) There is no valid right of rescission, offset, defense or counterclaim to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal of or interest on such Mortgage Note.

(9) To the best of Seller's knowledge, there are no mechanics' liens or claims for work, labor or material affecting any Mortgaged Property which are or may be a lien prior to, or equal with, the lien of such Mortgage, except those which are insured against by the title insurance policy referred to in item (13) below. . . .

(11) Each Loan at origination complied in all material respects with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, real estate settlement procedures, truth-in-lending and disclosure laws, and all applicable predatory and abusive lending laws, and consummation of the transactions contemplated hereby will not involve the violation of any such laws. . . .

(13) For each Loan that is not a Borrower Retention Loan, a lender's policy of title insurance together with a condominium endorsement and extended coverage endorsement, if applicable, in an amount at least equal to the Cut-off Date Principal Balance of each such Loan or a commitment (binder) to issue the same was effective on the date of the origination of each Loan, each such policy is valid and remains in full force and effect, and each such policy was issued by a title insurer qualified to do business in the jurisdiction where the related Mortgaged Property is located, which policy insures the Seller and successor

94

| | owners of indebtedness secured by the related insured Mortgage, as to the applicable priority lien of the Mortgage subject to the exceptions set forth in item (4) above; to the best of the Seller's knowledge, no claims have been made under such mortgage title insurance policy and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such mortgage title insurance policy. Approximately 25.50% of the Loans (by principal balance) are Borrower Retention Loans. . . . <br><br> (16) Each Mortgage Note and the related Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms and under applicable law. . . <br><br> (17) The proceeds of each Loan (other than certain amounts escrowed for home improvements) have been fully disbursed and there is no requirement for future advances thereunder. All costs, fees and expenses incurred in making, or closing or recording such Loans were paid. . . . <br><br> (21) The origination, underwriting and collection practices used by the Seller with respect to each Loan have been in all respects legal, prudent and customary in the mortgage lending and servicing business. . . . <br><br> (25) To the best of Seller's knowledge: at the Cut-off Date, the improvements on each Mortgaged Property were covered by a valid and existing hazard insurance policy with a generally acceptable carrier that provides for fire and extended coverage and coverage for such other hazards as are customary in the area where such Mortgaged Property is located. . . <br><br> (26) If a Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the requirements of the current guidelines of the Flood Insurance Administration was required at closing with respect to such Mortgaged Property with a generally acceptable carrier in an amount representing coverage not less than the least of (a) the original outstanding principal balance of the related Loan, (b) the minimum amount required to compensate for damage or loss on a maximum insurable value basis or (c) the maximum amount of insurance that is available under the Flood Disaster Protection Act of 1973, as amended. . . . <br><br> (28) There is no material monetary default existing under any Mortgage or the related Mortgage Note and, to the best of the Seller's knowledge, there is no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under such Mortgage or related Mortgage Note; and the Seller has not waived any default, breach, violation or event of acceleration. . . . |
|---|---|

|  | (33) Each Loan was underwritten in all material respects in accordance with the Seller's underwriting guidelines as set forth in the Prospectus Supplement. |
| --- | --- |
|  | (34) An appraisal of each Mortgaged Property that is not a Borrower Retention Loan was obtained from a qualified appraiser, duly appointed by the originator, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of such Loan; such appraisal is in a form acceptable to FNMA and FHLMC. . . . |
|  | (36) The Loans were selected from among the outstanding residential mortgage loans in Seller's portfolio at the Closing Date as to which the representations and warranties made as to such Loans set forth in this Schedule IIIA can be made. Such selection was not made in a manner that would adversely affect the interests of Certificateholders. . . . |
|  | (43) Each Loan is a "qualified mortgage" for purposes of Section 860G(a)(3) of the Code and Treasury Regulations Section 1.860G-2(a)(1) and (3). |
|  | (44) The Loans, individually and in the aggregate, conform in all material respects to the descriptions thereof in the Prospectus Supplement. . . . |
|  | (50) No Loan is classified and/or defined as (a) a "high cost home," "covered" (excluding home loans defined as "covered home loans" pursuant to the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004), "high risk home," or "predatory" loan under any applicable federal, state or local law (or is similarly classified and/or defined using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees), or (b) a "High Cost Loan" or "Covered Loan," as applicable (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary which is now Version 5.6c Revised, Appendix E). |
| Mortgage Loan Purchase Agreement related to FHAMS 2006-AA1 dated as of February 28, 2006 ("First Horizon MLPA") Schedule B | "First Horizon Home Loan Corporation (the 'Seller') hereby makes the representations and warranties set forth in this Schedule B on which First Horizon Asset Securities Inc. (the 'Purchaser') relies in accepting the Mortgage Loans.  Such representations and warranties speak as of the execution and delivery of the Mortgage Loan Purchase Agreement, dated as of February 28, 2006 (the 'MLPA'), between First Horizon Home Loan Corporation, as seller, and the Purchaser and as of the Closing Date, or if so specified herein, as of the Cut-off Date or date of origination of the Mortgage Loans, but shall survive the sale, transfer, and assignment of the Mortgage Loans to the Purchaser and any |

96

subsequent sale, transfer and assignment by the Purchaser to a third party. Capitalized terms used but not otherwise defined in this Schedule B shall have the meanings ascribed thereto in the MLPA or the Pooling and Servicing Agreement, dated as of June 1, 2005, between First Horizon Asset Securities Inc., as depositor, First Horizon Home Loan Corporation, as master servicer, and The Bank of New York, as trustee. (1) The information set forth on Schedule A to the MLPA, with respect to each Mortgage Loan is true and correct in all material respects as of the Closing Date.

(2) Each Mortgage is a valid and enforceable first lien on the Mortgaged Property subject . . . .

(3) Immediately prior to the assignment of the Mortgage Loans to the Purchaser, the Seller had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign the same pursuant to this Agreement.

(4) As of the date of origination of each Mortgage Loan, there was no delinquent tax or assessment lien against the related Mortgaged Property.

(5) There is no valid offset, defense or counterclaim to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal of or interest on such Mortgage Note.

(6) There are no mechanics' liens or claims for work, labor or material affecting any Mortgaged Property which are or may be a lien prior to, or equal with, the lien of such Mortgage, except those which are insured against by the title insurance policy referred to in item (11) below. . . .

(8) Each Mortgage Loan at origination complied in all material respects with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, real estate settlement procedures, truth-in-lending and disclosure laws and specifically applicable predatory and abusive lending laws, or any noncompliance does not have a material adverse effect on the value of the related Mortgage Loan.

(9) No Mortgage Loan is a 'high cost loan' as defined by the specific applicable predatory and abusive lending laws. . . .

(11) A lender's policy of title insurance together with a condominium endorsement and extended coverage endorsement, if applicable, in an amount at least equal to the Cut-off Date Principal Balance of each such Mortgage Loan or a commitment (binder) to issue the same was effective on the date of the origination of each Mortgage Loan, each

97

|  | such policy is valid and remains in full force and effect, or, in lieu thereof, an Alternative Title Product. . . .

(14) The Mortgage Note and the related Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms and under applicable law.

(15) The proceeds of the Mortgage Loans have been fully disbursed and there is no requirement for future advances thereunder. . . .

(18) As of the Closing Date, the improvements upon each Mortgaged Property are covered by a valid and existing hazard insurance policy with a generally acceptable carrier that provides for fire and extended coverage and coverage for such other hazards as are customarily required by institutional single family mortgage lenders in the area where the Mortgaged Property is located . . . .

(19) If at the time of origination of each Mortgage Loan, related the Mortgaged Property was in an area then identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the then-current requirements of the Flood Insurance Administration is in effect with respect to such Mortgaged Property with a generally acceptable carrier. . . .

(21) To best of the Seller's knowledge, there is no material event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a material non-monetary default, breach, violation or event of acceleration under the Mortgage or the related Mortgage Note; and the Seller has not waived any material non-monetary default, breach, violation or event of acceleration. . . .

(23) Each Mortgage Loan was selected from among the outstanding fixed-rate one- to four-family mortgage loans in the Seller's portfolio at the Closing Date as to which the representations and warranties made with respect to the Mortgage Loans set forth in this Schedule B can be made. No such selection was made in a manner intended to adversely affect the interests of the Certificateholders. . . .

(31) No Mortgage Loan was delinquent more than 30 days as of the Cut-off Date.

(32) No Mortgage Loan had a Loan-to-Value Ratio at origination of more than 95%. Generally, each Mortgage Loan with a Loan-to-Value Ratio at origination of greater than 80% is covered by a Primary Insurance Policy issued by a mortgage insurance company that is acceptable to Fannie Mae or Freddie Mac. |
|---|---|

98

| | |
|---|---|
| | (33) Each Mortgage Loan constitutes a 'qualified mortgage' within the meaning of Section 860G(a)(3) of the Code. |
| | (34) No Mortgage Loan is a 'high cost loan' as defined by the specific applicable predatory and abusive lending laws. In addition, no Mortgage Loan is a 'High Cost Loan' or a 'Covered Loan', as applicable (as such terms are defined in the then current Standard & Poor's LEVELS(R) Glossary which is now Version 5.6b Revised, Appendix E) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act. |
| | (35) Appraisal form 1004 or form 2055 with an interior inspection for first lien mortgage loans has been obtained for all related mortgaged properties, other than condominiums, investment properties, two to four unit properties and exempt properties, for which appraisal form 1004 or form 2055 has not been obtained. Appraisal form 704, 2065 or 2055 with an exterior only inspection for junior lien mortgages combined with first lien mortgages (including home equity lines of credit) has been obtained for all related mortgaged properties, other than condominiums, investment properties, two to four unit properties and exempt properties, for which appraisal form 1004 or form 2055 has not been obtained. Appraisal form 704, 2065 or 2055 with an exterior only inspection for all other junior lien mortgages has been obtained for all related mortgaged properties, other than those related mortgaged properties that qualify for an Automated Valuation Model." |
| Nationstar PSA<br><br>§ 3.03; 3.04(b)(1) | "The Seller hereby represents, warrants and covenants to the Depositor, the Master Servicer, the Securities Administrator, the Trustee and the Owners that as of the Startup Day. . .<br><br>(c) This Agreement and the other Operative Documents to which the Seller is a party, assuming due authorization, execution and delivery by the other parties hereto and thereto, each constitutes a valid, legal and binding obligation of the Seller enforceable hereof and thereof against it in accordance with the terms hereof and thereof, except as the enforcement hereof and thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law). . .<br><br>(f) The statements contained in the Registration Statement which describe the Seller or matters or activities for which it is responsible in accordance with the Operative Documents or which are attributed to it therein are true and correct in all material respects, and the Registration Statement does not contain any untrue statement of a material fact with respect to the Seller or omit to state a material fact required to be stated |

99

<table>
<tr><td></td><td>

therein or necessary in order to make the statements contained therein with respect to the Seller not misleading. . .

(i) The origination practices used by the Seller with respect to the Home Equity Loans have been, in all material respects, legal, proper, prudent and customary in the home equity lending business. All of the Home Equity Loans were originated by the Seller, an Affiliate of the Seller or a broker for simultaneous assignment to the Seller or were acquired by the Seller from correspondent lenders and are underwritten to comply with the Seller's underwriting standards.

(j) The transactions contemplated by this Agreement are in the ordinary course of business of the Seller. . . .

(n) The Seller did not sell any interest in any Home Equity Loan with any intent to hinder, delay or defraud any of its creditors. . . .

(r) The sale, transfer, assignment and conveyance of Home Equity Loans by the Seller pursuant to this Agreement is not subject to and will not result in any tax, fee or governmental charge payable by the Seller, the Depositor or the Trustee to any federal, state or local government ('Transfer Taxes') other than Transfer Taxes which have been or will be paid as due by the Seller. The Seller shall pay any and all such Transfer Taxes.

(s) No certificate of an officer, statement furnished in writing or report delivered pursuant to the terms hereof by the Seller contains any untrue statement of a material fact or omits to state any material fact necessary to make the certificate, statement or report not misleading.

It is understood and agreed that the representations and warranties set forth in this Section 3.03 shall survive delivery of the respective Home Equity Loans to the Trustee." Nationstar PSA § 3.03

"The Seller, with respect to the Home Equity Loans hereby represents, warrants and covenants to the Trustee, the Securities Administrator, the Depositor, the Master Servicer, the Servicer and the Owners that as of the Startup Day (or the Replacement Cut-Off Date, with respect to a Qualified Replacement Mortgage):

(i) The information with respect to each Home Equity Loan set forth in the related Schedule of Home Equity Loans is true and correct in all material respects as of the Cut-Off Date;

(ii) Except as otherwise disclosed on the related Schedule of Home Equity Loans, all payments required to be made up to the close of business on the Startup Day for such Home Equity Loan under the terms of the Note have been made; neither the Seller nor the Servicer has

</td></tr>
</table>

100

| | advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the related Property, directly or indirectly, for the payment of any amount required by the Note or Mortgage. . . |
|---|---|
| | (iv) The terms of the Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments, recorded in the applicable public recording office if necessary to maintain the lien priority of the Mortgage, and which have been delivered to the Custodian; the substance of any such waiver, alteration or modification has been approved by the title insurer, to the extent required by the related policy, and is reflected on the related Schedule of Home Equity Loans. No instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the title insurer, to the extent required by the policy, and which assumption agreement has been delivered to the Custodian and the terms of which are reflected in the related Schedule of Home Equity Loans. . . |
| | (vi) All buildings upon the Property are insured by a Qualified Insurer acceptable to FNMA and FHLMC against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Property is located, pursuant to insurance policies providing coverage in an amount not less than the greatest of (i) 100% of the replacement cost of all improvements to the Property, (ii) either (A) the outstanding principal balance of the Home Equity Loan with respect to each first lien Home Equity Loan or (B) with respect to each second lien Home Equity Loan, the sum of the outstanding principal balance of the related first lien mortgage loan and the outstanding principal balance of the second lien Home Equity Loan, or (iii) the amount necessary to avoid the operation of any co-insurance provisions with respect to the Property, and consistent with the amount that would have been required as of the date of origination in accordance with the Underwriting Guidelines; provided that, such amount shall not exceed the amount provided under applicable law. All such insurance policies contain a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee and all premiums thereon have been paid. If the Property is in an area identified on a Flood Hazard Map or Flood Insurance Rate Map issued by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available) a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect which policy conforms to the requirements of FNMA and FHLMC. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such |

101

insurance at Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor;

(vii) Any and all requirements of any federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, predatory, abusive and fair lending laws, consumer credit protection, equal credit opportunity, fair housing or disclosure laws and orders from regulatory authorities applicable to the origination and servicing of mortgage loans of a type similar to the Home Equity Loans and applicable to any prepayment penalty associated with the Home Equity Loans at origination have been complied with in all material respects;

(viii) The Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release;

(ix) The Mortgage is a valid, existing and enforceable (A) first lien and first priority security interest with respect to each Home Equity Loan which is indicated by the Seller to be a first lien (as reflected on the Schedule of Home Equity Loans), or (B) second lien and second priority security interest with respect to each Home Equity Loan which is indicated by the Seller to be a second lien (as reflected on the Schedule of Home Equity Loans), in either case, on the Property, including all improvements on the Property subject only to (a) the lien of current real property taxes and assessments not yet due and payable, (b) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Home Equity Loan and which do not adversely affect the Appraised Value of the Property, (c) with respect to each Home Equity Loan which is indicated by the Seller to be a second lien Home Equity Loan (as reflected on the Schedule of Home Equity Loans) a first lien on the Property; and (d) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Property. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Home Equity Loan establishes and creates a valid, existing and enforceable first or second lien and first or second priority security interest (in each case, as indicated on the Schedule of Home Equity Loans) on the Property described therein and the Seller has full right to sell and assign the same;

102

|  | (x) The Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms. . .<br><br>(xiii) The Seller is the sole legal, beneficial and equitable owner of the Note and the Mortgage and has full right to transfer and sell the Home Equity Loan free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest. . .<br><br>(xvi) There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither the Seller nor the Servicer has waived any default, breach, violation or event of acceleration. With respect to each second lien Home Equity Loan (i) the related first lien mortgage loan is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such first lien mortgage or the related mortgage note, (iii) there is no current event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, (iv) either (A) the first lien mortgage contains a provision which allows or (B) applicable law requires, the mortgagee under the second lien Home Equity Loan to receive notice of, and affords such mortgagee an opportunity to cure any default by payment in full or otherwise under the first lien mortgage, (v) the related first lien does not provide for or permit negative amortization under such first lien Home Equity Loan, and (vi) either no consent for the Home Equity Loan is required by the holder of the first lien or such consent has been obtained and is contained in the File;<br><br>(xvii) There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;<br><br>(xviii) All improvements which were considered in determining the Appraised Value of the related Property lay wholly within the boundaries and building restriction lines of the Property, and no improvements on adjoining properties encroach upon the Property;<br><br>(xix) The Home Equity Loans were originated by Fremont Investment & Loan pursuant to the Master Mortgage Loan Purchase and Interim Servicing Agreement or by a savings and loan association, a savings bank, a commercial bank or similar banking institution which is |
|---|---|

103

supervised and examined by a federal or state authority, or by a mortgagee approved as such by the Secretary of HUD. . .

(xxi) The origination, servicing and collection practices used with respect to each Note and Mortgage including, without limitation, the establishment, maintenance and servicing of the escrow accounts and escrow payments, if any, since origination, have been in all respects legal, proper, prudent and customary in the mortgage origination and servicing industry. The Home Equity Loan has been serviced by the Servicer and any predecessor servicer in accordance with the terms of the Note and accepted servicing practices. With respect to escrow deposits and escrow Payments, if any, all such payments are in the possession of, or under the control of, the Servicer and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or escrow Payments or other charges or payments due the Servicer have been capitalized under any Mortgage or the related Note and no such escrow deposits or Escrow Payments are being held by the Servicer for any work on a Property which has not been completed. . .

(xxiv) The Home Equity Loan was underwritten in accordance with the published underwriting standards of Seller in effect at the time the Home Equity Loan was originated; and the Note and Mortgage are on forms acceptable to prudent lenders in the secondary market;

(xxv) The Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Property and the security interest of any applicable security agreement or chattel mortgage referred to in (ix) above;

(xxvi) The File contains an appraisal of the related Property which satisfied the standards of FNMA and FHLMC, was on appraisal form 1004, form 1025 and form 1073 with an interior inspection and was made and signed, prior to the approval of the Home Equity Loan application, by a qualified appraiser, duly appointed by the Servicer, who had no interest, direct or indirect in the Property or in any loan made on the security thereof, whose compensation is not affected by the approval or disapproval of the Home Equity Loan and who met the minimum qualifications of FNMA and FHLMC. Each appraisal of the Home Equity Loan was made in accordance with the relevant provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. . .

(xxxii) No Home Equity Loan had a Loan-to-Value-Ratio or a Combined Loan-to-Value Ratio at origination in excess of 100%. No Home Equity Loan is subject to a lender paid primary mortgage insurance policy; (xxxiii) The Property is lawfully occupied under applicable law; all inspections, licenses and certificates required to be

104

made or issued with respect to all occupied portions of the Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities; (xxxiv) To the Seller's knowledge, no error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Home Equity Loan has taken place on the part of any person, including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Home Equity Loan or in the application of any insurance in relation to such Home Equity Loan;

(xxxv) The Assignment of Mortgage is in recordable form, except for the name of the assignee which is blank, and is acceptable for recording under the laws of the jurisdiction in which the Property is located;

(xxxvi) Any principal advances made to the Mortgagor prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first or second (as indicated on the Schedule of Home Equity Loans) lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest. The consolidated principal amount does not exceed the original principal amount of the Home Equity Loan. . .

(xxxviii) The source of the down payment with respect to each Home Equity Loan has been fully verified by the Servicer. . .

(xliii) No predatory, abusive, or deceptive lending practices, including but not limited to, the extension of credit to a Mortgagor without regard for the Mortgagor's ability to repay the Home Equity Loan and the extension of credit to a mortgagor which has no apparent benefit to the Mortgagor, were employed in connection with the origination of the Home Equity Loan;

(xliv) The debt-to-income ratio of the related Mortgagor was not greater than 60% at the origination of the related Home Equity Loan. . .

(xlvii) The information set forth in the Schedule of Home Equity Loans as to Prepayment Charges is complete, true and correct in all material respects and each Prepayment Charge is permissible, enforceable and collectable in accordance with its terms upon the Mortgagor's full and voluntary principal payment under applicable law and each Prepayment Charge was originated in compliance with all applicable federal, state and local laws. . .

105

(lii) No Home Equity Loan is a "High-Risk Home Loan" as defined in the Illinois High-Risk Home Loan Act effective January 1, 2004 (815 Ill. Comp. Stat. 137/1 et seq.). Each Home Equity Loan secured by property located within the Cook County, Illinois anti-predatory lending Pilot Program area (i.e., ZIP Codes 60620, 60621, 60623, 60628, 60629, 60632, 60636, 60638, 60643 and 60652) complies with the recording requirements outlined in Illinois House Bill 4050 and Senate Bill 304 effective September 1, 2006 for the period of time such Pilot Program was in effect. . .

(liv) No Home Equity Loan is a "High-Cost" loan as defined under the New York Banking Law Section 6-1, effective as of April 1, 2003; (lv) No Home Equity Loan (a) is secured by property located in the State of New York; (b) had an unpaid principal balance at origination of $300,000 or less, and (c) has an application date on or after April 1, 2003, the terms of which Home Equity Loan equal or exceed either the APR or the points and fees threshold for "high-cost home loans", as defined in Section 6-1 of the New York State Banking Law. . .

(lxvii) The sale or transfer of the Home Equity Loan by the Seller complies with all applicable federal, state, and local laws, rules, and regulations governing such sale or transfer, including, without limitation, the Fair and Accurate Credit Transactions Act ("FACT Act") and the Fair Credit Reporting Act, each as may be amended from time to time, and the Seller has not received any actual or constructive notice of any identity theft, fraud, or other misrepresentation in connection with such Home Equity Loan or any party thereto;

(lxviii) With respect to each MERS Loan, a MIN has been assigned by MERS and such MIN is accurately provided on the Schedule of Home Equity Loans. The related Assignment of Mortgage to MERS has been duly and properly recorded, or has been delivered for recording to the applicable recording office;

(lxix) With respect to each MERS Loan, Seller has not received any notice of liens or legal actions with respect to such Home Equity Loan and no such notices have been electronically posted by MERS. . .

(lxxvi) No Home Equity Loan is currently delinquent and has not been more than 30 days delinquent within twelve (12) months of the related Cut-off Date under the Office of Thrift Supervision delinquency methodology. . .

(lxxix) Except as set forth on the Schedule of Home Equity Loans, no first lien Home Equity Loan has an original principal balance that exceeds the applicable FHLMC loan limit;

106

| | |
|---|---|
| | (lxxx) Except as set forth on the Schedule of Home Equity Loans, no Home Equity Loan is "seasoned" (a seasoned mortgage loan is one where the date of the Note is more than 1 year before the date of issuance of the related security)." Nationstar PSA § 3.04(b)(1) |
| NovaStar PSA § 3.01 | "The Sponsor hereby represents and warrants to the Depositor and the Trustee as of the date hereof, as of the Closing Date (or if otherwise specified below, as of the date so specified) and as of each Subsequent Transfer Date: |
| | (b) As to each Initial Mortgage Loan as of the Closing Date and with respect to each Subsequent Mortgage Loan as of the Subsequent Transfer Date, except as otherwise expressly stated: |
| | (i) The information set forth on the Mortgage Loan Schedule with respect to each Initial Mortgage Loan is true and correct in all material respects as of the Closing Date, and with respect to each Subsequent Mortgage Loan is true and correct in all material respects as of the related Subsequent Transfer Date, and the information regarding the Initial Mortgage Loans and the Subsequent Mortgage Loans on the computer diskette or tape delivered to the Trustee and the Custodian prior to the Closing Date or related Subsequent Transfer Date, as applicable, is true and accurate in all material respects and describes the same Mortgage Loans as the Mortgage Loans on the Mortgage Loan Schedule; |
| | (ii) The Mortgage Loans are not being transferred with any intent to hinder, delay or defraud any creditors; |
| | (iii) No more than 6.29% and 9.73% of the Initial Mortgage Loans in Group I and the Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) were secured by condominium units; and no more than 12.33% and 20.95% of the Initial Mortgage Loans in Group I and the Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) were secured by properties in planned unit developments; |
| | (iv) As of the Cut-off Date, the remaining term of each Group I Initial Mortgage Loan is not more than 360 months and not less than 120 months and the remaining term of each Group II Initial Mortgage Loan is not more than 360 months and not less than 175 months; |
| | (v) No more than 76.76% and 19.30% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) have been the subject of cash-out refinances; |
| | (vi) No more than 4.67% and 0.40% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut- |

107

off Date Principal Balance), have been the subject of rate and term (no cash-out) refinances;

(vii) No fewer than 18.57% and 80.31% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) are purchase money loans;

(viii) No more than 8.92% and 23.87% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) are secured by Mortgaged Properties located in the State of California; no more than 21.51% and 25.93% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) are secured by Mortgaged Properties located in the State of Florida; no more than 4.17% and 2.79% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II (by Cut-off Date Principal Balance) are secured by Mortgaged Properties located in the State of Virginia; no more than 5.07% and 2.90% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II (by Cut-off Date Principal Balance) are secured by Mortgaged Properties located in the State of New Jersey; no more than 7.24% and 4.40% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II (by Cut-off Date Principal Balance) are secured by Mortgaged Properties located in the State of Maryland; no more than 4.78% and 3.50% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II (by Cut-off Date Principal Balance) are secured by Mortgaged Properties located in the State of New York; no more than 48.29% and 36.61% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) are located in any other state;

(ix) The outstanding Principal Balances of the Initial Mortgage Loans in Group I (by Cut-off Date Principal Balance) ranged from $12,375 to $595,000, the average outstanding Principal Balance of the Initial Mortgage Loans in Group I is approximately $153,522; the outstanding Principal Balances of the Initial Mortgage Loans in Group II (by Cut-off Date Principal Balance) ranged from $15,000 to $1,102,122, the average outstanding Principal Balance of the Initial Mortgage Loans in Group II is approximately $186,268;

(x) Approximately 75.46% and 64.44% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) were secured by a first lien on a parcel of real property improved by a detached single family residence; no more than 5.91% and 4.88% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date

Principal Balance) were secured by a first lien on a parcel of real estate improved by a multi-unit residence;

(xi) All points and fees related to each Mortgage Loan were disclosed in writing to the borrower in accordance with applicable state and federal law and the borrower has executed a statement to that effect. No borrower was charged "points and fees" (whether or not financed) in an amount greater than 5% of the principal amount of any such loan originated by the Sponsor, such 5% limitation calculated in accordance with the Lender Letter. All fees and charges (including finance charges) and whether or not financed, assessed, collected or to be collected with the origination and servicing of each Mortgage Loan has been disclosed in writing to the borrower in accordance with applicable state and federal law and regulation;

(xii) The Mortgage Rates borne by the adjustable rate Initial Mortgage Loans in Group I as of the Closing Date range from 5.990 % per annum to 13.650% per annum, and the weighted average Mortgage Rate (by Cut-off Date Principal Balance) of the adjustable rate Initial Mortgage Loans in Group I was 8.943% per annum; the Mortgage Rates borne by fixed rate Initial Mortgage Loans in Group I as of the Closing Date range from 6.990% per annum to 13.050% per annum, and the weighted average Mortgage Rate (by Cut-off Date Principal Balance) of the fixed rate Initial Mortgage Loans in Group I was 8.877% per annum; the Mortgage Rates borne by adjustable rate Initial Mortgage Loans in Group II as of the Closing Date range from 5.990% per annum to 12.700% per annum, and the weighted average Mortgage Rate (by Cut-off Date Principal Balance) of the adjustable rate Initial Mortgage Loans in Group II was 8.843% per annum; the Mortgage Rates borne by fixed rate Initial Mortgage Loans in Group II as of the Closing Date range from 7.600% per annum to 13.000% per annum, and the weighted average Mortgage Rate (by Cut-off Date Principal Balance) of the fixed rate Initial Mortgage Loans in Group II was 10.760% per annum;

(xiii) Approximately 46.77% and 46.67% of the Initial Mortgage Loans in Group I and the Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) have a Loan-to-Value Ratio in excess of 80%; no Group I Mortgage Loan or Group II Mortgage Loan in the Mortgage Pool had a Loan-to-Value Ratio or combined Loan-to-Value Ratio at origination in excess of 100%; and the weighted average Loan-to-Value Ratio (by Cut-off Date Principal Balance) of the Initial Mortgage Loans in Group I and the Initial Mortgage Loans in Group II was equal to or less than 80.21% and 85.68%, respectively (by Cut-off Date Principal Balance);

(xiv) Approximately 98.28% and 90.17% of the Initial Mortgage Loans in Group I and the Initial Mortgage Loans in Group II, respectively (by

Cut-off Date Principal Balance), are secured by first liens on the related Mortgaged Property; and approximately 1.72% and 9.83% (by Cut-off Date Principal Balance) of the Initial Mortgage Loans in Group I and the Initial Mortgage Loans in Group II are secured by second liens on the related Mortgaged Property;

(xv) As of the Cut-off Date, the weighted average Loan-to-Value Ratio of the Initial Mortgage Loans secured by first liens in Group I is approximately 79.88%; the weighted average combined Loan-to-Value Ratio of the Initial Mortgage Loans secured by first and second liens in Group I is approximately 80.21%; the weighted average Loan-to-Value Ratio of the Initial Mortgage Loans secured by first liens in Group II is approximately 84.17%; the weighted average combined Loan-to-Value Ratio of the Initial Mortgage Loans secured by first and second liens in Group II is approximately 85.68%; the weighted average combined Loan-to-Value Ratio of all of the Initial Mortgage Loans in Group I and Group II is approximately 81.11%; and the gross weighted average coupon of the Initial Mortgage Loans is approximately 8.989%. . .

(xix) Each Mortgage is a valid and enforceable first or second lien on the Mortgaged Property including all improvements on the Mortgaged Property securing the related Mortgage Note and each Mortgaged Property is owned by the Mortgagor in fee simple (except with respect to common areas in the case of condominiums, PUDs and de minimis PUTDs) subject only to (1) the lien of nondelinquent current real property taxes and assessments, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected in the appraisal made in connection with the origination of the related Mortgage Loan or referred to in the lender's title insurance policy delivered to the originator of the related Mortgage Loan and (3) other matters to which like properties are commonly subject that do not materially interfere with the benefits of the security intended to be provided by such Mortgage. Immediately prior to the sale of such Mortgage Loan to the Depositor pursuant to this Purchase Agreement, the Sponsor had full right to sell and assign the same to the Depositor or the Trustee, as the case may be. Immediately following the sale of such Mortgage Loan to the Depositor and the Depositor's assignment and sale thereof of such Mortgage Loan to the Trustee in the case of an Initial Mortgage Loan, the Trustee will have good title thereto subject to no claims or liens, including delinquent tax or assessment liens. Immediately following the sale of such Mortgage Loan to the Depositor and the Depositor's assignment and sale thereof to the Trustee in the case of a Subsequent Mortgage Loan, the Trustee will have good title thereto subject to no claims or liens;

110

(xx) Each Mortgage Loan at origination complied with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, real estate settlement procedures, the Truth In Lending Act of 1968, as amended, all applicable predatory and abusive lending laws and disclosure laws and consummation of the transactions contemplated hereby, including without limitation, the receipt of interest by the owner of such Mortgage Loan or the Holders of Certificates secured thereby, will not violate any such laws. Any and all statements or acknowledgments required to be made by the Mortgagor relating to such requirements are and will remain in the Mortgage File. Each Mortgage Loan is being serviced in accordance with applicable state and federal laws, including, without limitation, the Truth In Lending Act of 1968, as amended, and other consumer protection laws, real estate settlement procedures, usury, equal credit opportunity and disclosure laws and in a prudent and customary manner;

(xxi) Neither the Sponsor nor any prior holder of any Mortgage has impaired, waived, altered or modified the Mortgage or Mortgage Notes in any material respect (except that a Mortgage Loan may have been modified by a written instrument which has been recorded, if necessary to protect the interests of the owner of such Mortgage Loan or the Certificates, and which has been delivered to the Trustee); satisfied, canceled or subordinated such Mortgage in whole or in part; released the applicable Mortgaged Property in whole or in part from the lien of such Mortgage; or executed any instrument of release, cancellation or satisfaction with respect thereto. . .

(xxv) Each Mortgage Note and the applicable Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium, receivership and other similar laws relating to creditors' rights generally or by equitable principles (regardless of whether such enforcement is considered in a proceeding in equity or at law). All parties to the Mortgage Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and each Mortgage Note and Mortgage has been duly and properly executed by such parties. . .

(xxx) The Mortgage Note is not and has not been secured by any collateral, pledged account or other security other than real estate securing the Mortgagor's obligations and no Mortgage Loan is secured by more than one Mortgaged Property;

(xxxi) As of the Closing Date in the case of an Initial Mortgage Loan and as of the related Subsequent Transfer Date in the case of a Subsequent Mortgage Loan, the improvements upon each Mortgaged Property are covered by a valid and existing hazard insurance policy

111

|  | substantially acceptable to FNMA and acceptable to the Sponsor which policy provides for fire extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located representing coverage in an amount not less than the lesser of (A) the maximum insurable value of the improvements securing such Mortgage Loan and (B) the outstanding Principal Balance of the related Mortgage Loan; if the improvement on the Mortgaged Property is a condominium unit, it is included under the coverage afforded by a blanket policy for the condominium project. All individual insurance policies contain a standard mortgagee clause naming the Sponsor or the original holder of the Mortgage, and its successors in interest, as mortgagee, and the Sponsor has received no notice that any premiums due and payable thereon have not been paid; the Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor. There has been no act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either. . . |
|---|---|

(xxxiii) Except for the Mortgage Loans referred to in clause (xlii) as being delinquent, if any, there is no default, breach, violation or event of acceleration existing under the Mortgage or the applicable Mortgage Note; and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a material default, breach, violation or event of acceleration, and neither the Sponsor, any of its affiliates nor any servicer or subservicer of any related Mortgage Loan has waived any default, breach, violation or event of acceleration; no foreclosure action is threatened or has been commenced with respect to the Mortgage Loan;

(xxxiv) Each Mortgage Loan is being serviced by the Servicer in accordance with the terms of the Mortgage Note. . .

(xxxix) At the time of origination, each Mortgaged Property was the subject of an appraisal which conforms to the underwriting requirements of the related originator; and the Mortgage File contains an appraisal of the applicable Mortgaged Property. . .

(xlii) (a) Except with respect to no more than 0.03% of the Initial Mortgage Loans in Group II, none of the payments of principal of or interest on or in respect of any Initial Mortgage Loans (by Cut-off Date Principal Balance) shall be 30 days or more but less than 60 days past due as of the Cut-off Date; and 0.02% of the Initial Mortgage Loans in Group I was 60 days or more past due as of the Cutoff Date; (b) except as set forth in clause (a) above, all payments required to be made by the

|  | Mortgagor under the terms of the Mortgage Note have been made and credited; and (c) to the Sponsor's knowledge, there was no delinquent recording, tax or assessment lien against the property subject to any Mortgage, except where such lien was being contested in good faith and a stay had been granted against levying on the property;<br><br>(xliii) Upon payment of the Purchase Price for the Mortgage Loans by the Depositor pursuant to this Purchase Agreement, the Sponsor has transferred to the Depositor good and marketable title to each Mortgage Note and Mortgage free and clear of any and all liens, claims, encumbrances, participation interests, equities, pledges, charges or security interests of any nature and has or had full right and authority, subject to no participation of or agreement with any other person, to sell and assign the same, and following the sale of each Mortgage Loan, the Depositor will own such Mortgage Loan free and clear of any encumbrance, equity interest, participation interest, lien, pledge, charge, claim or security interest. . .<br><br>(xlv) The Mortgage Note, the Mortgage, the related Assignment of Mortgage and any other documents required to be delivered by the Sponsor have been delivered to the Custodian. The Custodian is in possession of a complete, true and accurate Mortgage File in accordance with Section 2.01 hereof. Substantially all the Mortgage Loans have monthly payments due on the first day of each month and each Mortgage Loan had an original term to maturity of no greater than 30 years. . .<br><br>(l) Each Mortgage Loan conforms, and all such Mortgage Loans in the aggregate conform, to the description thereof set forth in the Prospectus and Prospectus Supplement in all material respects. . .<br><br>(liv) For each Mortgage Loan, the related Mortgage File contains a true, accurate and correct copy of each of the documents and instruments required to be included therein;<br><br>(lv) The Servicer meets all applicable requirements under the Pooling and Servicing Agreement, is properly qualified to service each Mortgage Loan and has been servicing each Mortgage Loan prior to the Cut-off Date or the related Subsequent Cut-off Date, as the case may be . . .<br><br>(lvii) On the basis of a representation by the Mortgagor at the time of origination of the Mortgage Loans, at least 91.35% and 98.37% of the Initial Mortgage Loans in Group I and Initial Mortgage Loans in Group II, respectively, (by Cut-off Date Principal Balance) will be secured by Mortgages on owner-occupied primary residence properties; |
|---|---|

113

| | (lix) No Mortgage Loan was originated based on an appraisal of the related Mortgaged Property made prior to completion of construction of the improvements thereon. . . |
|---|---|
| | (lxii) No Mortgage Loan is a "High Cost Home Loan" or "Covered Loan," as applicable, (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary which is now Version 5.6(d) Revised, Appendix E) and no Mortgage Loan is a "High Cost Home Loan" as defined in the Georgia Fair Lending Act, as amended (the "Georgia Act"). No Mortgage Loan that was originated (or modified) on or after October 1, 2002 and before March 7, 2003, is secured by property located in the State of Georgia. There is no Mortgage Loan that was originated on or after March 7, 2003 which is a "high cost home loan" as defined under the Georgia Fair Lending Act. . . |
| | (lxxxiii) No error, omission, negligence, misrepresentation, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Sponsor, its affiliates or employees or any other person involved in the origination of the Mortgage Loan or in the application for any insurance, including, but not limited to the MI Policy, in relation to such Mortgage Loan. . . |
| | (xci) All requirements for the valid transfer of each MI Policy, including any assignments or notices required in each MI Policy, have been satisfied. . . |
| | (xciii) All appraisals of the Mortgage Loans by the Sponsor are full URAR/1004 appraisals. . . |
| | (xcvi) With respect to mortgage loans that are more than 59 days delinquent as of the Cut-off Date, the Sponsor has made a specific review of the Servicer's data and records that reflect mortgagor communications and payment history, and has no actual knowledge of an event, condition or mortgagor communication which would cause the Sponsor to institute foreclosure proceedings." |

114

**Section XII**

| | |
|---|---|
| Centex PSA § 8.16 | "The Servicer, at its own expense, will deliver to the Trustee, the Depositor, and the Rating Agencies, on or before July 31 of each year, commencing in 2006, an Officer's Certificate stating, as to each signer thereof, that (i) a review of the activities of the Servicer during such preceding calendar year and of performance under this Agreement has been made under such officers' supervision, and (ii) to the best of such officers' knowledge, based on such review, the Servicer has fulfilled all its obligations under this Agreement for such year, or, if there has been a default in the fulfillment of any such obligations, specifying each such default known to such officers and the nature and status thereof including the steps being taken by the Servicer to remedy such default. <br><br> The Servicer shall deliver to the Trustee, the Depositor and the Rating Agencies, promptly after having obtained knowledge thereof but in no event later than five Business Days thereafter, written notice by means of an Officer's Certificate of any event which with the giving of notice or the lapse of time would become a Servicer Termination Event." |
| Chase PSA § 5.25 | "Not later than (a) March 15 of each calendar year (other than the calendar year during which the Closing Date occurs) or (b) with respect to any calendar year during which an annual report on Form 10K is not required to be filed pursuant to Section 5.24 on behalf of the Trust, by April 15 of each calendar year (or if such day is not a Business Day, the immediately succeeding Business Day), the Servicer shall deliver to the Depositor, an Officers' Certificate in the form attached hereto as Exhibit T stating, as to each signatory thereof, that (i) a review of the activities of the Servicer during the preceding calendar year and of the performance of the Servicer under this Agreement has been made under such officer's supervision, and (ii) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled all its obligations under this Agreement in all material respects throughout such year or a portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. With respect to any Subservicer that meets the criteria of Item 1108(a)(2)(i) through (iii) of Regulation AB in the sole determination of the Servicer, the Servicer shall request from such Subservicer, the Officer's Certificate set forth in this Section 5.25 as and when required with respect to such Subservicer." |
| CWHEL Servicing Agreement § 3.09 | "The Master Servicer will deliver to the Indenture Trustee, the Credit Enhancer, and the Rating Agencies, by the date in each year specified in the Adoption Annex, beginning on the date specified in the Adoption Annex, an Officer's Certificate stating that (i) a review of the activities of the Master Servicer during the preceding fiscal year (or the applicable shorter period for the first report) and of its performance under this Agreement has been made under the officer's supervision and |

115

|  | (ii) to the best of the officer's knowledge, based on the review, the Master Servicer has fulfilled all of its obligations under this Agreement in all material respects throughout the fiscal year, or, if there has been a default in the fulfillment of those obligations in any material respect, specifying each default known to the officer and its nature and status." |
|---|---|
| EMC PSA § 3.16 | "The Master Servicer shall deliver to the Trustee and the Rating Agencies on or before March 1 of each year, commencing on March 1, 2006, an Officer's Certificate, certifying that with respect to the year ending December 31 of the prior year: (i) such Servicing Officer has reviewed the activities of such Master Servicer during the preceding calendar year or portion thereof and its performance under this Agreement, (ii) to the best of such Servicing Officer's knowledge, based on such review, such Master Servicer has performed and fulfilled its duties, responsibilities and obligations under this Agreement in all material respects throughout such year, or, if there has been a default in the fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof, and (iii) nothing has come to the attention of such Servicing Officer to lead such Servicing Officer to believe that the Servicer has failed to perform any of its duties, responsibilities and obligations under the Countrywide Servicing Agreement in all material respects throughout such year, or, if there has been a material default in the performance or fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof." |
| Equity One PSA § 3.15 | "The Servicer shall deliver to the Depositor and the Trustee not later than March 15 of each calendar year commencing with the calendar year following the calendar year in which the Closing Date occurs, an annual compliance certificate pursuant to Item 1123 of Regulation AB, signed by an officer of the Servicer, stating that (i) a review of the activities of the Servicer during the preceding calendar year and of the performance of the Servicer under this Agreement has been made under such officer's supervision and (ii) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled all its obligations under this Agreement in all material respects throughout such calendar year, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. The Trustee shall forward a copy of each such statement to each Rating Agency. Copies of such compliance certificates shall be provided by the Servicer to any Certificateholder, without charge, upon the written request of such Certificateholder." |
| First Horizon PSA § 3.16 | "The Master Servicer shall deliver to the Depositor and the Trustee on or before March 15 of each year, commencing in 2007 , an Officer's Certificate stating, as to the signer thereof, that (i) a review of the activities of the Master Servicer during the preceding calendar year (or |

116

| | |
|---|---|
| | applicable portion thereof) and of the performance of the Master Servicer under this Agreement has been made under such officer's supervision and (ii) to the best of such officer's knowledge, based on such review, the Master Servicer has fulfilled all its obligations under this Agreement in all material respects throughout such year (or applicable portion thereof), or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof." |
| Nationstar PSA §§ 12.05; 12.06 | "(a) The Master Servicer, the Servicer and the Securities Administrator shall deliver or otherwise make available (and the Master Servicer, the Servicer and the Securities Administrator shall cause any Servicing Function Participant engaged by it to deliver or otherwise make available) to the Depositor and the Securities Administrator on or before March 15 of each year, commencing in March 2008, an Officer's Certificate (an "Item 1123 Certification") stating, as to the signer thereof, that (A) a review of such party's activities during the preceding calendar year or portion thereof and of such party's performance under this Agreement, or such other applicable agreement in the case of a Servicing Function Participant, has been made under such officer's supervision and (B) to the best of such officer 6;s knowledge, based on such review, such party has fulfilled all its obligations under this Agreement, or such other applicable agreement in the case of a Servicing Function Participant, in all material respects throughout such year or portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof. Promptly after receipt of each such Item 1123 Certification, the Depositor shall review such Item 1123 Certification and, if applicable, consult with each such party, as applicable, as to the nature of any failures by such party, in the fulfillment of any of such party's obligations hereunder or, in the case of a Servicing Function Participant, under such other applicable agreement. The Master Servicer and the Servicer shall include all Item 1123 Certifications received by them from each Servicing Function Participant with their own Item 1123 Certification to be submitted to the Securities Administrator pursuant to this section. |
| | (b) In the event the Master Servicer, the Servicer, the Securities Administrator or any Servicing Function Participant engaged by such parties is terminated or resigns pursuant to the terms of this Agreement, or any applicable sub-servicing agreement, as the case may be, such party shall provide an Item 1123 Certification pursuant to this Section 12.05 with respect to the period of time it was subject to this Agreement or any applicable sub-servicing agreement, as the case may be." Nationstar PSA § 12.05 |
| | "(a) By March 15 of each year, commencing in March 2008, the Master Servicer, the Servicer, the Securities Administrator and each Custodian, |

117

each at its own expense, shall furnish or otherwise make available, and each such party shall cause any Servicing Function Participant engaged by it to furnish or otherwise make available, each at its own expense, to the Securities Administrator and the Depositor, a report on an assessment of compliance with the Relevant Servicing Criteria (an "Assessment of Compliance") that contains (A) a statement by such party of its responsibility for assessing compliance with the applicable Relevant Servicing Criteria, (B) a statement that such party used the applicable Relevant Servicing Criteria to assess compliance with the applicable Relevant Servicing Criteria, (C) such party's assessment of compliance with the applicable Relevant Servicing Criteria as of and for the fiscal year covered by the Form 10-K required to be filed pursuant to Section 12.02, including, if there has been any material instance of noncompliance with the applicable Relevant Servicing Criteria, a discussion of each such failure and the nature and status thereof, and (D) a statement that a registered public accounting firm has issued an Accountant's Attestation on such party's Assessment of Compliance with the applicable Relevant Servicing Criteria as of and for such period; provided, however, the Custodian and any Servicing Function Participant engaged by it shall only be required to provide an Assessment of Compliance for each calendar year for which a Form 10-K is required to be filed with respect to the Trust.

(b) No later than the end of each fiscal year for the Trust for which a Form 10-K is required to be filed, the Master Servicer, the Servicer and the Custodian shall each forward to the Securities Administrator and the Depositor the name of each Servicing Function Participant engaged by it and what Relevant Servicing Criteria will be addressed in the Assessment of Compliance prepared by such Servicing Function Participant (provided, however, that the Master Servicer need not provide such information to the Securities Administrator so long as the Master Servicer and the Securities Administrator are the same Person). When the Master Servicer, the Servicer and the Custodian (or any Servicing Function Participant engaged by them) submit their respective Assessments of Compliance to the Securities Administrator, such parties will also at such time inc lude the Assessments of Compliance (and Accountant's Attestation) of each Servicing Function Participant engaged by it.

(c) Promptly after receipt of each Assessment of Compliance, (i) the Depositor shall review each such report and, if applicable, consult with the Master Servicer, the Servicer, the Securities Administrator, the Custodian and any Servicing Function Participant engaged by such parties as to the nature of any material instance of noncompliance with the Relevant Servicing Criteria by each such party, and (ii) the Securities Administrator shall confirm that the Assessments of Compliance, taken as a whole, address all of the Servicing Criteria and

| | |
|---|---|
| | taken individually address the Relevant Servicing Criteria for each party as set forth on Exhibit U and notify the Depositor of any exceptions. The Master Servicer shall include each such Assessment of Compliance with its own Assessment of Compliance to be submitted to the Securities Administrator pursu ant to this section.<br><br>(d) In the event the Master Servicer, the Servicer, the Securities Administrator, the Trustee (to the extent the Trustee has become the "Master Servicer" pursuant to the terms of this Agreement) or any Servicing Function Participant engaged by such parties is terminated or resigns pursuant to the terms of this Agreement, or any applicable sub-servicing agreement, as the case may be, such party shall provide an Assessment of Compliance pursuant to this Section 12.06 with respect to the period of time it was subject to this Agreement or any applicable sub-servicing agreement, as the case may be.<br><br>(e) In the event the Custodian or any Servicing Function Participant engaged by the Custodian is terminated, assigns its rights and obligations under or resigns pursuant to the terms of this Agreement, or any applicable sub-servicing agreement, as the case may be, such party shall provide an Assessment of Compliance pursuant to this Section 12.06 with respect to the period of time it was subject to this Agreement or any applicable sub-servicing agreement, as the case may be, to the extent required by Regulation AB." Nationstar PSA § 12.06 |
| NovaStar PSA § 3.16 | "Within 75 days after December 31 of each year, beginning in 2007, the Servicer at its own expense shall deliver to the Trustee and the Rating Agencies, an Officer's Certificate of the Servicer (an "Annual Statement of Compliance") stating, as to the signer thereof, that (i) a review of the activities of the Servicer during the preceding calendar year and of performance under this Agreement has been made under such officer's supervision, (ii) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled its obligations under this Agreement in all material respects for such year, or, if there has been a default in the fulfillment of any such obligation, specifying each such default known to such officer and the nature and status thereof including the steps being taken by the Servicer to remedy such default; (iii) a review of the activities of each Subservicer during the Subservicer's most recently ended calendar year and its performance under its Subservicing Agreement has been made under such officer's supervision; and (iv) to the best of the Servicing Officer's knowledge, based on his review and the certification of an officer of the Subservicer (unless the Servicing Officer has reason to believe that reliance on such certification is not justified), either each Subservicer has performed and fulfilled its duties, responsibilities and obligations under this Agreement and its Subservicing Agreement in all material respects throughout the year, or, if there has been a default in performance or fulfillment of any such duties, responsibilities or obligations, specifying the nature and status of |

119

| | each such default known to the Servicing Officer. Copies of such statements shall be provided by the Servicer to the Certificateholders upon request or by the Trustee at the expense of the Servicer should the Servicer fail to provide such copies. Such Annual Statement of Compliance shall contain no restrictions or limitations on its use. In the event that the Servicer has delegated any servicing responsibilities with respect to the Mortgage Loans to a Subservicer or subcontractor that meets the criteria in Item 1108(a)(2) (i) through (iii) of Regulation AB, the Servicer shall cause the related Subservicer or subcontractor (as the case may be) to deliver a similar Annual Statement of Compliance by that Subservicer or subcontractor to the Trustee and the Rating Agencies as described above as and when required with respect to such servicer. To the extent that the Trustee does not receive any such similar Annual Statement of Compliance from a Subservicer or subcontractor (as the case may be) it shall be entitled to assume no such Subservicer or subcontractor has been used by the Servicer." |
|---|---|

120

## Section XIII

| | |
|---|---|
| Centex PSA §§ 3.08; 10.03(g) | "Notwithstanding anything to the contrary in this Agreement, the parties hereto acknowledge that the functions of the Trustee with respect to the custody, acceptance, inspection and release of the Files pursuant to Sections 3.05, 3.06, and 8.14 and the related Pool Certification and Final Certification shall be performed by the Custodian on the Trustee's behalf pursuant to the Custodial Agreement; provided, however, the Trustee shall remain primarily liable for such obligations. The fees and expenses of the Custodian will be paid by the Servicer" Centex PSA § 3.08 <br><br> "[T]he Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, nominees or custodians and shall not be responsible for any willful misconduct or gross negligence on the part of any agent, attorney, custodian or nominee appointed with due care. . ." Centex PSA § 10.03(g) |
| Chase PSA §§ 2.01; 10.02(f) | "In connection with such assignment, the Depositor does hereby deliver to, and deposit with, the Custodian on behalf of the Trustee the following documents or instruments with respect to each Mortgage Loan so assigned. . ." Chase PSA § 2.01 <br><br> "The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, subcontractors or attorneys. . ." Chase PSA § 10.02(f) |
| EMC PSA §§ 2.01(b); 9.02(vi) | "In connection with the above sale, transfer and assignment, the Depositor hereby deposits with the Trustee, or the Custodian, as its agent, as described in the Mortgage Loan Purchase Agreement, with respect to each Mortgage Loan. . ." EMC PSA § 2.01(b) <br><br> "The Trustee and the Securities Administrator may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or through Affiliates, agents or attorneys; provided, however, that the Trustee may not appoint any agent to perform its custodial functions with respect to the Mortgage Files or paying agent functions under this Agreement without the express written consent of the Master Servicer, which consent will not be unreasonably withheld or delayed. Neither the Trustee nor the Securities Administrator shall be liable or responsible for the misconduct or negligence of any of the Trustee's or the Securities Administrator's agents or attorneys or a custodian or paying agent appointed hereunder by the Trustee or the Securities Administrator with due care and, when required, with the consent of the |

121

| | |
|---|---|
| | Master Servicer. . .”<br>EMC PSA § 9.02 |
| CWHEL Custodial Agreement | This CUSTODIAL AGREEMENT, dated as of December 29, 2006 (this "Agreement"), among CWHEQ, Inc. (the "Depositor"), COUNTRYWIDE HOME LOANS, INC., as master servicer (the "Master Servicer"), CWHEQ REVOLVING HOME EQUITY LOAN TRUST, Series 2006-I (the "Issuer"), and TREASURY BANK, A DIVISION OF COUNTRYWIDE BANK, N.A., as agent, custodian, and bailee for the Owner Trustee as owner and the Indenture Trustee as secured party (when acting for the Issuer, the "Trust Custodian," and when acting for the Indenture Trustee, the "Indenture Custodian," and when referring to both capacities, the "Custodian"), and THE BANK OF NEW YORK, as indenture trustee (in that capacity the "Indenture Trustee"), |
| Equity One PSA § 8.13; 8.02 | "The Trustee may, with the consent of the Servicer, appoint one or more custodians (each, a "Custodian") to hold all or a portion of the Trustee's Mortgage Files as agent for the Trustee, by entering into a custodial agreement ("Custodial Agreement"). The Trustee agrees to comply with the terms of each Custodial Agreement and to enforce the terms and provisions thereof against the Custodian for the benefit of the Certificateholders."<br>Equity One PSA § 8.13<br><br>"[T]he Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, accountants, custodians or attorneys, and the Trustee shall not be responsible for any misconduct or negligence on the part of any such agent, accountant, custodian or attorney appointed by the Trustee with due care. . ."<br>Equity One PSA § 8.02 |
| First Horizon PSA §§ 2.1(b); 8.2 | "In connection with the transfer and assignment set forth in clause (a) above, the Depositor has delivered or caused to be delivered to the Trustee or the Custodian on its behalf (or, in the case of the Delay Delivery Mortgage Loans, will deliver or cause to be delivered to the Trustee or the Custodian on its behalf within thirty (30) days following the Closing Date) for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned. . ."<br>First Horizon PSA § 2.1(b)<br><br>"[T]he Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, accountants or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of such agent, accountant or attorney appointed by the Trustee with due care. . ." |

122

| | First Horizon PSA § 8.2 |
|---|---|
| Nationstar PSA §§ 3.08; 10.03(g) | "Notwithstanding anything to the contrary in this Agreement, the parties hereto acknowledge that the functions of the Trustee with respect to the custody, acceptance, inspection and release of the Files pursuant to Sections 3.05, 3.06, and 8.14 and the related Pool Certification and Final Certification shall be performed by the Custodian on the Trustee's behalf pursuant to the Custodial Agreement; provided, however, the Trustee shall remain primarily liable for such obligations." Nationstar PSA § 3.08<br><br>"[T]he Trustee and Securities Administrator may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, nominees or custodians and shall not be responsible for any willful misconduct or gross negligence on the part of any agent, attorney, custodian or nominee appointed with due care. . ." Nationstar PSA § 10.03(g) |
| NovaStar PSA §§ 2.01; 8.02 | "In connection with such transfer and assignment, the Sponsor, on behalf of the Depositor, does hereby deliver to, and deposit with the Custodian, as the Trustee's designated agent, the following documents or instruments with respect to each Initial Mortgage Loan so transferred and assigned and the Sponsor, on behalf of the Depositor, shall, in accordance with Section 2.08, deliver or cause to be delivered to the Custodian, as the Trustee's designated agent, with respect to each Subsequent Mortgage Loan, the following documents or instruments (with respect to each Mortgage Loan, a 'Mortgage File'). . ." NovaStar PSA § 2.01<br><br>"The Trustee may execute any of its trusts or powers hereunder and the Trustee may perform any of its respective duties hereunder either directly or by or through agents or attorneys or a custodian or nominee and the Trustee shall have no liability for any misconduct or negligence on the part of such agent, attorney or custodian appointed by the Trustee with due care." NovaStar PSA § 8.02 |

123