**MAYER•BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

**James Ancone**
Direct Tel +1 212 506 2353
Direct Fax +1 212 849 5953
jancone@mayerbrown.com

November 26, 2018

BY ECF

The Honorable Barbara Moses
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 740
New York, NY 10007

Re:   *Commerzbank AG v. The Bank of New York Mellon*, Case No. 15-cv-10029-GBD-BCM (S.D.N.Y.)

Dear Judge Moses:

    On behalf of Defendants The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A. (collectively, "BNYM"), we hereby respectfully request that the Court deny plaintiff's November 16 letter-motion to compel BNYM to supplement certain interrogatory responses. The motion largely summarizes the interrogatories and ignores BNYM's responses and the reasons that it has given for not responding further to certain questions. It is also unclear why plaintiff waited over a month since our last correspondence on this topic to suddenly move to compel. The motion should be denied.

    ***Interrogatory No. 1.*** Interrogatory No. 1 requests that BNYM identify any document exceptions that it contends were cured, and the date and manner of each cure. As we have explained to plaintiff on numerous occasions, going back years, BNYM's document custody system can generate a list of the exceptions that are currently outstanding. During discovery, we provided such reports to plaintiff for all but one of the trusts on which BNYM is the custodian as of dates earlier this year. We have also produced all earlier reports that we have been able to locate, including those that were required by the PSAs and one-off reports that were generated and saved on other dates. BNYM's system cannot, however, generate reports indicating how and when exceptions were cured in the past: it is an inventory system and was not designed for use in forensically reconstructing the history of each trust. A comparison of earlier and later reports can indicate which exceptions were cured, though it would not show how or when.

    Plaintiff's request for BNYM to further supplement this answer should be denied as irrelevant and disproportionate. Plaintiff seeks information for each of the exceptions on thousands of loans. Aside from the thousands of subparts that this interrogatory has, such information cannot be retrieved from BNYM's database without manually looking up the history of every document on every loan. Plaintiff claims that it needs this information to argue that uncured exceptions triggered implied extra-contractual duties on the part of the trustee. Setting aside that there are no such duties (and that, if there were, they would have accrued about 7-11

The Honorable Barbara Moses
November 26, 2018
Page 2

years before this case was filed), plaintiff will be free to take that position based on the information that actually exists.

Plaintiff also makes the outrageous suggestion "[u]pon information and belief" (as if this were a pre-discovery pleading) that BNYM or its counsel tampered with reports and "simply deleted exceptions even though the exceptions had not actually been cured." We respectfully request that the Court require Mr. Kane to disclose the basis, if any, for this accusation.

**_Interrogatory No. 2_.** This interrogatory seeks information about the fees and income earned by BNYM each month. Again using the most inflammatory possible rhetoric, plaintiff accuses BNYM of "conceal[ing] the full extent of its compensation." It omits to mention that BNYM answered this interrogatory. For 68 RMBS trusts and the Millstone CDO, BNYM receives only a monthly fee, which is defined in the contracts and the amount of which is reported to investors each month. If that were not correct, plaintiff would have pointed the Court to a provision in the contract that allows BNYM to earn float income; in fact, those PSAs expressly state that any investment earnings will be retained by, or transferred back to, the servicer. *See, e.g.*, CWALT 2007-OA6 § 3.05(e) ("All income and gain net of any losses realized from any such investment of funds on deposit in the Certificate Account, or the Distribution Account shall be for the benefit of the Master Servicer as servicing compensation and shall be remitted to it monthly as provided in this Agreement.").

Four of the RMBS trusts at issue permit BNYM to hold cash receipts for a set number of days per month. As BNYM disclosed, those funds were held on the bank's balance sheet, but their "earnings" were not tracked on a per account basis—that would require determining not only the amount of the trust funds that the bank held for those particular days each month, but the *daily* bank-wide return on assets for every day over the last 14 years on which such funds were held. This is not a feasible exercise, and there is no reason to think that it would show that BNYM earned vastly more on those four trusts than the few thousand dollars per year that it earned on the others.

**_Interrogatory No. 5_.** Interrogatory No. 5 asks BNYM to describe all "steps" that it took when it received the dozens of letters that it identified in response to Interrogatory No. 4. Not only does this vague interrogatory contain dozens of subparts, it seeks information that either already has been disclosed or that could more easily be disclosed through other means. The trustee's only contractual duty upon receiving an allegation of breach (assuming for the time being that such allegations do cause it to "discover" the breach) is to notify the other parties to the contract. *See, e.g.*, POPLR 2006-C § 2.03(c) ("Upon discovery by any of the parties hereto of a breach of a representation or warranty made pursuant to Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Loan, the party discovering such breach shall give prompt notice thereof to the other parties."). Plaintiff says that "[i]f it sent the notices it says it should have sent, then BNYM should identify them," failing to mention that BNYM did not merely identify but actually produced them. BNYM also produced or logged all emails, likely in the thousands, discussing those letters and notices.

To respond to the interrogatory, BNYM also described its standard internal procedures in response to such letters. Plaintiff has had the opportunity to depose virtually every employee

who worked on these issues, and it is a topic in the upcoming 30(b)(6) deposition. If the percipient witnesses cannot remember, in deposition, every "step" that BNYM took, then BNYM has no better way of compiling that information in response to an interrogatory. *See* Local Civil Rule 33.3(b); *see also Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 376-377 (S.D.N.Y. 2015) (denying motion to compel further answers to interrogatories where interrogatories required party to provide narrative explanations).

***Interrogatory No. 11***. Interrogatory No. 11 requests that BNYM identify any "steps" it took with respect to each of the 72 trusts to: (i) "ensure" that a loan that appeared on a final exception report was cured, repurchased, or substituted; or (ii) to "enforce" the obligation of any party to repurchase or substitute a loan identified on such reports. These requests are irrelevant, as (a) the trustee has no duty to do either of those things, and (b) if it did, the *results* of those efforts—the number of loans actually repurchased and the proceeds thereby recovered—have already been disclosed. Although a full response to this vague and wide-ranging interrogatory is impossible, BNYM provided a detailed response. *See* Local Civil Rule 33.3(b); *see also Mitre Sports*, 304 F.R.D. at 376-377. It described a project that it undertook to cure document exceptions on Countrywide trusts. In addition, BNYM noted that it entered into court-approved settlements with Countrywide and JPMorgan Chase that together recovered over $12 billion in cash, along with valuable improvements in loan servicing, in exchange for the resolution of, among others, claims related to document delivery. Plaintiff acts as if BNYM did not respond at all, suggesting that it is using "suppositions and equivocations" to "hide" the fact that it "did nothing." Commerzbank obviously wishes that BNYM would say that, but that would not be true.

***Interrogatory No. 12***.  Interrogatory No. 12 requests that, for a 14-year period, BNYM identify each instance on which it requested or obtained any indemnification. On its face, that request is overbroad. Plaintiff claims that requests for indemnity would somehow disclose BNYM's knowledge of breaches by other deal parties, BNYM's diligence in protecting trust assets, and (in a circular argument) BNYM's entitlement to direction and indemnity. None of that makes any sense—BNYM is entitled to indemnity for any extraordinary expense that it incurs. Moreover, because BNYM does not systematically store indemnity requests, it would be virtually impossible to compile this information.

***Interrogatory No. 14***.  Interrogatory No. 14 asks BNYM to state the "steps" that BNYM took to satisfy its prudent person duty with respect to unidentified Events of Default ("EOD") in the 72 trusts and the Millstone II CDO. As to 71 of the RMBS trusts, plaintiff has not identified any EOD that it contends occurred; BNYM does not believe that there were any. Plaintiff has also extensively questioned BNYM witnesses about the declared EOD on the Millstone II CDO and on a Novastar trust, and this is also a topic for the 30(b)(6) deposition. With respect to the Millstone II CDO, BNYM has provided details of what it did, including issuing notices to investors (including plaintiff) and ultimately liquidating the CDO.

Plaintiff does not explain what is wrong with that response. Instead, it again pretends that BNYM has not responded at all, and it says nothing about any shortcoming in BNYM's actual response or the objections that the parties have discussed over the last several months. Presumably, it is saving that for reply, but in any event, BNYM has already responded to the

The Honorable Barbara Moses
November 26, 2018
Page 4

extent possible and appropriate. *See* Local Civil Rule 33.3(b); *see also Mitre Sports*, 304 F.R.D. at 376-377.

Respectfully submitted,

*/s/ James Ancone*

James Ancone

cc:     All counsel of record (by ECF)