**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COMMERZBANK AG,

                    Plaintiff,

    -against-

THE BANK OF NEW YORK MELLON, *et al.*,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

15 Civ. 10029 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Commerzbank AG brings this action against Defendants Bank of New York Mellon and Bank of New York Mellon Trust Company, N.A. (collectively "BNYM") for violations of the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa, *et seq*.; breach of contract; and negligence. Plaintiff asserts claims against Defendants in connection with 100 certificates or notes (the "Certificates") issued from 72 residential mortgage-backed securities trusts (the "RMBS trusts") and the Millstone II Collateralized Debt Obligation ("CDO"), for which BNYM served as the Trustee. (*See* Defs.' Reply to Pl.'s Counter-Statement, ECF No. 298, Part II ¶ 31.)[1] Plaintiff alleges that BNYM breached several obligations that it undertook on behalf of Plaintiff as certificateholder in the covered trusts and noteholder in the Millstone II CDO. Plaintiff also alleges that Defendants' negligence impaired certificateholders' and noteholders' abilities to collect the full principal and interest due on their certificates and notes.

---

[1] Parties filed voluminous redacted or sealed documents pursuant to a protective order. (*See* ECF Nos. 65, 264.) Because a "presumption of public access" exists as to judicial documents in federal courts, *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006), this Court publishes its decision on the parties' dispositive motions in full. *See, e.g., Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("[A] court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing.").

Before this Court are Plaintiff's motion for partial summary judgment, (ECF No. 268), and Defendants' cross-motion for summary judgment, (ECF No. 272), pursuant to Federal Rule 56 of Civil Procedure. Plaintiff's motion for partial summary judgment is DENIED. Defendants' cross-motion for summary judgment is GRANTED as to the TIA violation claims, negligence claims, and breach of contract claims related to pre-Event of Default ("EOD") duties to notify or repurchase. Defendants' cross-motion for summary judgment on breach of contract claims stemming from pre-EOD duties to investigate, the alleged occurrence of EODs, and post-EOD prudent person duties is DENIED.

## I.   BACKGROUND

### A. Facts

This case stems from the sale and transfer of residential mortgage-backed securities and the resulting 2008 financial crisis. Investment banks acting as "Sponsors" and "Depositors" (collectively referred to as "Sellers") first acquired loans generated by mortgage-loan originators. (*See* Am. Compl., ECF No. 25, ¶¶ 6, 36.) These Sellers then pooled the loans and conveyed them to Trustees via trusts. (*Id.* ¶ 37.) The Sellers next selected "Servicers," who collected payments on the loans from the underlying borrowers and sent the funds to the Trustees. (*Id.* ¶¶ 37, 38.)

The Sellers provided contractual representations and warranties ("R&Ws") to the trusts attesting to the completeness of the mortgage loan files and credit quality of the underlying loans. (*See id.* ¶ 74.) The Sellers also contracted to cure, substitute, or repurchase mortgages that materially breached these R&Ws. (*See id.* ¶ 54.) In turn, the Servicers executed covenants to service loans in accordance with customary standards for prudent institutional mortgage lenders servicing similar loans. (*See id.* ¶ 65.)

Plaintiff Commerzbank AG is an investment bank organized under the laws of Germany. (*Id.* ¶ 22.) Defendants BNYM acted as the Trustee of the 72 RMBS trusts and the Millstone II

CDO. (*Id.* ¶¶ 1, 31.) Plaintiff's claims arise from certificates it acquired from these trusts. (*Id.* ¶ 3; *see also* Pl.'s Mem. of Law on Mot. Summ. J., ECF No. 305, at 5–7; Defs.' Mem. of Law on Mot. Summ. J., ECF No. 306, at 4.) Sixty-eight trusts are New York common law trusts governed by Pooling and Servicing Agreements ("PSA trusts") and related agreements incorporated and referenced by the PSAs. (*See* Mar. 21, 2017 Mem. Decision and Order (the "2017 Decision"), ECF No. 69, at 2 (citing Am. Compl. ¶ 15).) Four trusts are Delaware statutory trusts governed by Sale and Servicing Agreements ("SSA trusts") and separate trust indentures. (*Id.*) Bank of New York Mellon Trust Company's contractual duties as the Millstone II CDO Trustee are set forth in an indenture ("Millstone Indenture"). (*Id.*)

Upon the occurrence of an EOD, and until it had been cured, BNYM was to exercise the rights and powers vested in it by the trusts' Governing Agreements and use the same degree of care and skill in their exercise as a prudent person would under the circumstances in the conduct of that person's own affairs. (*See* Pl.'s Mem. of Law on Mot. Summ. J. at 7.)

**B. Procedural History**

On December 23, 2015, Commerzbank commenced this action against BNYM. (Compl., ECF No. 1.) Commerzbank alleged six causes of action: Count I – TIA violations; Count II – breach of contract; Count III – breach of fiduciary duty; Count IV – negligence; Count V – violation of the Streit Act; and Count VI – breach of the covenant of good faith. (*See* Am. Compl.) On June 3, 2016, Defendants moved to dismiss the Amended Complaint. (Defs.' Mot. to Dismiss, ECF No. 35.) This Court dismissed Counts III, V, and VI for failure to state a claim. (2017 Decision at 13.)

The only claims remaining in this case are: Count I – violations of the TIA;[2] Count II – breach of contract; and Count IV – negligence.[3]  Commerzbank seeks partial summary judgment and requests that this Count find that each of the alleged EODs occurred, and that BNYM breached its post-EOD heightened and prudent person duties.  (Pl.'s Mem. of Law on Mot. Summ. J. at 46.)  Defendants oppose Plaintiff's motion and seek summary judgment in their favor on Counts I, II, and IV, dismissing this action in its entirety.  (Defs.' Mem. of Law on Mot. Summ. J. at 50.)  On March 7, 2023, this Court held oral argument on the motions.  (*See* Oral Arg. Tr., ECF No. 351.)

## II.   LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002).  To do so, the party "must do more than simply show that there is some metaphysical doubt as to the material

---

[2] This Court sustained the TIA claims for only the four SSA trusts: CWHEL 2006-I, CWHEL 2007-B, CWHEL 2007-E, and CWHL 2005-HYB9.  (*See* 2017 Decision at 7; Am. Compl. ¶ 15.)

[3] This Court sustained the negligence claims only as to alleged conflicts of interest.  (2017 Decision at 12.)

facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). "The 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all reasonable inferences in that party's favor. *Id.* (citations omitted). However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quotation marks and citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286 (citation omitted).

## III.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiff initially requested that this Court grant its motion for partial summary judgment and "find that each of the following EODs occurred, and, where applicable, further find that BNYM breached its post-EOD, heightened, prudent person duties." (Pl.'s Mem. of Law on Mot. Summ. J. at 46.) Yet, Plaintiff conceded that whether the EODs occurred presents genuine disputes of material fact. (*See* Pl.'s Summ. J. Presentation, ECF No. 354-1, at 1; Oral Arg. Tr. 54:19–55:15.) Plaintiff also conceded that whether a Trustee breached its post-EOD duties is "a fact-intensive inquiry unresolvable at summary judgment" and that "a jury must decide when it would

have been prudent to liquidate the collateral and the time that [BNYM] breached that duty with respect to the 2008 indenture obligation to liquidate." (Oral Arg. Tr. 78:4–5, 78:12–18.) Considering Plaintiff represented that the potential occurrences of EODs and Defendants' alleged breach of its post-EOD duties present genuine issues of material fact, this Court DENIES Plaintiff's motion for partial summary judgment.

## IV.   DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE BASIS OF STANDING AND STATUTE OF LIMITATIONS

Defendants proffer three threshold defenses to dismiss Plaintiff's claims on the basis of: (a) standing, (b) statute of limitations, and (c) *res judicata*. Defendants are entitled to partial summary judgment on the basis of standing and statute of limitations, but not on *res judicata*. After these threshold defenses, Plaintiff's claims relating to only 13 Certificates remain at issue.

### A.  Plaintiff Lacks Standing in Its Claims Relating to the Sold Certificates

Defendants argue that Plaintiff's sales of its securities ("Sold Certificates") prior to Plaintiff's filing of this case deprive Plaintiff of standing relating to those Certificates. (*See* Defs.' Mem. of Law on Mot. Summ. J. at 5–6.) Both parties agree that Plaintiff sold 76 Certificates before the filing of the case. (*See* Defs.' Reply to Pl.'s Counter-Statement, Part I ¶ 7; Am. Compl. ¶ 3, Ex. B.) It is also undisputed that courts in this District apply "New York choice-of-law rules to determine whether a claim is transferred to the buyer of a security." (*See* Defs.' Mem. of Law on Mot. Summ. J. at 5; Pl.'s Opp'n to Defs.' Mot. Summ. J., ECF No. 308, at 2.) The parties dispute whether the New York choice-of-law analysis directs this Court to apply New York law or English law in determining the transfer of claims.

Courts applying New York choice-of-law rules use a "center of gravity" analysis to determine which jurisdiction has "the most significant relationship to the transaction and the parties." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540, 564

(S.D.N.Y. 2022) (citation omitted), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023).  The test considers the following factors: "the place of contracting," "the places of negotiation and performance," "the location of the subject matter," and "the domicile or place of business of the contracting parties," giving more weight to the location of the actual contracting parties rather than the broker.  *Id.*; (*see also* Pl.'s Opp'n to Defs.' Mot. Summ. J. at 2).  Plaintiff, as the non-moving party, "must produce evidence in the record to support their standing without relying 'simply on conclusory statements.'"  *Phoenix Light*, 585 Supp. 3d at 565 n.18 (citation omitted).

Plaintiff argues that the center of gravity is England and that English laws should apply in determining Plaintiff's standing.  (Pl.'s Mem. of Law on Mot. Summ. J. at 2.)  Plaintiff submitted trade tickets that show that Plaintiff's English branch executed the trades for the trusts at issue and that the counterparties to those transactions were in England.  (*Id.*; *see also* Kane Ex. 335.[4])  This District Court, however, has ruled in similar circumstances that such evidence is insufficient to establish the center of gravity, reasoning that such evidence does not give information on whether the parties listed in the transaction are the ultimate buyers or merely brokers.  In a materially equivalent case brought by Commerzbank with other plaintiffs, Judge John G. Koeltl held, "[Plaintiffs who purchased RMBS certificates] did produce trade tickets listing the counterparties for certain sales . . . but d[id] not have any information regarding whether those counterparties purchased the Certificates for their own accounts or on behalf of their clients."  *Phoenix Light*, 585 F. Supp. 3d at 564–65.  This District has also ruled that the location of an entity's branch is not persuasive evidence in the center of gravity test.  *See, e.g.*, *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 457 F. Supp. 3d 233, 243 (S.D.N.Y. 2020).  As Judge Koeltl explained, "Branches are not

---

[4] "Kane Ex." throughout refers to the exhibits attached to the Declaration of Ryan A. Kane, ECF No. 307.

juridical entities distinct from their bank and courts in this district have consistently rejected arguments that a branch should be treated as a separate entity for choice of law analysis." *Phoenix Light*, 585 F. Supp. 3d at 565 (citing *Commerzbank*, 457 F. Supp. 3d at 243).

In the absence of conclusory evidence regarding the transactions' parties, a determinative factor is where the trades cleared. The late Judge William H. Pauley III, in another case involving Commerzbank as plaintiff, explained that "the actual transactions did not occur in London; they occurred in New York through [the Depository Trust Company ("DTC")], a clearing house. . . . The fact that DTC actually holds the certificates and effectuates the transactions means that the transactions actually occurred in New York and are governed by New York law." *Commerzbank*, 457 F. Supp. 3d at 237 (internal citations omitted). Plaintiff does not refute that all the RMBS trusts at issue were cleared through the DTC—a clearing house that held and transferred the Sold Certificates—which is a New York entity governed by New York law. (*See* Oral Arg. Tr. 80:17– 81:10.) In congruence with other courts in this District, Plaintiff's evidence here is insufficient to establish the center of gravity in England, and all the transactions that were cleared through a New York entity are governed by New York law.

Of the 100 Certificates at issue, Plaintiff does not have standing for 76 Sold Certificates that it sold prior to filing its Complaint. (*See* Am. Compl., Ex. B.) Under New York law, claims travel with the security unless expressly reserved in writing. *See* N.Y. Gen. Oblig. Law § 13-107; *see also Royal Park Inv. SA/NV v. HSBC Bank USA, N.A.*, No. 14-CV-8175 (LGS), 2018 WL 679495, at *4 (S.D.N.Y. Feb. 1, 2018). Plaintiff states that "it retained its existing claims" relating to the Sold Certificates, but it is undisputed that "there is no written document expressly governing the transfer or retention of legal claims relating to the Sold Securities." (Defs.' Reply to Pl.'s Counter-Statement, Part I ¶¶ 7–9.) Defendants are thus entitled to summary judgment dismissing

all claims relating to the 76 Sold Certificates.[5]  (*See id.*)  Plaintiff's claims relating to the 24

certificates that were not sold prior to this action (the "Unsold Certificates"[6]) survive Defendants'

standing argument.  (*See id.*)

## B.  The Statute of Limitations Bars All Remaining Claims Except Those Relating to 13 Certificates

With the 24 Unsold Certificates and the Millstone II CDO still at issue, this Court turns to

Defendants' statute-of-limitations arguments.  This Court previously found that "Plaintiff's claims

accrued in Germany and, pursuant to [New York Civil Practice Law and Rules] § 202, are subject

to German statute of limitations."  (2017 Decision at 5.)  The German statute of limitations "has a

three-year limitations period.  That period begins to run at the end of the calendar year in which

(1) the claim arose and (2) the plaintiff either has knowledge of the circumstances giving rise to

the claim and the identity of the defendant, or would have had such knowledge but for gross

---

[5] The 76 Sold Certificates are: BSABS 2006-4 A2, BSABS 2006-4 A3, CFLX 2007-M1 2AV3, CWALT 2005-24 4A3, CWALT 2005-27 1A9, CWALT 2005-38 A6, CWALT 2005-41 2A3, CWALT 2005-44 1A2B, CWALT 2005-44 1A3C, CWALT 2005-44 2A2B, CWALT 2005-44 2A3C, CWALT 2005-51 1A2B, CWALT 2005-51 2A2B, CWALT 2005-51 4A2, CWALT 2005-56 5A4, CWALT 2005-59 1A2A, CWALT 2005-59 1A3B, CWALT 2005-69 M1, CWALT 2005-82 A1, CWALT 2005-82 A2, CWALT 2005-AR1 2A3A, CWALT 2005-IM1 A2, CWALT 2006-32CB A7, CWALT 2006-OA1 2A3, CWALT 2006-OA11 A5, CWALT 2006-OA12 A3, CWALT 2006-OA2 A2B, CWALT 2006-OA2 A4, CWALT 2006-OA6 1A3, CWALT 2006-OC2 2A3, CWALT 2006-OC4 2A3, CWALT 2007-AL1 A2, CWALT 2007-OA6 A3, CWHEL 2006-RES 4D1B, CWHEL 2007-B A, CWHEL 2007-E A, CWHL 2004-29 2A2, CWHL 2005-HYB9 3A2B, CWL 2004-BC4 B, CWL 2004-BC4 M7, CWL 2005-10 MV6, CWL 2005-10 MV7, CWL 2005-14 3A3, CWL 2005-8 M4, CWL 2005-8 M6, CWL 2005-AB2 2A3, CWL 2005-AB3 2A3, CWL 2005-BC5 B, CWL 2005-IM2 A3M, CWL 2006-10 3AV4, CWL 2006-11 3AV3, CWL 2006-12 2A3, CWL 2006-13 MV1, CWL 2006-14 M2, CWL 2006-17 M2, CWL 2006-18 M2, CWL 2006-18 M5, CWL 2006-19 M1, CWL 2006-19 M2, CWL 2006-26 M5, CWL 2006-3 2A3, CWL 2006-3 3A2, CWL 2006-5 2A3, CWL 2006-7 M4, CWL 2006-S10 A3, CWL 2007-1 M5, CWL 2007-2 M5, HELT 2007-FRE1 2AV4, NHEL 2005-3 M2, NSTR 2006-B AV4, NSTR 2007-A M5, POPLR 2006-C A4, SAMI 2005-AR4 A4, SAMI 2005-AR6 1A2, SAMI 2005-AR6 2A3, and SAMI 2006-AR3 12A3.

[6] The 24 Unsold Certificates are: CFLX 2007-M1 1A4, CWALT 2005-59 M, CWALT 2006-OA9 2A3, CWHEL 2006-I 2A, CWL 2005-AB3 M6, CWL 2005-AB3 M7, CWL 2006-1 MV6, CWL 2006-11 MV2, CWL 2006-12 M2, CWL 2006-14 M2, CWL 2006-15 M1, CWL 2006-16 M1, CWL 2006-17 M2, CWL 2006-22 M6, CWL 2006-25 M6, CWL 2006-7 M6, CWL 2006-7 M7, CWL 2006-ABC1 M1, CWL 2006-BC4 M2, CXHE 2005-C M3, FHAMS 2006-AA1 2A2, NHEL 2005-3 M3, NHEL 2005-3 M8, and NHEL 2006-3 M1.

negligence." (*Id.* (quoting *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 472 (S.D.N.Y. 2017)).)  Plaintiff initiated this suit on December 23, 2015.  (*See* Compl.)  Thus, all claims beginning to accrue before 2012 are time-barred in this case.

Under the German statute of limitations, Plaintiff must have had sufficient knowledge of each element of its claim for the period to begin running.  *See, e.g., HSH Nordbank AG, et al. v. RBS Holdings USA Inc., et al.*, No. 13-CV-3303 (PGG), 2015 WL 1307189, at *6 (S.D.N.Y. Mar. 23, 2015); *Phoenix Light SF Ltd. v. Ace Sec. Corp.*, 975 N.Y.S.2d 369 (Sup. Ct. 2013) ("the statute of limitations does not begin to run until plaintiff is on notice of every element of the claim").  A "plaintiff has knowledge of the circumstances giving rise to the claim when [the plaintiff] obtains knowledge of the facts necessary to commence an action in Germany with an expectation of success or some prospect of success, though not without risk and even if the prospects of success are uncertain." *Phoenix Light*, 585 Supp. 3d at 571 (quoting *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 22 (2d Cir. 2015)).  The knowledge standard does not require that a plaintiff "draw the correct legal conclusions from the facts [it] know[s]," *IKB Deutsche Industrie AG v. McGraw Hill Fin., Inc.*, No. 14-CV-3443 (JSR), 2015 WL 1516631, at *6 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 634 F. App'x 19 (2d Cir. 2015), nor does a plaintiff need to "know all the relevant details or have conclusive proof," (2017 Decision at 5 (quoting *Commerzbank*, 234 F. Supp. 3d at 472).)

Applying this three-year time period, any claim is untimely if Plaintiff had "knowledge of the circumstances giving rise to the claim" or "would have had such knowledge but for gross negligence" before 2012.  *See Commerzbank*, 234 F. Supp. 3d at 472.

### 1.    Claims Relating to 11 of the Unsold Certificates Are Untimely

Of the 24 Unsold Certificates, eleven were acquired prior to 2012.  One certificate[7] was acquired from Palmer Square 3 by Dresdner London Branch ("Dresdner") in August 2008 and was transferred to Plaintiff when it acquired Dresdner in May 2009.  (Defs.' Reply to Pl.'s Counter-Statement, Part II ¶¶ 32, 34 (citing Kane Ex. 88).)  Seven certificates[8] were transferred from Eurohypo AG New York Branch to Plaintiff in November 2009.  (*Id.* ¶ 39 (citing Kane Ex. 90).) Three other certificates[9] were transferred to Plaintiff before 2011.  (Kane Exs. 130, 179, 181.)

For these 11 Unsold certificates, Plaintiff possessed the requisite knowledge for its claims to begin accrual under the German statute prior to 2012.  By the end of 2011, six cases materially analogous to the instant case had been filed against BNYM, including at least two cases involving trusts at issue here.[10]   (*See* Defs.' Reply to Pl.'s Counter-Statement, Part I ¶ 39.)  These cases "cite[] many of the same facts and urge[] the Court to draw the same inferences" as in Plaintiff's Amended Complaint.  *See IKB*, 2015 WL 1516631, at *5.  Plaintiff also hired litigation counsel, Gibbs & Bruns LLP, in October 2011 to investigate its potential claims.  (Defs.' Reply to Pl.'s Counter-Statement, Part I ¶ 40.)  But for gross negligence, Plaintiff thereby possessed sufficient information from the public domain and its legal counsel to have the requisite knowledge of the circumstances giving rise to its claims.

---

[7] CFLX 2007-M1 1A4.

[8] CWALT 2005-59 M, CWHEL 2006-I 2A, CWL 2005-AB3 M6, CWL 2005-AB3 M7, CWL 2006-1 MV6, CWL 2006-7 M6, and CWL 2006-7 M7.

[9] CWALT 2006-OA9 2A3, FHAMS 2006-AA1 2A2, and NHEL 2005-3 M8.

[10] *See Knights of Columbus v. Bank of New York Mellon*, No. 651442/2011 (N.Y. Sup. Ct. May 26, 2011); *Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of New York Mellon*, No. 11-CV-05459 (S.D.N.Y. Aug. 5, 2011); *Sterling Fed. Bank, FSB v. DLJ Mortg. Capital, Inc., et al.*, No. 09-CV-06904 (N.D. Ill. Nov. 3, 2009); *Bankers Ins. Co. v. Countrywide Fin. Corp., et al.*, No. 11-CV-01630 (M.D. Fla. Dec. 19, 2011); *Am. Fidelity Assurance Co. v. Bank of New York Mellon*, No. 11-CV-01284 (W.D. Okla. Nov. 1, 2011).

Plaintiff counters that the then-available facts "d[id] not provide knowledge of trust-specific, much less loan-specific, breaches" by Defendants. (*See* Pl.'s Mem. of Law on Mot. Summ. J. at 6–7.) Plaintiff has attempted to seek refuge under this trust-specific standard in similar cases and similarly failed. As two Judges in this District have previously noted, this argument is unpersuasive because it "confuses the Plaintiffs' burden at summary judgment or trial with the level of knowledge sufficient to commence the German statute of limitations period and is unsupported by federal court precedent applying Germany's statute of limitations." *Phoenix Light*, 585 F. Supp. 3d at 575; *see also Commerzbank*, 457 F. Supp. 3d at 247.

Therefore, as to these 11 Unsold Certificates, Defendants have proffered enough evidence to establish that Plaintiff "obtain[ed] knowledge of the facts necessary to commence" this action with an expectation or some prospect of success as to Plaintiff's claims for violations of the TIA, negligence, and breach of contract. *See Commerzbank*, 457 F. Supp. 3d at 246 (citation omitted). "Commerzbank logically should have targeted actions against the Trustees," and "it is hard to fathom how—but for gross negligence—Commerzbank did not learn of facts sufficient to bring their claim." *Id.* at 248. Defendants' motion for summary judgment as to time-bar claims relating to these 11 Unsold Certificates is GRANTED.

### 2. *Claims Relating to 13 Unsold Certificates Are Timely*

The remaining 13 of the 24 Unsold Certificates (the "Unsold Barrington II Certificates"[11]) were acquired in 2012 or 2015 from Barrington II CDO Limited.[12] (Defs.' Reply to Pl.'s Counter-

---

[11] The 13 Unsold Barrington II Certificates are: CWL 2006-11 MV2, CWL 2006-12 M2, CWL 2006-14 M2, CWL 2006-15 M1, CWL 2006-16 M1, CWL 2006-17 M2, CWL 2006-22 M6, CWL 2006-25 M6, CWL 2006-ABC1 M1, CWL 2006-BC4 M2, CXHE 2005-C M3, NHEL 2005-3 M3, and NHEL 2006-3 M1.

[12] Defendants dispute one of the certificates, noting that "Kane Ex. 249 does not support the assertion that Commerzbank [] acquired the CXHE 2005-C certificate from Barrington II." (Defs.' Reply to Pl.'s

Statement, Part II ¶ 41 (citing Kane Ex. 95).)  The Unsold Barrington II Certificates survive the German three-year statute of limitations because Plaintiff did not possess them until at least 2012, so Plaintiff's claims had not yet arisen by the end of 2011.  *See Phoenix Light*, 585 F. Supp. 3d at 571–72.  Plaintiff's claims relating to the 13 Unsold Barrington II Certificates are thus timely under the German statute of limitations, and Defendants' motion for summary judgment to dismiss them on the basis of statute of limitations is DENIED.

### 3.  *Claims Relating to the Millstone II CDO Are Untimely*

Defendants have demonstrated that Plaintiff had sufficient knowledge of its claims relating to the Millstone II CDO for accrual prior to 2012.  Plaintiff received monthly reports and other communications from Defendants regarding the Millstone II CDO.  (*See* Defs.' Mem. of Law on Mot. Summ. J. at 13–14 (citing Houpt Ex. 14, ECF No. 312-14, at 187–89).)  Plaintiff argues that Defendants failed to declare EODs that occurred on March 31, 2008, but Plaintiff continued to receive monthly reports and other communications with Defendants and knew that Defendants did not liquidate the Millstone II collateral in 2008.  (*Id.*)  Plaintiff, as the "Controlling Class" in the CDO, also knew of Defendants' activities and duties of investigating "potential claims and remedies to recover losses" and had the power to direct Defendants to take any action.  (*See id.* at 14; Am. Compl. ¶ 182.)  Plaintiff thus had knowledge of the factual bases of its claims relating to the Millstone II CDO well before the end of 2011, and these claims are time-barred.  Defendants' motion for summary judgment regarding the Millstone II CDO claims is GRANTED.

All claims, except those related to the 13 Unsold Barrington II Certificates, are therefore barred on standing or statute-of-limitations grounds.  The remaining sections of this decision pertain only to the 13 Unsold Barrington II Certificates still at issue.

---

Counter-Statement ¶ 41.)  However, Kane Ex. *248* does support that Commerzbank acquired this certificate from Barrington II in August 2012.  (*See* Kane Ex. 248.)

### C. *Res Judicata* Does Not Bar Plaintiff's Claims

While Defendants also argue that Plaintiff's claims are barred on the basis of *res judicata* (*i.e.*, claim preclusion) due to the "Countrywide Settlement and [New York Civil Practice Law and Rules] Article 77 Proceeding" to approve the Settlement, (*see* Defs.' Mem. of Law on Mot. Summ. J. at 15–22), that argument fails as to the remaining Certificates at issue. In October 2010, Bank of New York Mellon and other security holders brought claims on behalf of 530 trusts against Countrywide and its successor, Bank of America, eventually settling for $8.5 billion in June 2011 (the "Countrywide Settlement"). *See Pac. Life Ins. Co. v. Bank of New York Mellon*, No. 17-CV-1388 (KPF), 2018 WL 1382105, at *6 (S.D.N.Y. Mar. 16, 2018) (citing *In re BNYM*, 42 Misc. 3d 1237(A), at *6–7 (N.Y. Sup. Ct. Jan. 31, 2014)); (*see also* Houpt Ex. 18, ECF No. 312-18). Plaintiff acquired the 13 Unsold Barrington II Certificates in 2012 or 2015, *see* transfer dates *supra* Section IV.B.2, after the June 2011 Countrywide Settlement.

"[T]he doctrine of *res judicata*, or claim preclusion, provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (citation omitted). "[T]he very similar but distinct doctrine of collateral estoppel, which is also known as issue, rather than claim, preclusion . . . may preclude relitigation of an issue of fact or law necessary to a prior judgment in a suit on a different cause of action involving a party to the first case." *Id.* (citation omitted).

Defendants cannot use the Countrywide Settlement for claim or issue preclusion of Plaintiff's remaining claims. Even though some of the 13 Unsold Barrington II Certificates were issued from the "Covered Trusts" that formed the basis of the Countrywide Settlement, (*see* Houpt Ex. 18, Ex. A), alleged servicing issues either continued or were disclosed to Defendants after the

Settlement, (*see, e.g.*, Handlin Ex. 167, ECF No. 309-136 (correspondence post-Settlement alleging breaches of R&Ws relating to some of the 13 Unsold Barrington II Certificates)). Judge Katherine Polk Failla's most recent decision in *Pacific Life Insurance Co. v. Bank of New York Mellon* found that collateral estoppel (*i.e.*, issue preclusion) barred *pre-Settlement* claims against Bank of New York Mellon, but she also held that "claims *post-dating* the Settlement—including certain servicing claims—were not precluded" because some of the plaintiffs' post-Settlement servicing claims stemmed from Countrywide admissions made to Bank of New York Mellon after the Settlement. *Pac. Life Ins. Co. v. Bank of New York Mellon*, No. 17-CV-1388 (KPF), 2023 WL 5128079, at *24 (S.D.N.Y. Aug. 10, 2023) (emphasis added).

Plaintiff alleges servicing issues related to the 13 Unsold Barrington II Certificates it acquired post-Settlement and while allegations of EODs were still emerging. *See* discussion *infra* Part VI. The Countrywide Settlement and Article 77 Proceeding could not have had preclusive effect on future, unmaterialized claims and thus do not bar Plaintiff's claims under either *res judicata* or collateral estoppel principles.

## V.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE TIA AND NEGLIGENCE CLAIMS

After application of Defendants' threshold defenses, no trusts remain in which Plaintiff's claims of TIA violations could apply. This Court previously held that the TIA claims apply only to the four SSA trusts: CWHEL 2006-I, CWHEL 2007-B, CWHEL 2007-E, and CWHL 2005-HYB9. (*See* docket citations *supra* note 2.) All claims relating to the four SSA trusts are barred on standing or statute-of-limitations grounds. Defendants' motion for summary judgment dismissing TIA violation claims (Count I) is therefore GRANTED.

Plaintiff's claims based on negligence are also dismissed. This Court already dismissed all tort claims except for negligence claims based on conflicts of interest. (2017 Decision at 11–12.)

Since the 2017 Decision, however, courts of this District and New York State have further evaluated the legal basis of such tort claims. This Court must apply New York precedent to Plaintiff's contract claims. *See Donohue v. Cuomo*, 980 F.3d 53, 65 (2d Cir. 2020) ("[S]tate courts and legislatures retain the authority to diverge from traditional contract-law principles. Federal courts, when applying state law, are bound to apply the law as established by the state's highest court."). The New York Court of Appeals recently ruled in an analogous securities case:

> We . . . evaluate the remaining tort claims to determine whether they are duplicative of the contract claims. . . . In determining whether claims are duplicative, we "evaluate[ ] the nature of the injury, how the injury occurred and the harm it caused." Applying that test here, we conclude that any remaining tort claims, alleging conflict of interest and fiduciary duty violations, must be dismissed.

*IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, No. 51, 2023 WL 4002324, at *6 (N.Y. June 15, 2023) (internal citations omitted). Judge Koeltl also dismissed claims of negligence in a similar RMBS case because they were duplicative of breach of contract claims and precluded by New York's economic loss doctrine, which bars a tort action for economic loss when the parties' relationship is governed by an express contract. *See Phoenix Light*, 585 F. Supp. 3d at 584–85 ("[I]t is clear that the 'injury' or 'damages arising from conflict of interest sound in defendants' failure to take contractual actions—that is, losses due to failures to take action in response to servicer violations and to alert the certificateholders to the servicers' misconduct.'" (citation omitted)).

Plaintiff's negligence claims arise from Defendants' alleged failures to fulfill their contractual duties, duplicative of Plaintiff's breach of contract claims. Defendants' motion for summary judgment dismissing the negligence claims (Count IV) is therefore GRANTED.

## VI.   DEFENDANTS ARE ENTITLED TO ONLY PARTIAL SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIMS

As to the 13 Unsold Barrington II Certificates, Plaintiff cannot establish breach of contract by pleading Defendants had pre-EOD notice obligations or pre-EOD duties to enforce repurchases

of defective loans. This Court grants Defendants' motion for summary judgment as to those claims. However, genuine issues of material fact remain as to Defendants' pre-EOD duty to investigate, whether EODs occurred, and Defendants' post-EOD prudent person duties, thereby defeating Defendants' motion for summary judgment to dismiss such claims. Plaintiff's breach of contract claims concerning the 13 Unsold Barrington II Certificates partially survive Defendants' motion for summary judgment.

### A. As to the 13 Unsold Barrington II Certificates, Claims Survive Based on Pre-EOD Duties to Investigate

Defendants seek summary judgment dismissing the Plaintiff's contractual claims that Defendants breached pre-EOD duties to investigate loan-level R&W breaches. Section 8.01 of the PSAs provides, "No provision of this Agreement shall be construed to relieve the Trustee from liability for its own grossly negligent action, [or] its own gross negligent failure to act or its own misconduct . . . ." (*See, e.g.*, Kane Ex. 52 (PSA for CWL 2006-11).) The PSAs also state that "the Trustee shall not be bound to make any investigation into the facts or matters stated in any . . . document, unless requested in writing," and indemnified, by a requisite fraction of certificateholders. (*See, e.g.*, *id.*, PSA § 8.02(a)(4), (9).)

Defendants argue that the Trustee is thus not obligated to investigate unless the threshold for "discovery" of a breach is met, *see* discovery discussion *infra* Section VI.B, or investors with at least 25% control instruct them to investigate, which Plaintiff did not do, (*see* Oral Arg. Tr. 29:12–17, 32:12–33:19; Defs.' Mem. of Law on Mot. Summ. J. at 22–23). As other courts have held, "It is clear that under Sections 8.01 and 8.02, [Defendants] ha[ve] no freestanding obligations to investigate absent instructions from investors with control of 25% of the required voting rights — until [Defendants] 'know[]' of an EOD." *Phoenix Light*, 585 Supp. 3d at 587. Defendants thus had no "duty to actively investigate loans absent any evidence, knowledge, or notice." *Id.*

However, Defendants cannot skirt their responsibilities through willful blindness. "[J]ust 'because [a defendant trustee] cannot be required to investigate under the parties' contracts' does not mean that a trustee can 'avoid liability by willfully blinding itself for the purpose of disclaiming knowledge.'" *Id.* (quoting *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-10067 (KPF) (SN), 2017 WL 3610511, at *9 (S.D.N.Y. Aug. 21, 2017)) (alteration in *Phoenix Light*). If Defendants "'suspected a fact and realized its probability, but refrained from confirming it in order [to] later deny knowledge,' then something akin to duty to investigate arose." *Id.* at 587–88 (citation omitted). As further discussed below, Plaintiff has proffered

> evidence of [Defendants'] knowledge of specific loan-level R&W breaches and of potential EODs. Whether and to what extent this knowledge was so widespread and compelling that it apprised [Defendants] of potential breaches relating to other loans or of EODs in other Trusts, and whether [Defendants] chose to be willfully blind of and refused to investigate those potential issues, cannot be resolved on this record at the summary judgment stage.

*Id.* at 588.

Defendants' motion for summary judgment to dismiss claims concerning pre-EOD duties to investigate is therefore DENIED.

### B. No Claims Exist Based on Pre-EOD Obligations to Notify Parties

Defendants also seek summary judgment dismissing the Plaintiff's contractual claims that Defendants breached pre-EOD duties to provide notice of loan-level R&W breaches to other enumerated parties. Section 2.03 of the PSAs governing the trusts at issue states that Defendants were obligated to notify the other parties upon "discovery" of a breach.[13] (*See, e.g.*, Kane Ex. 52, at 95.) To show Defendants' "discovery" of breaches, Plaintiff's cite the "high volume" of letters

---

[13] NHEL 2005-3 and NHEL 2006-3 require notice upon either "discovery" *or* "receipt of written notice of a breach." (*See* Pl.'s Opp'n to Defs.' Mot. Summ. J. at 15.)

Defendants received from investors describing alleged breaches of R&Ws.  (*See* Defs.' Reply to Pl.'s Counter-Statement, Part II ¶ 204; Pl.'s Opp'n to Defs.' Mot. Summ. J. at 17–21.)  Defendants instead interpret Section 2.03 narrowly, arguing that "discovery" means that the Trustee must have "actual knowledge," beyond mere allegations.  (Oral Arg. Tr. 32:12–33:18; Defs.' Reply in Supp. of Mot. Summ. J., ECF No. 315, at 10–11.)

Courts in this District, however, have interpreted similar language in Section 2.03 broader than Defendants assert.  "Regardless of whether 'discovery' in the [Governing Agreements] is interpreted as requiring 'actual knowledge' or some lower standard, a reasonable jury could conclude that the letters that [Defendants] received afforded [Defendants] the requisite knowledge under the [Governing Agreements] to trigger its duties." *Phoenix Light*, 585 Supp. 3d at 588; *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394, 2016 WL 439020, at *4 (S.D.N.Y. Feb. 3, 2016) (Trustee's "obligation to enforce breaches of R&Ws upon receipt of 'notice' may be triggered both when it receives notice of breach from another party and when it independently discovers such breach.").

Yet, even if the letters triggered Defendants' duties post "discovery," Defendants satisfied any resulting notification duties.  The parties agree that "for every written notice of a breach that BNYM received, it sent that notice to the seller." (*See* Defs.' Reply in Supp. of Mot. Summ. J. at 13.)  In other words, "if receipt of a letter caused BNYM to discover a breach, then the seller's receipt of the same letter caused it to discover the breach as well."  (*Id.*)  Plaintiff counters that although Defendants forwarded the letters they received, Defendants misrepresented what was occurring by writing to other parties that a forwarded letter "*purports to identify potential breaches of representations and warranties*." (*See, e.g.*, Pl.'s Opp'n to Defs.' Mot. Summ. J. at 22 (quoting Handlin Ex. 130, ECF No. 309-109).)  As Judge Koeltl held, "Plaintiff[] cannot have it both ways:

if the alleged R&W breach letters were sufficient to have put [Defendants] on notice of R&W breaches, then [Defendants] forwarding these letters along to the relevant contractual parties must have satisfied its notice obligations under the [PSAs]." *Phoenix Light*, 585 Supp. 3d at 589.

Defendants' motion for summary judgment to dismiss claims concerning pre-EOD duties to notify is therefore GRANTED.

### C. No Claims Exist Based on Pre-EOD Repurchase Obligations

Defendants argue that they did not have pre-EOD duties to enforce repurchases of defective loans. Plaintiff counters that Section 2.06 of the PSAs requires the Trustee to "enforce the repurchase remedy with respect to both types of breach and loans, mortgage file deficiencies, and reps and warranties" pre-EOD. (Oral Arg. Tr. 66:21–25; *see also* Pl.'s Opp'n to Defs.' Mot. Summ. J. at 22.) But in the recent case of *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, the New York Court of Appeals explained that a materially identical Section 2.06 is a Trustee's *right* to enforce the repurchase remedy for the benefit of the investor, not an *obligation*:

> [T]he relevant language does not impose an affirmative duty on the part of the Trustee to enforce repurchase obligations, but instead explains that the Trustee must act for the benefit of certificateholders when the Trustee is exercising the rights described in section 2.06. . . . [A] right is not a duty. . . . The disputed language does not transform the discretionary nature of the Trustee's ability to exercise rights into a duty to do so.

*IKB*, 2023 WL 4002324, at *5 (internal citations omitted). Moreover, while the New York Court of Appeals noted that there were other PSAs in the record that expressly provided enforcement of repurchase obligations, Plaintiff here does not argue such language exists for the trusts at issue. *Compare id., with* (Pl.'s Opp'n to Defs.' Mot. Summ. J. at 22–23).

Accordingly, Defendants' motion for summary judgment to dismiss breach of contract claims pertaining to pre-EOD duties to enforce loan repurchases is GRANTED.

**D. As to the 13 Unsold Barrington II Certificates, Claims Survive Based on the Alleged Occurrence of EODs and Defendants' Consequential Prudent Person Duties**

Whether the information given to the Master Servicers and Defendants was sufficient to trigger EODs remains a genuine dispute of material fact. Section 7.01 of the PSAs state that an EOD requires a written notice of a breach to the Master Servicer by the Trustee or the Depositor, or to the Master Servicer and the Trustee by certificateholders evidencing not less than 25% of the voting rights, to remain unremedied for 60 days. (*See, e.g.,* Kane Ex. 52.) Next, Section 8.01 provides that the Trustee must act as a "prudent person" if "an Event of Default has occurred and remains uncured." (*Id.*) Section 8.02 reads that the Trustee cannot be deemed to have knowledge until it receives written notice. (*See id.*, PSA § 8.02(a)(8).)

Defendants argue that no proper written notice was provided to the Master Servicer to formally trigger an EOD and Defendants otherwise had no knowledge of EODs. (*See* Defs.' Mem. of Law on Mot. Summ. J. at 31–34; Oral Arg. Tr. 47:1–48:3.) Plaintiff counters that the ample notice it gave, via letters and emails, either served the requisite notice to the Master Servicer or should have compelled Defendants to notify the Master Servicer in writing and trigger the 60-day period for EODs. (*See* Pl.'s Opp'n to Defs.' Mot. Summ. J. at 24–41; Oral Arg. Tr. 74:17–75:2; Handlin Ex. 628, ECF No. 309-521). Plaintiff has raised sufficient evidence that Master Servicers may have been materially noncompliant with their obligations, that these servicing failures may have materially affected investors, and that Defendants may have had sufficient knowledge of this servicing misconduct. (*See, e.g.*, Pl.'s Opp'n to Defs.' Mot. Summ. J. at 27–31, 37–39.) Thus, the parties' contentions over whether Defendants or the Master Servicers received requisite notice to trigger EODs presents genuine disputes of material fact that cannot be resolved at summary judgment.

As to the 13 Unsold Barrington II Certificates, Defendants' motion for summary judgment dismissing the claims related to the occurrence of alleged EODs, and whether Defendants acted as a "prudent person" following the alleged EODs, is therefore DENIED.

## VII.   CONCLUSION

Plaintiff's motion for partial summary judgment, (ECF No. 268), is DENIED.  Defendants' cross-motion for summary judgment, (ECF No. 272), is GRANTED on the basis of standing and statute of limitations as to all claims except those pertaining to the 13 Unsold Barrington II Certificates.  Defendants' cross-motion for summary judgment is also GRANTED as to all TIA claims (Count I), breach of contract claims (Count II) arising from pre-EOD duties to notify and pre-EOD repurchase obligations, and negligence claims (Count IV).  For the 13 Unsold Barrington II Certificates, Defendants' cross-motion for summary judgment on the breach of contract claims (Count II) arising from pre-EOD duties to investigate, the alleged occurrence of EODs, and post-EOD prudent person duties is DENIED.

The Clerk of Court is directed to keep this case open and remove it from the suspense docket.

Dated: August 28, 2023
      New York, New York

                  SO ORDERED.

                  *George B. Daniels*
                  GEORGE B. DANIELS
                  UNITED STATES DISTRICT JUDGE